RICHARD T. BOWLES (# 46234)
KENNETH G. JONES (# 196868)
BOWLES & VERNA LLP
2121 N. California Boulevard, Suite 875
Walnut Creek, California 94596
Telephone: (925) 935-3300
Facsimile: (925) 935-0371
Email: rbowles@bowlesverna.com
       kjones@bowlesvera.com

Attorneys for Plaintiff
WEBCOR CONSTRUCTION, INC.
dba WEBCOR BUILDERS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA for the Use and Benefit of WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS, and WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS,<br><br>Plaintiffs,<br><br>vs.<br><br>DICK/MORGANTI, a joint venture, DICK CORPORATION, THE MORGANTI GROUP, AMERICAN CASUALTY COMPANY OF READING, PA, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.: 3:07-CV-02564-CRB<br><br>**WEBCOR'S OPPOSITION TO MOTION TO STAY PROCEEDINGS**<br><br>Date: August 24, 2007<br>Time: 10:00 a.m.<br>Dept.: Courtroom 8 (19th Floor)<br>Judge: Hon. Charles R. Breyer |

I. **INTRODUCTION**

This is a straightforward breach of contract action between Webcor Construction, Inc. dba Webcor Builders ("Webcor") and Defendant Dick/Morganti Joint Venture ("DMJV"). There are only two contractual provisions at issue in this motion. Specifically, under the terms of the contract, DMJV agreed to timely forward Webcor's claims for equitable adjustment to the owner. The parties further agreed to engage in certain claims dispute resolution proceedings prior to litigation. Defendants American Casualty Company and National Union Fire Insurance Company bring a motion to stay proceedings based on the dispute resolution provision.

There are two grounds upon which this Court can and should deny the motion to stay. First, defendants cannot seek to enforce a term of a contract that they have, themselves, materially breached. For nearly two years, there is no dispute that DMJV breached its contractual obligation by continually and consistently refusing to pass up Webcor's claims to the owner. Webcor has patiently attempted to work with DMJV for over a year and a half to craft a claim meeting DMJV's satisfaction. DMJV refused to cooperate. Realizing these attempts were in vain, Webcor commenced this lawsuit. Only after commencement of this suit did DMJV finally respond to Webcor's demands.

Second, equity demands denial of this motion. In addition to DMJV's bad faith conduct throughout the parties' course of dealings, DMJV has also acknowledged that a large portion of the claims for which Webcor seeks compensation does not concern the owner. As to these claims, which total approximately $1.4 million, the dispute resolution provision is inapplicable and, thus, cannot properly be the subject of defendants' motion.

On these two grounds, Webcor respectfully submits this opposition and requests that the Court deny the motion to stay proceedings.

## II. STATEMENT OF FACTS

These proceedings relate to the construction of the project commonly referred to as the GSA Federal Building Project located in San Francisco, California ("the Project"). The General Services Administration of the United States of America ("the GSA") is the owner of the Project and DMJV was the prime contractor on the Project. Defendants American Casualty Company and National Union Fire Insurance Company (hereinafter collectively, "the Sureties") issued payment bonds for the Project pursuant to an agreement with DMJV. On or about May 5, 2003, Webcor entered into a written agreement with DMJV to provide concrete and formwork services for the Project (the "Subcontract"). (Declaration of Jack Harrington ("Harrington Decl."), at ¶3).

Under the Ninth Article of the Subcontract, titled "Claims," DMJV explicitly agreed "to transmit to the Owner, other subcontractors, or other entity any such claims submitted to it by the Subcontractor." (Harrington Decl., at ¶3). The Ninth Article further stated that DMJV would be liable for Webcor's claims if, among other things, Webcor "promptly and properly notifies the Contractor of a delay or other claim" and DMJV "fails to correct promptly a delay or element of another claim caused

solely by the Contractor" or "fails to transmit the Subcontractor's notification to the Owner, other subcontractors, or other entity causing the delay or other claim within forty-eight (48) hours of such a notification." (Harrington Decl., at ¶4).

Throughout the course of the Project, Webcor repeatedly put DMJV on notice regarding significant time and cost impacts resulting from, among other things, deficient project plans and specifications, changes in the scope of Webcor's work and accessibility issues on the Project. (Harrington Decl., at ¶5). On or about July 29, 2005, Webcor submitted its COR 60 for equitable adjustment based on the cost and schedule impacts associated with the Project's rebar congestion and increased finish requirements. (Exhibit A attached to Harrington Decl., at ¶6). COR 60 sought additional compensation in the amount of $5,221,053.00 and 209 calendar days of schedule extension. *Id.* Because of the magnitude of the COR, Webcor directed DMJV to forward the claim immediately to the GSA.

Three months later, on October 31, 2005, Webcor submitted CORs 61 through 65 to DMJV, along with documentation substantiating each claim. (Exhibit B attached to Harrington Decl., at ¶7). The total value of CORs 61 through 65 is $1,480,277.00. *Id.* DMJV refused to pass Webcor's CORs 61 through 65 through to the GSA for review. DMJV, on multiple occasions, has informed Webcor's representatives that it is DMJV's position that Webcor's CORs 61 through 65 are not the GSA's responsibility, do not involve the GSA, will not be a part of the formal FARS claims process and that DMJV will not pass CORs 61 to 65 through to the GSA. (Harrington Decl., at ¶8).

In October 2006, approximately fifteen (15) months after Webcor submitted COR 60, the GSA's Contracting Officer rejected Webcor's claim. (Declaration of Kenneth G. Jones ("Jones Decl.", at ¶ 3). However, the Contracting Officer stated that DMJV retained its right to request a Contracting Officer's Decision under the disputes clause of the General Contract. (Exhibit C attached to Harrington Decl., at ¶9). Webcor immediately requested that DMJV seek a Contracting Officer's Decision as suggested by the GSA. DMJV rejected this request. (Jones Decl., at ¶4).

In a letter to Joel Heusinger, dated March 23, 2007, counsel for Webcor submitted Jack Harrington's certification of Webcor's COR 60 and made a further demand that DMJV pass the claim through to the GSA and expressly requested that the claim be passed forward by no later than April 2,

2007. (Jones Decl., at ¶5). DMJV refused to comply with these demands. (Jones Decl., at ¶6). Instead, DMJV wanted the claim certification language revised. (Jones Decl., at ¶7). In the spirit of cooperating with DMJV, Webcor's counsel submitted on April 10, 2007 a revised certification with the stated expectation that, "with the revised certification, Webcor's claim will be forwarded to the GSA immediately." *Id.*

On April 11, 2007, DMJV again refused to certify and pass through Webcor's certified claim to the GSA. (Exhibit E attached to Harrington Decl., at ¶11). According to DMJV, the claim did not contain the certification language required by the Contract Disputes Act. (Jones Decl., at ¶8). Webcor responded by affirming that the claim certification, as submitted, complied with the FARS and that DMJV's continued refusal to forward it to the GSA was baseless and without merit. (Exhibit C attached to Jones Decl., at ¶9). On April 24, 2007, in another attempt to work with DMJV and resolve this dispute, Webcor's counsel offered to modify the claim according to DMJV's specification in exchange for DMJV agreeing to immediately transmit the claim to the GSA. DMJV never responded. (Jones Decl., at ¶10).

Faced with the fact that DMJV had refused, on multiple occasions over the course of several months, to pass through Webcor's COR 60 and CORs 61 through 65, Webcor considered DMJV in breach of its obligations under the Subcontract. (Harrington Decl., at ¶13). (Jones Decl., at ¶11). Combined with the fact that Webcor's statute of limitations on its Miller Act claim was running, Webcor had no recourse but to bring this action. DMJV's delay and refusal to pass through Webcor's claims of entitlement to the GSA is not only contrary to its obligations under the Subcontract, but has prejudiced Webcor by denying it the ability to resolve its entitlement to payment for work completed, costing Webcor hundreds of thousands of dollars in potential interest, impacting Webcor's cash flow. (Harrington Decl., at ¶14).

Soon after commencement of this lawsuit, DMJV contacted Webcor's counsel to set up a meeting to resolve this lawsuit. A teleconference occurred on or about June 11, 2007 wherein, DMJV, for the first time, agreed to pass up Webcor's claim regarding COR 60 to the GSA, but only if Webcor agreed to dismiss this lawsuit. (Jones Decl., at ¶12). Webcor rejected DMJV's request based on DMJV's breach of its contractual obligation to pass through Webcor's claims. (Jones Decl., at ¶13).

Webcor further informed counsel for DMJV that it considered DMJV's breach material such that Webcor's further performance of any ADR or dispute provisions was excused. *Id.* However, Webcor was willing to stipulate to a ninety (90) day extension to allow DMJV the opportunity to pass up Webcor's COR 60 to the GSA for a Contracting Officer's Decision and determine whether a response would be received. *Id.* Webcor informed DMJV that beyond that, in light of DMJV's breach, Webcor considered the FARs process to be DMJV's own obligation. The stipulation does not waive Webcor's claims of breach of contract and applied to all defendants, including the Sureties. (Exhibit D attached to Jones Decl., at ¶13).

On June 13, 2007, DMJV submitted Webcor's certified claim for equitable adjustment related to the rebar congestion and increased finishes requirement and requested a Contracting Officer's Final Decision on the submitted claim within 60 days. (Jones Decl., at ¶14). Notably, the claim certification DMJV ultimately forwarded to the GSA mirrored the language of Jack Harrington's April 10, 2007 certification. (Exhibit E attached to Jones Decl., at ¶14). To date, DMJV has never passed Webcor's CORs 61 through 65 through to the GSA for review. These CORs total $1,480,277.00. (Jones Decl., at ¶15).

### III. LEGAL ARGUMENT

**A.   Webcor's Obligation under Subcontract Disputes Provision is Excused by DMJV's Material Breach of the Subcontract.**

**1.   California law applies to determination of whether breach excuses performance.**

In actions brought under the Miller Act, issues not involving the construction of the Act will be resolved by the law of the state where the contract is performed. *See* United States for the Use and Benefit of Greenville Equipment Company, Inc. v. United States Casualty Company, 218 F. Supp. 653, 657 (D.Del. 1962); Austin Elcon Corp. v. Avco Corp., 590 F. Supp. 507 (W.D. Tex. 1984); United States ex rel. Endicott Enters. v. Star Bright Constr. Co., 848 F. Supp. 1161, 1168 (D. Del. 1994); and United States ex rel. McFadden Mech., Inc. v. FSEC, Inc., 2001 U.S. Dist. LEXIS 24201, p.18 (E.D. Pa. Dec. 5, 2001). Accordingly, as the Project is located in San Francisco, California law governs the determination of whether Webcor's obligation under the ADR and disputes provision of the Subcontract is excused by DMJV's material breach.

## 2. The requested stay of proceedings to allow for a contracting officer's decision is inappropriate as DMJV materially breached subcontract by refusing to pass Webcor's claim to GSA.

The Sureties' motion should be denied as DMJV's willful and repeated refusal to pass through Webcor's claims to the GSA is a material breach of the Subcontract which excuses Webcor's concurrent obligation to comply with the ADR and disputes provisions contained within the Thirty Eighth Article of the Subcontract. In respect to the liability to subcontractors on a payment bond, a surety stands in the shoes of the prime contractor and can avail itself of the defenses the prime contractor would have against the claimant. Cates Constr. v. Talbot Partners (1999) 21 Cal.4th 28, 40 ("As a general rule, '[t]he obligation of a surety must neither be larger in amount nor in other respects more burdensome than that of the principal . . . .'"); *See also Cal. Civ. Code § 2809*. Thus, whether the Sureties can enforce any contractual obligation of Webcor under the Thirty Eighth Article of the Subcontract depends upon whether that obligation has been excused.[1]

It is hornbook law that one party to a contract cannot enforce the terms of a contract against another party thereto where the moving party failed to prove it had performed its obligations under the contract. See Fogarty v. Saarthoff (1982) 128 Cal.App.3d 780, 785; Pry Corp of Am. v. Leach (1960) 177 Cal.App.2d 632, 639; Harrison v. Cook (1963) 213 Cal.App.2d 527, 529-530; Lewis Publishing Co. v. Henderson (1930) 103 Cal.App. 425, 429. *See also Cal Civ. Code § 1439*. Whether a breach is material is a question of fact. Whitney Inv. Co. v. Westview Development Co. (1969) 273 Cal.App.2d 594, 601. The circumstances of each case determine whether the injured party may treat a breach of contract as total. Associated Lathing & Plastering Co. v. Louis C. Dunn, Inc. (1955) 135 Cal.App.2d 40, 50. It has been stated that:

> . . . there is a limit to the time a promise must thereafter await performance. . . . Although defendants had not expressly repudiated the contract, their conduct clearly justified plaintiffs' belief that performance was either unlikely or would be forthcoming only when it suited defendants' convenience. Plaintiffs were not required to endure that uncertainty or to await that convenience and were therefore justified in treating defendants' nonperformance as a total breach of the contract.

---

[1] It should be noted that defendants DMJV, American Casualty Company, and National Union Fire Insurance Co. are all represented by the same counsel and that DMJV has curiously neglected to join in this Motion. The failure of DMJV to assert the same defense is telling in light of its failure to honor its concurrent contractual obligation to act as a conduit to provide Webcor contractual privity to the GSA by passing through Webcor's claims.

Coughlin v. Blair (1953) 41 Cal.2d 587, 599.

Pursuant to the Subcontract, DMJV's obligation to pass up claims to the GSA is concurrent with Webcor's obligation to perform under the ADR/dispute provision. Implied in the concept of participating in the dispute provisions provided for in the General Contract is the notion that the prime contractor will timely transmit the subcontractor's claims for determination of merit. Without such a concurrent and reciprocal obligation, the ADR/Disputes provision (Thirty-Eighth Article) rings hollow. In fact, the Thirty-Eighth Article discusses "claims" and "claims" is defined by the Ninth Article, which obligates DMJV to pass through Webcor's claims.

On at least three occasions, DMJV willfully refused, over six months, to forward Webcor's COR 60 claim. By refusing to pass up Webcor's claims, DMJV denied Webcor any avenue of recourse to be heard by the GSA. Based on such conduct, Webcor determined that DMJV had no intention to honor its contractual obligations. Only after Webcor filed suit to protect its Miller Act rights did DMJV deem it prudent to submit Webcor's COR 60 claim to the GSA. Nor can DMJV be heard to cry that its refusals to pass through Webcor's COR 60 were the result of an inadequate certification, as the COR 60 submitted by DMJV to the GSA on June 13, 2007 included the very same certification language it deemed insufficient in April 2007.

Moreover, there can be no dispute that DMJV has unilaterally refused to pass through CORs 61 through 65. As to those claims, no stay can issue as DMJV has unquestionably breached its obligation to pass through Webcor's claims of entitlement.

**B. Equity Should Preclude a Stay of Proceedings Because of DMJV's Willful Delay and Refusal to Pass-Through Webcor's Claims.**

Notwithstanding DMJV's material breach of the Subcontract, equitable concerns demand that a stay not be issued in this instance. The Court's power to stay proceedings is incidental to the Court's inherent power to control its own docket. C3, Inc. v. United States, 4 Cl. Ct. 790, 791 (1984). However, this discretion calls for the "exercise of judgment, which must weigh competing interests and maintain an even balance." C3, Inc., supra, 4 Cl. Ct. at 791, citing to Landis v. North American Co., (1936) 299 U.S. 248, 254. Thus, an application for a stay "must make out a clear case of hardship or

inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some else." Id. at 791.

> One District Court has summarized the purpose of the Miller Act:
>
> The purpose of the Miller Act is "to provide security for those who furnish labor and material in the performance of government contracts." The Miller Act is "highly remedial in nature," and its terms should be liberally construed. The Miller Act is not designed to benefit the prime contractor. Rather, it was enacted for "the especial protection of the subcontractor on a government construction contract." The risk of nonpayment for goods and services provided for a government project should be borne by the surety - not the laborers or materialmen. Thus, the purpose of the payment bond required under the Miller Act is to "shift the ultimate risk of nonpayment from workmen and suppliers to the surety."

U.S.A. for the Use of DDC Interiors, Inc. v. Dawson Constr. Co., Inc. 895 F. Supp. 270, 272 (Dist. Colo. 1995). (Citations omitted). Moreover, the fact that a prime contractor has a claim for the same amounts pending under the 'disputes clause' of the prime contract, does not affect Miller Act cases. Fanderlik-Locke Co. v. United States for Use of Morgan, 285 F.2d 939, 942 (10th Cir. 1960), cert. denied, 365 U.S. 860.

Admittedly, this Court also possesses the discretion, under 41 U.S.C. § 605(c)(5), to stay a Miller Act proceeding pending a Contracting Officer's Decision. However, Webcor argues that the Sureties have made no showing of hardship or inequity in proceeding with the case as it stands. Indeed, granting a stay, under the circumstances of this case, would prove an inequity to Webcor. First of all, for nearly eight months, DMJV has sat on its rights to avail defendants of the disputes resolution provision for COR 60. More importantly, a significant portion of Webcor's claims are not subject to any Contract Disputes Act administrative proceeding. DMJV has acknowledged that CORs 61 through 65, which total approximately $1.4 million of Webcor's damages, do not involve the GSA and only concern DMJV's payment obligations to Webcor. Thus, the claims are not bound by the dispute resolution provision.

## IV. CONCLUSION

The Sureties have failed to demonstrate that, under the circumstances, a stay of the proceedings is proper. For almost two years, DMJV has breached its contractual obligations to Webcor by failing to timely forward its claims to the GSA and has sat on its right to avail itself and Webcor of the dispute resolution provision. The Sureties cannot now attempt to enforce a provision in a contract to which

1  DMJV has, itself, materially breached.  Additionally, there is no dispute that approximately $1.4 million
2  of Webcor's claims concern only DMJV's payment obligations, not the GSA's, and are not subject to
3  the General Contract's dispute resolution process.  The Court should therefore deny the Sureties'
4  motion to stay proceedings in its entirety.

Dated:  August 3, 2007

BOWLES & VERNA LLP

By: *(signature)*
RICHARD T. BOWLES
KENNETH G. JONES
Attorneys for Plaintiff
WEBCOR CONSTRUCTION, INC.
dba WEBCOR BUILDERS