RAYMOND M. BUDDIE    (SBN 121353)
TIMOTHY E. ELLIOTT    (SBN 210640)
RICK W. GRADY        (SBN 235976)
PECKAR & ABRAMSON, P.C.
250 Montgomery Street, 16th Floor
San Francisco, CA 94104
Telephone: (415) 837-1968
Facsimile: (415) 837-1320
Email: rbuddie@pecklaw.com
       telliott@pecklaw.com
       rgrady@pecklaw.com

PATRICK S. HALLINAN    (SBN 33838)
KENNETH H. WINE       (SBN 142385)
HALLINAN & WINE
Law Chambers Building
345 Franklin Street
San Francisco, CA 94102
Telephone: (415) 621-2400
Facsimile: (415) 575-9930

Attorneys for AMERICAN CASUALTY COMPANY OF READING, PA; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA for the Use and Benefit of WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS, and WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS,<br><br>            Plaintiffs,<br><br>vs.<br><br>DICK/MORGANTI, a joint venture; DICK CORPORATION; THE MORGANTI GROUP; AMERICAN CASUALTY COMPANY OF READING, PA; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No.: 3:07-CV-02564-CRB<br><br>**REPLY OF DEFENDANTS AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA TO PLAINTIFF WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS' OPPOSITION TO MOTION TO STAY**<br><br>Hearing Date: August 24, 2007<br>Hearing Time: 10:00 a.m.<br>Location:    Courtroom 8 (19th Floor)<br>Judge:       Hon. Charles R. Breyer |

1
REPLY OF DEFENDANTS AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA TO PLAINTIFF WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS' OPPOSITION TO MOTION TO STAY

Case No.: 3:07-CV-02564-CRB

LAW OFFICES
Peckar & Abramson
A Professional Corporation

AND ALL RELATED COUNTER-CLAIMS AND THIRD PARTY COMPLAINTS.

## I. INTRODUCTION

Plaintiff WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS ("WEBCOR") concedes in its Opposition to the Motion to Stay, filed herein by defendants AMERICAN CASUALTY COMPANY OF READING, PA ("AMERICAN") and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("NATIONAL") (AMERICAN and NATIONAL shall hereinafter collectively be referred to as the "SURETIES"), that the Court "possesses the discretion under 41 U.S.C. § 605(c)(5), to stay a Miller Act proceeding pending a Contracting Officer's Decision." (WEBCOR's Opposition, 8:14-15.) By way of this motion, the SURETIES not only request that the Court exercise this discretion since this dispute is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601-613) (the "CDA") but, further, the SURETIES seek the Court to simply enforce the contract terms to which WEBCOR previously agreed.

WEBCOR is contractually obligated to stay this lawsuit pursuant to a specific, clear, and unambiguous dispute resolution provision (the "Disputes Provision") within WEBCOR's subcontract (the "WEBCOR Subcontract") with defendant prime-contractor Dick/Morganti ("D/M"). Contrary to WEBCOR's assertion that D/M has been dilatory in pursuing WEBCOR's claims, D/M has, in fact, been diligent in advancing WEBCOR's claims. Thus, WEBCOR must be compelled to stay its action while the claims are considered and adjudicated through the ongoing process with the owner of the underlying project, the General Services Administration of the United States of America (the "GSA").

## II. RELEVANT FACTUAL BACKGROUND

WEBCOR's action relates to the construction project known as the new San Francisco Federal Building project (the "Project") which is owned by the GSA. The Project was only recently completed, and an official dedication ceremony was held for the Project's completion on July 7, 2007. (Declaration of Michael T. Ambroso ("Ambroso Decl."), ¶ 4.)

2

REPLY OF DEFENDANTS AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA TO PLAINTIFF WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS' OPPOSITION TO MOTION TO STAY

Case No.: 3:07-CV-02564-CRB

LAW OFFICES
Peckar & Abramson
A Professional Corporation

### A. **WEBCOR's Claims**

#### 1. **WEBCOR's Change Order Request No. 60**

Throughout the course of the Project, WEBCOR submitted change order requests ("COR" or "COR's") seeking increases in the compensation and/or time for completing various portions of its work. (Ambroso Decl., ¶ 8.) The largest of such requests was COR 60, through which WEBCOR originally sought an additional $5,221,053, as well as a schedule extension of 209 days. (Ambroso Decl., ¶ 8.) WEBCOR submitted COR 60 to D/M on or about June 29, 2005 and requested that D/M submit it to the GSA. (Ambroso Decl., ¶ 10.) Within ten (10) days of receiving COR 60 from WEBCOR, D/M submitted the COR to the GSA on or about July 8, 2005[1]. (Ambroso Decl., ¶ 11.) COR 60 involves complex issues related to the plans and specifications for the Project, including the placement of rebar throughout the foundation and in supporting walls for the 18-stories on the Project's main tower. (Ambroso Decl., ¶ 9.) Further, COR 60 involves complex issues related to the finish on the open, exposed surfaces of some of the concrete provided by WEBCOR. (Ambroso Decl., ¶ 9.)

The GSA did not respond to D/M's submittal of WEBCOR's COR 60 until approximately fourteen (14) months later, despite numerous prompts and requests by D/M to the GSA as to the status of the GSA's review, when it rejected COR 60 in its entirety by way of a letter dated October 10, 2006. (Ambroso Decl., ¶ 12.) D/M received the GSA's rejection letter at the Project site, and one of D/M's attorneys, Joel Heusinger, Esq., forwarded the rejection letter to counsel for WEBCOR on or about October 27, 2006. (Ambroso Decl., ¶ 13.)

Subsequent to the GSA's rejection of COR 60, D/M and WEBCOR took steps to prepare and submit COR 60 as a formal, certified "Claim" to the GSA's Contracting Officer. (Ambroso Decl., ¶ 14.) The requirements for a formal claim for the Project are set forth in the Disputes Provision of the general contract and in the Federal Acquisition Regulation ("FAR") 52.233-1. (Ambroso Decl., ¶ 14.) During this same time period, as the Project was nearing its

---

[1] For numbering purposes between D/M and the GSA, D/M originally numbered this COR as "Change Order Request No. GSA 182." This COR is also labeled as COR No.'s GSA182 and GSA182B, and Issue 364.

3

REPLY OF DEFENDANTS AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA TO PLAINTIFF WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS' OPPOSITION TO MOTION TO STAY

Case No.: 3:07-CV-02564-CRB

LAW OFFICES
Peckar & Abramson
A Professional Corporation

final stages, D/M was in the process of preparing its overall claim to the GSA, which seeks compensation for D/M, as well as for its subcontractors, for the increased costs for the Project. (Ambroso Decl., ¶ 16.)

WEBCOR's COR 60 implicates complex issues related to impacts on the Project schedule, including impacts on the sequence of work done by other subcontractors and overall delays to the Project's final completion. (Ambroso Decl., ¶ 17.) Further, COR 60 is also related to the delays and impacts experienced by D/M and other subcontractors on the Project, as well as to the claims those entities have been, and will be, asserting. (Ambroso Decl., ¶ 17.) Due to the magnitude of COR 60 and its impact on D/M's analysis and preparation of its overall claim (the "Global Claim"), officials from D/M and WEBCOR have worked together in order to make sure that WEBCOR's claim was, and is, consistent with the Global Claim on the Project. (Ambroso Decl., ¶ 19.) This work has included direct consultation between the separate scheduling consultants retained by D/M and WEBCOR, including consultation between one of D/M's consultant's, Rex Snyder, and WEBCOR's consultant, Dan Kass, after the GSA's rejection of COR 60. (Ambroso Decl., ¶ 19.) Since WEBCOR is bound by the terms of the General Contract, including the certification requirement within the Disputes Provision, D/M is required to certify that COR 60 was being made in good faith and that is was supported by accurate data. (Ambroso Decl., ¶ 21.)

### 2. **WEBCOR's COR's 61-65**

WEBCOR's COR's 61-65 relate to disputes between D/M and the GSA. (Ambroso Decl., ¶ 28.) Specifically, each of these COR's involves schedule extensions which form, in part, the basis for the Global Claim. (Ambroso Decl., ¶ 28.) D/M's position vis-à-vis the GSA is that the GSA is responsible for the late start of the Project, weather delays, site access and staging issues caused by the GSA and its agents, as well as the associated delays and extended performance periods related to the tower cranes. (Ambroso Decl., ¶ 28.) Additionally, D/M's schedule claims against the GSA relate to unknown and unsuitable soil conditions, as well as crane usage on the Project, which impacted not only WEBCOR, but numerous other subcontractors on the Project. (Ambroso Decl., ¶ 28.)

REPLY OF DEFENDANTS AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA TO PLAINTIFF WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS' OPPOSITION TO MOTION TO STAY

Case No.: 3:07-CV-02564-CRB

The dispute between D/M and the GSA involves not only the number of additional days to which D/M is entitled, but issues as to whether any schedule extensions are compensable, or merely excusable but noncompensable. (Ambroso Decl., ¶ 29.) COR's 61-65 are being analyzed as part of D/M's overall Global Claim and, accordingly, it is necessary that WEBCOR participate in and provide further analysis of COR's 61-65 as relates to said claim. (Ambroso Decl., ¶ 29.) As such, D/M disputes and denies WEBCOR's contention that it has "admitted that COR's 61-65 do not involve any dispute" between D/M and the GSA, as alleged in Paragraph 15 of the Declaration of Kenneth G. Jones. (Ambroso Decl., ¶ 30.) Further, D/M denies WEBCOR's claim, as set forth in Paragraph 8 of the Declaration of Jack Harrington, that former D/M employees Jim Dravet and/or Fred Daven accurately stated D/M's position with regard to COR's 61-65 if they did in fact indicate that said CORs were not the responsibility of the GSA, did not involve the GSA, would not be part of the CDA claims resolution process, and that D/M would not pass COR's 61-65 through to the GSA. (Ambroso Decl., ¶ 31.) Indeed, neither Mr. Dravet nor Mr. Daven have worked on the Project for close to two (2) years, nor have either been employed by D/M for over one (1) year. (Ambroso Decl., ¶ 31.) D/M's position regarding COR's 61-65, both currently and at the time Messrs. Dravet and Daven were involved in the Project, is that these COR's involve disputes between D/M and the GSA. (Ambroso Decl., ¶ 31.)

Similar to COR 60, COR's 61-65 involve complex issues related to impacts on the Project schedule, scheduling impacts to the sequence of work performed by other subcontractors, and overall delays to the Project's final completion. (Ambroso Decl., ¶ 17.) COR's 61-65 are also closely related to the delays and impacts experienced by D/M and other subcontractors on the Project, as well as to the claims those entities have been, and will be, asserting. (Ambroso Decl., ¶ 17.) Contrary to any assertion otherwise, COR's 61-65 are legally and factually related to D/M's claims against the GSA, and resolution of the Global Claim is necessary prior to determining whether any issues exist solely between D/M and WEBCOR. (Ambroso Decl., ¶ 32.)

///

REPLY OF DEFENDANTS AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA TO PLAINTIFF WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS' OPPOSITION TO MOTION TO STAY

Case No.: 3:07-CV-02564-CRB

### 3. D/M's Advancement Of WEBCOR's Claims

As noted, D/M promptly submitted WEBCOR's COR 60 in the amount of $5,221,053 to the GSA, which then took approximately fourteen (14) months to deny the COR in its entirety. (Ambroso Decl., ¶¶ 11-12.) During the subsequent nearly six (6) months after the GSA's rejection of the claim, WEBCOR apparently revisited the adequacy of its COR 60, and revised COR 60 downward to $4,671,740, a reduction of nearly $550,000. (Ambroso Decl., ¶¶ 20-21.) Further, WEBCOR reduced its time extension by twenty-seven (27) days. (Ambroso Decl., ¶¶ 20-21.) WEBCOR submitted its revised COR 60 claim to D/M on or about March 22, 2007. Subsequent to that date, D/M was obligated to undertake its own due diligence as to the supporting data for COR 60, particularly in light of the significant reduction from the monetary and time amounts that had originally been requested and due to the fact that some of WEBCOR's damage components actually increased. (Ambroso Decl., ¶ 21.) Additionally, because COR 60 was related to the Global Claim, D/M had to confirm that WEBCOR's COR 60 was consistent with the related claims by D/M and other subcontractors. (Ambroso Decl., ¶ 21.) The Global Claim involves analysis of approximately 2,000 itemized time and cost issues. (Ambroso Decl., ¶ 23.)

D/M's due diligence upon receiving WEBCOR's revised claim included analysis of entitlement issues by legal counsel and D/M's consultants, analysis of WEBCOR's cost data by legal counsel and D/M's consultants, and analysis of schedule data and conclusions by D/M's own schedule consultants. (Ambroso Decl., ¶ 22.) Additionally, D/M believed that D/M's initial certification did not comply with FAR 52.233-1(d)(2)(iii) and D/M and WEBCOR, through counsel, engaged in discussions regarding the proper language for WEBCOR's certification of its claim. (Ambroso Decl., ¶ 23.) As D/M's due diligence regarding WEBCOR's revised COR 60 was ongoing, and before resolution of the issues related to the claim certification language, WEBCOR filed this lawsuit on May 15, 2007. (Ambroso Decl., ¶ 24.) D/M submitted COR 60 to the Contracting Officer on or about June 13, 2007.

With regard to COR's 61-65, D/M continues to analyze and incorporate these COR's into D/M's Global Claim, and it will be necessary for WEBCOR to fully cooperate in the

6

LAW OFFICES
Peckar & Abramson
A Professional Corporation

REPLY OF DEFENDANTS AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA TO PLAINTIFF WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS' OPPOSITION TO MOTION TO STAY

Case No.: 3:07-CV-02564-CRB

1 preparation and submission of this portion of the Global Claim. (Ambroso Decl., ¶¶ 28-29.) As
2 noted, D/M disputes WEBCOR's contention that these issues do not involve the GSA. In fact,
3 the issues include, among other things, components for delays, re-sequenced work, trade
4 stacking, labor, inefficiency, price escalation for labor and materials, and competing time for
5 time for use of the Project cranes, and the issues implicate other subcontractors with outstanding
6 Project claims, including the electrician, the interior wall and panel installer, and the door and
7 hardware installer. (Ambroso Decl., ¶ 18.)

8 Further, despite WEBCOR's contention otherwise, on or about June 11, 2007, counsel
9 for D/M, Mike Ambroso, participated in a telephone conference with counsel for WEBCOR
10 wherein the submittal of WEBCOR's certified claim was specifically discussed. (Ambroso
11 Decl., ¶ 25.) Specifically, D/M indicated its intent to fully pursue WEBCOR's claims against
12 the GSA in accordance with the Disputes Provisions of the General Contract and, further, D/M
13 reminded WEBCOR of its responsibility to insure that legal entitlement to its claims had been
14 established and that the claimed damages were fully supported by proper data. (Ambroso Decl.,
15 ¶ 26.) Further, both during the conference and on other occasions, WEBCOR was informed that
16 its claims involve complex schedule issues that are inherently related to the Global Claim.
17 (Ambroso Decl., ¶ 26.)

18 Finally, until institution of its lawsuit, counsel for WEBCOR had never indicated to
19 D/M that it considered D/M in breach of the WEBCOR Subcontract such that WEBCOR was
20 excused from compliance with the Disputes Provision. (Ambroso Decl., ¶ 27.)

21 **III.   LEGAL DISCUSSION**

22    **A.   D/M Has Been Diligent In Pursuing Claims On Behalf Of WEBCOR Such That The WEBCOR Subcontract Has Not Been Breached**
23

24 Although WEBCOR, in its Opposition, attempts to paint a picture of a dilatory D/M that
25 did *nothing* to advance WEBCOR's COR's claims, WEBCOR's contentions in this regard are
26 pure fiction. Contrary to WEBCOR's allegation that "For nearly two years, there is no dispute
27 that [D/M] breached its contractual obligation by continually and consistently refusing to pass
28 up [WEBCOR's] claims to the owner" (WEBCOR Opposition, 2:3-4), D/M in fact submitted

7
REPLY OF DEFENDANTS AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA TO PLAINTIFF WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS' OPPOSITION TO MOTION TO STAY

Case No.: 3:07-CV-02564-CRB

LAW OFFICES
Peckar & Abramson
A Professional Corporation

1  COR 60 to the GSA within days after receiving it from WEBCOR.  The GSA, however, took
2  over fourteen (14) months to reject the COR.  Subsequent to the GSA's rejection, WEBCOR
3  *itself* modified its COR 60 claim over a nearly six (6) month timeframe, wherein it significantly
4  reduced its claim.  During the remaining time prior to D/M's certification of the claim and
5  submission to the Contracting Officer, D/M was conducting its own due diligence as to
6  WEBCOR's "revised" COR 60, including working directly with WEBCOR to fine tune and
7  fully understand the claim.  Thus, WEBCOR's contention that D/M "materially breached" the
8  WEBCOR Subcontract is completely without merit.

9  With regard to WEBCOR's COR's 61-65, although WEBCOR correctly states that D/M
10 has not submitted these COR's to the GSA, this is due to the fact that, from the outset, D/M had
11 not been advised that WEBCOR would be submitting these COR's, thus it has been necessary
12 for D/M to conduct complete due diligence as to them.  Indeed, D/M and its consultants have
13 actually been in the process of analyzing the subject matter of these COR's vis-à-vis the Global
14 Claim that D/M will be submitting to the Contracting Officer, and D/M has determined that
15 COR's 61-65 are inextricably linked to the issues that will be addressed in the Global Claim,
16 *e.g.*, components of delays, re-sequenced work, trade stacking, labor inefficiency, price
17 escalation for labor and materials, and competing time for use of the Project crane, among other
18 things.

19 To the extent WEBCOR claims D/M is in breach of the WEBCOR Subcontract due to
20 D/M's alleged failure to comply with the Ninth Article[2], WEBCOR's contention is misplaced
21 for several reasons.  First, the Ninth Article does not create *per se* liability against D/M as
22 WEBCOR suggests.  Further, the Fourteenth Article, relating to "Changes", states that "any
23 claims for extras demanded by the Subcontractor arising from omissions and/or discrepancies in
24 the plans or specifications prepared by the Owner shall not be binding upon the Contractor or

---

[2] Without quoting the full text herein, it should suffice to note that WEBCOR grossly misstates the language of the Ninth Article so as to give the impression that the Article creates automatic liability against D/M.  In actuality, the Article lists a number of conditions that must be satisfied in order for liability to even be a possibility.  In any event, the Ninth Article must be read in light of, and in conjunction with, the entire WEBCOR Subcontract, including the Thirty-Eight Article.

8

REPLY OF DEFENDANTS AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA TO PLAINTIFF WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS' OPPOSITION TO MOTION TO STAY

Case No.:
3:07-CV-02564-CRB

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

honored by the Contractor except to the extent approved and the extent actually paid for by the Owner." There is no specific timeframe for this process and, as mentioned, D/M has determined that COR's 61-65 relate to issues between D/M and the GSA and must be submitted to the GSA via the CDA process, rather than independently. Finally, it is appropriate to submit these issues to the Contracting Officer as part of the Global Claim in light of the substance of the COR's. As part of this process, D/M is required to obtain certification of the claims and thus D/M must confirm the full nature and extent of the COR's.

Accordingly, the appropriate claims will be submitted by D/M to the Contracting Officer upon completion of the Global Claim and there has been no "breach" herein.

### B. The Disputes Clause Within the WEBCOR Subcontract Does Not Require WEBCOR To Waive Any Miller Act Rights It May Hold But, Rather, Merely Requires WEBCOR To Stay Its Claims

WEBCOR cites to *DDC Interiors, Inc. v. Dawson Constr. Co., Inc.*, 895 F.Supp. 270 (D.Colo. 1995)("*DDC*") and *Fanderlik-Locke Co. v. Morgan*, 285 F.2d 939 (10th Cir. 1960)("*Fanderlik*") for the propositions that the purposes of the Miller Act are to provide "special protection of the subcontractor on a government construction project", that the "risk of nonpayment for goods and services provided for a governmental project should be borne by the surety", and that "the fact that a prime contractor has a claim for the same amounts pending under the 'disputes clause' of the prime contract, does not affect Miller Act cases." (WEBCOR Opposition, 8:3-13.) While D/M does not disagree with WEBCOR's citation of law, D/M disputes that application of that law herein would preclude a stay of this case.

As discussed in D/M's moving papers, *DDC* is distinguishable from this matter in that *DDC* involved a general, *i.e.*, non-specific, subcontract provision that purported to *completely waive* the subcontractor's Miller Act rights. Here, the subcontract provision is a *specific* clause that does not purport to relinquish WEBCOR's Miller Act rights. Rather, it simply provides that WEBCOR will agree to *stay* any lawsuit against D/M while the dispute advances through the CDA resolution process.

/ / /

9
REPLY OF DEFENDANTS AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA TO PLAINTIFF WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS' OPPOSITION TO MOTION TO STAY

Case No.: 3:07-CV-02564-CRB

LAW OFFICES
Peckar & Abramson
A Professional Corporation

Similarly, *Fanderlik* is inapposite herein because the subcontract involved therein did not include a "disputes" clause such as the WEBCOR Subcontract but, rather, merely an incorporation by reference clause. (*Fanderlik*, *supra*, 285 F.2d 939, 942.)

In this instance, WEBCOR's contractual obligation to stay its lawsuit is clear and unambiguous, and the Court should give full effect to the intentions of the contracting parties as manifested in the Disputes Provision of the WEBCOR Subcontract. (*See*, *e.g.*, *Seal & Co., Inc. v. A.S. McGaughan Co.*, 907 F.2d 450, 454 (4th Cir. 1990).)

## IV.  CONCLUSION

WEBCOR claims in its Opposition that the SURETIES have not demonstrated a "hardship" or "inequity" such that a stay of these proceedings would be proper. While the SURETIES do not believe that such a showing is necessary in light of the clear law that requires WEBCOR's action to be stayed, the "hardship" and "inequity" that would arise if this action were not stayed in its entirety would be that the SURETIES, as well as D/M, would be required to attempt to resolve <u>this</u> dispute, and the larger Global Claim-related dispute with the GSA, in a piecemeal fashion that would unnecessarily expend resources and hinder judicial economy.

Accordingly, for all of the foregoing reasons, the SURETIES respectfully request that the Court stay these proceedings in order to give full effect to the parties' contractual obligations and intent.

Dated: August 10, 2007                     PECKAR & ABRAMSON, P.C.

By:        /s/
Raymond M. Buddie
Timothy E. Elliott
Rick W. Grady
Attorneys for AMERICAN CASUALTY COMPANY OF READING, PA; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

10

REPLY OF DEFENDANTS AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA TO PLAINTIFF WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS' OPPOSITION TO MOTION TO STAY

Case No.: 3:07-CV-02564-CRB

LAW OFFICES
Peckar & Abramson
A Professional Corporation