1  RAYMOND M. BUDDIE       (SBN 121353)
   TIMOTHY E. ELLIOTT      (SBN 210640)
2  RICK W. GRADY           (SBN 235976)
3  PECKAR & ABRAMSON, P.C.
   250 Montgomery Street, 16th Floor
4  San Francisco, CA 94104
   Telephone: (415) 837-1968
5  Facsimile: (415) 837-1320
6  Email: rbuddie@pecklaw.com
          telliott@pecklaw.com
7         rgrady@pecklaw.com

8  PATRICK HALLINAN        (SBN 33838 )
9  KENNETH WINE            (SBN 142385)
   LAW OFFICES OF HALLINAN & WINE
10 345 Franklin Street
11 San Francisco, CA 94102
   Telephone: (415) 621-2400
12 Facsimile: (415) 575-9930
   Email: butchhallinan@hotmail.com
13        kenwine@hotmail.com

14 Attorneys for AMERICAN CASUALTY COMPANY OF READING, PA; and NATIONAL
15 UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

16
                    UNITED STATES DISTRICT COURT
17
        NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION
18

| | |
|---|---|
| UNITED STATES of AMERICA for the Use and Benefit of WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS, and WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS,<br><br>          Plaintiffs,<br>vs.<br><br>DICK/MORGANTI, a joint venture; DICK CORPORATION; THE MORGANTI GROUP; AMERICAN CASUALTY COMPANY OF READING, PA; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No.: 3:07-CV-02564-CRB<br><br>**DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO STAY PROCEEDINGS** |

---

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY    Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

1  
2  AND ALL RELATED COUNTER-CLAIMS AND THIRD PARTY COMPLAINTS.
3  

4    I, Michael T. Ambroso, declare as follows:

5    1.    Unless otherwise indicated herein, the facts set forth below are personally known to me and if called upon I am willing and able to testify in support of these facts.

7    2.    I am the Assistant General Counsel and Assistant Secretary for Defendant Dick Corporation. Dick Corporation is the managing partner of Defendant Dick/Morganti, A Joint Venture formed between Dick Corporation and Defendant Morganti Texas, Inc. Dick/Morganti's sureties for the construction project which is the subject matter of this lawsuit are Defendant American Casualty Company of Reading, PA ("American") and National Union Fire Insurance Company of Pittsburgh, PA ("National").

13    3.    I have detailed knowledge of the construction project that gives rise to this action ("Project"), as well as detailed knowledge of Dick/Morganti's relationship with the owner of the Project, the General Services Administration of the United States Government ("GSA" or "Owner"). I also have detailed knowledge of Dick/Morganti's work with its subcontractors for the Project, including Plaintiff Webcor Construction, Inc. ("Webcor").

## BACKGROUND

4.    The Project was recently completed, and an official dedication ceremony for the building was held on July 9, 2007.

5.    Webcor's scope of work for the Project included providing the materials and labor for the placement and finishing of the concrete portions of the Project, including the foundation, structural beams, walls and floors.

6.    I have read Webcor's August 3, 2007 Opposition to Motion to Stay Proceedings ("Opposition"). I have also read the Declaration of Kenneth G. Jones, Esq. ("Jones Dec.") and the exhibits thereto and the Declaration of Jack Harrington ("Harrington Dec.") and the exhibits thereto which were filed in support of Webcor's Opposition.

///

2

LAW OFFICES  
Peckar & Abramson  
A Professional Corporation

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY    Case No.: 3:07-CV-02564-CRB  
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS  
49806.01

7. I have detailed knowledge of the facts, circumstances, and documents related to Webcor's work for the Project, including the issues and assertions raised in Webcor's Opposition, the Jones Dec., and the Harrington Dec.

### THE TIMELINE RELEVANT TO WEBCOR'S COR 60

8. Throughout the course of the Project Webcor submitted change order requests ("COR's") seeking increases in the compensation and/or time for completing Webcor's work. Webcor's largest COR was COR 60, which originally sought an increase of $5,221,053 in amounts due Webcor, and also requested a schedule extension of 209 days for Webcor's work. (See Exhibit A to Harrington Dec.)

9. COR 60 involves complex issues related to the plans and specifications for the Project, including the design and placement of rebar in the foundation and supporting beams and walls for this 18-story building.(Furnishing and installing the rebar was performed by another subcontractor of Dick/Morganti, with Webcor then installing the forms and placing and finishing the concrete.) COR 60 also involves complex issues related to the finish on the open, exposed surfaces of some of the concrete provided by Webcor.

10. Webcor submitted COR 60 to Dick/Morganti on or about June 29, 2005 and requested that Dick/Morganti, as the general contractor having the contract with the Owner, submit it to the GSA. A true and correct copy of Webcor's June 29, 2005 submittal of COR 60 is attached hereto as **Exhibit A**.

11. Within 10 days of receiving COR 60 from Webcor, Dick/Morganti submitted it to the GSA on July 8, 2005. (For numbering purposes between Dick/Morganti and the GSA, Dick/Morganti numbered this COR as "Change Order Request No. GSA 182." This COR is also labeled as Dick/Morganti Issue 364.) A true and correct copy of Dick/Morganti's July 8, 2005 submittal of COR 60 to the GSA is attached hereto as **Exhibit B**.

12. The GSA did not respond to Dick/Morganti's submittal of COR 60, despite numerous prompts and requests by Dick/Morganti to the GSA as to the status of the GSA review, until the GSA rejected COR 60 in a letter dated October 10, 2006. A true and correct copy of the GSA's rejection letter regarding COR 60 is attached hereto as **Exhibit C**.

Peckar & Abramson, A Professional Corporation

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY     Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

13. Dick/Morganti received the GSA's rejection letter at the Project site, and one of Dick/Morganti's attorneys, Joel Heusinger, forwarded the rejection letter to counsel for Webcor on October 27, 2006. A true and correct copy of Mr. Heusinger's cover letter to Webcor enclosing the GSA's rejection is attached hereto as **Exhibit D**.

14. After the GSA's October 10, 2006 rejection of Webcor's COR 60, Dick/Morganti and Webcor took steps to prepare and submit this COR as a formal, certified "Claim" to the GSA's Contracting Officer. The requirements for a formal Claim for the Project are set forth in the Disputes provision of Dick/Morganti's General Contract with the GSA and Federal Acquisition Regulation ("FAR") 52.233-1. A true and correct copy of the Disputes provision from the General Contract is attached hereto as **Exhibit E**.

15. Because Webcor is bound by the terms of the General Contract, including the certification requirement of the Disputes provision, Dick/Morganti informed Webcor that it must certify that COR 60 is made in good faith and that the supporting data was accurate and complete. (See Exhibit E, FAR 52.233-1(d)(2)(iii).)

16. As set forth in Mr. Heusinger's October 27, 2006 letter, and as the Project was nearing its final stages, Dick/Morganti was in the process of preparing its overall claim to the GSA which seeks additional compensation for Dick/Morganti and its subcontractors for the total increased costs and additional time for completing the Project (the "Global Claim").

17. Webcor's COR 60, as well as Webcor's COR's 61-65, involve complex issues related to impacts to the Project schedule, including impacts to the sequence of work done by other subcontractors and overall delays to the Project's final completion. As such, the events identified in Webcor's COR's are closely related to the delays and impacts experienced by Dick/Morganti and the other subcontractors on the Project, and to the claims those entities have been and will be asserting.

18. The claims by Dick/Morganti's other subcontractors that are related to the events identified in Webcor's COR's 60-65 include components for delays, re-sequenced work, trade stacking, labor inefficiency, price escalation for labor and materials, and competing time for time for use of the Project cranes, among other things. To date, the trade subcontractors making

4

LAW OFFICES
Peckar & Abramson
A Professional Corporation

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY    Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

claims related to the events identified in Webcor's COR's include, but are not limited to, the electrician, the interior wall and panel installer, and the door and hardware installer.

19. Because of the magnitude of the events identified in COR 60 and their impact on Dick/Morganti's analysis and preparation of the Global Claim, officials from Dick/Morganti and Webcor have worked together to make sure that Webcor's claim was and is consistent with the Global Claim. This work includes direct consultation between the separate scheduling consultants retained by Dick/Morganti and Webcor, including consultation between one of Dick/Morganti's consultants, Rex Snyder, and Webcor's consultant, Dan Kass, after the GSA's rejection of COR 60.

20. As stated above in paragraph 8, Webcor's COR 60 originally sought damages of $5,221,053 and requested a schedule extension of 209 days. Webcor's revised version of COR 60, which was accompanied by Webcor's proposed certification language, reduced Webcor's total damages figure to $4,671,740 and reduced Webcor's time extension request to 182 days. Webcor submitted this revised version of COR 60 and its proposed certification language to Dick/Morganti on or about March 23, 2007. A true and correct copy of the cover letter for Webcor's revised COR 60, Webcor's proposed certification language, and a summary of the revised version of COR 60 is attached hereto as **Exhibit F**.

21. Dick/Morganti, as the General Contractor, is also required to certify that any Claim submitted to the GSA (including any claim from its subcontractors) is made in good faith and is supported by accurate data. Thus, after receiving Webcor's revised version of COR 60 in late March 2007 and before certifying it and submitting it as a formal Claim to the GSA, Dick/Morganti conducted its own due diligence as to the supporting data for Webcor's COR 60. This was especially necessary given the fact that the total damages figure for COR 60 had been recently reduced by Webcor by approximately $550,000 and Webcor's request for a time extension had gone down by 27 days. (Some of Webcor's damage components actually increased, therefore increasing the need for due diligence.) Additionally, because COR 60 is related to the Global Claim, Dick/Morganti had to assure that Webcor's COR 60 was consistent

5

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY     Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

with the related claims by Dick/Morganti and other subcontractors. The Global Claim involves the analysis of approximately 2,000 itemized time and cost issues.

22. Dick/Morganti's due diligence upon receiving Webcor's revised claim included analysis of Webcor's entitlement issues by legal counsel and Dick/Morganti's consultants, analysis of Webcor's cost data by legal counsel and Dick/Morganti's consultants, and analysis of Webcor's schedule data and conclusions by Dick/Morganti's own schedule experts.

23. Also, after receiving revised COR 60 with Webcor's proposed certification language, Dick/Morganti and Webcor engaged in discussions regarding the proper language for Webcor's certification of its claim. The version of Webcor's certification attached to Webcor's March 23, 2007 cover letter, was not acceptable to Dick/Morganti because it did not comply with FAR 52.233-1(d)(2)(iii).

24. As Dick/Morganti's due diligence regarding Webcor's revised COR 60 was still ongoing, and before resolution of the issues related to the certification language, Webcor filed this lawsuit on May 15, 2007.

### THE JUNE 11, 2007 TELECONFERENCE

25. As referenced in paragraphs 11-12 of the Jones Dec., I participated in a teleconference on June 11, 2007 with John Bowles and Ken Jones (Webcor counsel). The subject matter of this teleconference was the submittal of Webcor's certified claim and how Webcor's recently filed lawsuit would be handled.

26. Mr. Jones' statement in paragraph 11 of his declaration that, in that teleconference, Dick/Morganti "…for the first time, agreed to pass up Webcor's claim regarding COR 60…" is inaccurate. On July 8, 2005, Dick/Morganti had already submitted Webcor's COR 60 as an uncertified claim to the GSA, and Dick/Morganti officials have informed Webcor on numerous occasions of Dick/Morganti's intent to fully pursue Webcor's claims against the GSA in accordance with the Disputes provisions of the General Contract. (See, e.g., Exhibit D, paragraph 2.) On numerous occasions, Dick/Morganti had also informed Webcor that any Webcor claim to be submitted to the GSA would have to be certified in accordance with the applicable FAR requirements and that, in order to do so, Dick/Morganti would have to assure

6

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY    Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

itself that there was legal entitlement for the claim and that the damage figures were supported by proper data. Further, Webcor had frequently been informed that its claims involve complex schedule issues that are inherently related to the Global Claim.

27. Mr. Jones' statement that "…Webcor further informed counsel for DMJV that it considered DMJV's breach material such that Webcor's further performance of any ADR or dispute provisions was excused" is incorrect. Webcor has never, prior to the filing of the present Opposition, asserted that Dick/Morganti breached its subcontract agreement so that Webcor was somehow excused from its obligations under the Disputes provisions of the subcontract.

### WEBCOR'S COR'S 61-65

28. Webcor's COR's 61-65 involve disputes between Dick/Morganti and the GSA. Specifically, each of these COR's involves time extension requests which form, in part, the basis for the Global Claim. Dick/Morganti's position vis-à-vis the GSA is that the GSA is responsible for the late start of the Project, weather delays, site access and staging issues caused by the GSA and its agents, as well as the associated delays and extended performance periods related to the tower cranes. Additionally, Dick/Morganti's schedule claims against the GSA relate to unknown and unsuitable soil conditions, as well as crane usage on the Project, which impacted not only Webcor, but numerous other subcontractors on the Project.

29. The dispute between Dick/Morganti and the GSA involves not only the number of days of time extension to which Dick/Morganti is entitled, but also issues as to whether any schedule extensions are compensable, or merely excusable but noncompensable. Webcor's COR's 61-65 are being analyzed as part of the Global Claim that will be presented to the GSA. It is necessary that Webcor participate in and provide further analysis of COR's 61-65 as it relates to the Global Claim.

30. Dick/Morganti denies that "…DMJV has admitted that COR's 61-65 do not involve any dispute between DMJV and the GSA…", as stated in paragraph 15 of the Jones Dec.

31. Dick/Morganti denies the assertions in paragraph 8 of the Harrington Dec. wherein Mr. Harrington states that he was informed by Jim Dravet or Fred Daven that COR's 61-65 "…are not the GSA's responsibility, do not involve the GSA, will not be a part of the

7

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY    Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

1  formal FARS claims process and that DMJV will not pass COR's 61 to 65 through to the GSA."
2  Mr. Dravet and Mr. Daven were formerly Dick/Morganti's Project Manager and Project
3  Director, respectively, but neither Mr. Dravet nor Mr. Daven have worked at the Project for close
4  to two years, nor have either been employed by Dick/Morganti for over one year.
5  Dick/Morganti's position regarding Webcor's COR's 61-65, both currently and at the time
6  Mssrs. Dravet and Daven were involved in the Project, is that these COR's likely involve
7  disputes between Dick/Morganti and the GSA.

8      32.    Contrary to any assertions by Mr. Jones or Mr. Harrington, there is a strong
9  likelihood that COR's 61-65 are legally and factually related to Dick/Morganti's claims against
10 the GSA, and resolution of the Global Claim is necessary prior to determining whether any
11 issues exist solely between Dick/Morganti and Webcor.

13 I declare under penalty of perjury under the laws of the State of California that the
14 foregoing is true and correct.

16 Executed this 10th day of August, 2007 at Pittsburgh, Pennsylvania.

*/s/ Michael T. Ambroso*
Michael T. Ambroso

---

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY     Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

8