# Exhibit A



GSA Jobsite Office:
1085 Mission St.
San Francisco, CA 94103
Ph. (415) 255-9790
Fx. (415) 255-9740

June 29, 2005

Dick/Morganti JV
Mr. Fred Daven
1068 Mission St.
San Francisco, CA 94103

**RE:    COR 60**
       **Rebar Congestion & Increased Finishes**

Dear Mr. Daven:

Enclosed please find Webcor's Change Order Request No. 60 that details Webcor's entitlement and cost and time impacts as a result of the well documented rebar congestion and concrete finish issues on the Project. A summary of the COR Exhibits is as follows.

The documents enclosed within the "Entitlement" tabs summarize Webcor's entitlement to additional time and compensation as a result of the rebar congestion and concrete finishes at the Project. Following that, you will find a summary of our damages in association with these two issues, with the appropriate supporting information for each issue.

Given the magnitude of this COR (**$5,221,053.00** and **209 days**), I would appreciate it if you would give it your utmost attention. This COR should be submitted to GSA for approval and payment immediately. Also, please copy me on any correspondence and/or transmittal to or from Dick and/or the GSA regarding the enclosed COR.

If you have any questions, please contact me at (510) 476-2500.

Sincerely,
Webcor Concrete Group

Jack Harrington
Project Manager

cc:  file – to D/M, J. Bowles, R. Edwards Jr., K. Jones (Bowles & Verna)

# Exhibit B



July 8, 2005
Letter No. 21058-02486

John N. Nolte, P.E.
General Services Administration
1068 Mission Street
San Francisco, CA 94103

Re:        New San Francisco Federal Office Building
           Project No. NCA00049
           Contract No. GS-09P-02-KTC-0002

Subject:   Change Order Request No. GSA182
           Rebar Congestion and Increased Concrete Finishes

Dear John N. Nolte, P.E.:

Enclosed herewith, please find Change Order Request No. GSA182 for an *ADD* of:

*Five Million Five Hundred Forty Nine Thousand One Hundred Eighteen Dollars and One Cent.......$5,549,118.01*

Detail

### Pricing Breakdown

| | |
|---|---|
| (SUB-TOTAL) GROSS BILLING AMOUNT | $5,172,907.94 |
| DM MODIFICATION MARK-UP RATE (7.2727%) | $376,210.08 |
| **TOTAL AMOUNT REQUESTED** | $5,549,118.01 |

Enclosed please find (1) copy of Dick/ Morganti's Change Order Request GSA182. This COR GSA182 is sent pursuant to the "Changes" clause of the Contract and incorporates a change order request from D/M's concrete subcontractor (Webcor) for the added costs and delays incurred as a result of the rebar congestion and increased concrete finishes on this Project. Please note that, while the attached COR includes D/M's allowable markup on Webcor's claimed costs, this COR pricing and request for time extension does not include other amounts and possible additional time owed to D/M and its other subs as a result of these issues. As soon as possible, D/M will present those additional amounts and time extension requests.

Related Documents: The following documents as modified in the detailed scope of work listed herein are included as part of this COR GSA182.

Included within this COR GSA182 package are two (2) binders of supporting documentation provided by Dick/ Morganti's subcontractor (Webcor).

Page 1 of 2



Given the magnitude of the amounts and time requested in this COR, we request that a meeting between GSA, D/M and Webcor be set up as soon as possible to discuss the specifics of this COR. Please call me at our site office (415) 522-1320 to set up a time for this meeting.


Sincerely,

**DICK / MORGANTI, JV**


Vincent G. Del Monte
Project Manager


Encl:    COR #GSA182
         Webcor COR #60, Dated 6/29/05

CC:      Fred Daven (Dick/ Morganti)
         Jim Dravet (Dick/ Morganti)
         Keith Ulinger (Hunt Construction Group)

File:    Issue #00364
         COR #GSA182

1068 Mission Street, San Francisco, California 94103     Phone (415) 522-1320   Fax (415) 522-1360

# Exhibit C



**GSA**

October 10, 2006

Francis Sarmiento, Project Manager
Dick/Morganti
1068 Mission Street
San Francisco, CA 94103

GSA Pacific Rim Region

RECEIVED

OCT 1 1 2006

DICK/MORGANTI

Subject:    New San Francisco Federal Office Building
            GSA Project No. NCA00049
            GSA Contract No. GS-09P-02-KTC-0002

Regarding:  Issue 364 – Rebar Congestion & Concrete Finishes REA
            DM Letter 21058-02486 dated 07/08/05, COR #GSA182 (Rec'd 07/14/05)
            DM Letter 21058-02600 dated 07/26/05, COR #GSA182B

Mr. Sarmiento:

The Government has reviewed Dick/Morganti Letters 21058-02486 dated 7/28/05 and
21058-02600 dated 07/26/05, and does not find merit for the associated requests for equitable
adjustment submitted under COR Nos. GSA182 & GSA182B. Additionally, the Government
finds DM's Requests for Equitable Adjustments to be incomplete with regard to time and not
consistent with the Contract Requirements. The attachment to this letter provides additional
detail on which we base this conclusion.

The Government rejects and disallows the cost associated with COR Nos. GSA182 &
GSA182B, Issue 364 as already being a requirement of the Contract. Should D/M disagree
with this rejection it still retains its right to request a Contracting Officer's Decision under
the disputes clause.

Roger K. Wiesnoski
Contracting Officer

Cc:    J. Nolte, M. Agleham, (GSA)
       D. Proctor (Hunt)
       W. Loftis (SmithGroup)
       T. Christ (mOrphosis)
       Issue 364
       File

U.S. General Services Administration
450 Golden Gate Avenue
San Francisco, CA 94102-3434
www.gsa.gov

Issue #364 – Rebar Congestion & Concrete Finishes
CORs Nos. GSA182 & GSA182B - Comments
May 5, 2006

**1   Webcore - Rebar Congestion, COR #GSA182**

   a.   Merit

DM/Webcor base their request on the Contract Documents being deficient with respect to ACI standards, however, they cite only three specific parts of the ACI and provide no specific examples of where the design documents are not in compliance. Hunt's review concludes the Contractor has failed to substantiate merit for this issue.

DM's design assist services included the deliverable of a Constructability Review. Although DM failed its contractual obligation and now characterizes the Structural Drawings as deficient and unconstructible.

DM/Webcor's arguments amount to the work, absent of any scope changes, was harder than they anticipated. However, later in the project with increased coordination, improved means and methods, changes in staff, and attention to quality the Contractor demonstrated the documents were, in fact, constructible to the specified level of quality.

   b.   Contractual Issues (Notwithstanding Merit)

DM's Request for Equitable Adjustment is incomplete under GSAR 552.243-71. While Webcore has included some scheduling information and time related costs related to its alleged time impact, DM has made no statement on time, or provided documentation on how the alleged impact has affected the critical path of the project other than to state DM may submit for additional time and costs at a later date.

DM has included Webcore costs which are included as part of $8,000/day compensable delay costs under Section H – Special Contract Requirements No. 5 of the Contract.

DM has included Webcore costs which are included as part of the 18% markup under Section H – Special Contract Requirements No. 5 of the Contract.

   c.   Other

DM has included Webcore costs for remedial work and for products to improve the finish over the initial quality achieved in the lower levels to meet the specified finish which are considered means and methods.

Markup rate included exceeds the 18% markup under Section H – Special Contract Requirements No. 5 of the Contract.

Issue #364 – Rebar Congestion & Concrete Finishes
CORs Nos. GSA182 & GSA182B - Comments
May 5, 2006

2.  **Webcor - Concrete Finishes, COR #GSA182**

    a.  Merit

        DM/Webcor base their request on ambiguity between the "smooth form finish" concrete specified in the contract and a GSA direction to provide Class A finish per the ACI.  While the ACI defines Class A finish as smooth form finish in areas exposed to view, no direction has been provided the Contractor to meet a standard higher than that specified in the in the Contract.

        DM/Webcor confirmed their understanding of the level of quality required by the Contract with its mockup submittal prior to proceeding with the work.  No notification of additional costs was made at the time the mockup was submitted and approved.

        As it relates to rebar congestions, DM/Webcor argue the rebar consolidation affected the consolidation of the concrete making the specified concrete finish unachievable. However, later in the project with increased coordination, improved means and methods, changes in staff, and attention to quality the Contractor demonstrated the required finish quality was achievable despite any alleged problems caused by the rebar congestion.

    b.  Contractual Issues (Notwithstanding Merit)

        DM's Request for Equitable Adjustment is incomplete under GSAR 552.243-71. While Webcore has included some scheduling information and time related costs related to its alleged time impact, DM has made no statement on time, or provided documentation on how the alleged impact has affected the critical path of the project other than to state DM may submit for additional time and costs at a later date.

        DM has included Webcore costs which are included as part of $8,000/day compensable delay costs under Section H – Special Contract Requirements No. 5 of the Contract.

        DM has included Webcore costs which are included as part of the 18% markup under Section H – Special Contract Requirements No. 5 of the Contract.

    c.  Other

        DM has included Webcore costs for remedial work and for products to improve the finish over the initial quality achieved in the lower levels to meet the specified finish which are considered means and methods.

        Markup rate included exceeds the 18% markup under Section H – Special Contract Requirements No. 5 of the Contract.

Issue #364 – Rebar Congestion & Concrete Finishes
CORs Nos. GSA182 & GSA182B - Comments
May 5, 2006

3. **Bay Area Reinforcing – Rebar Congestion, COR #GSA182B**

   a.

      DM/BAR base their request on the Contract Documents being deficient with respect
      to ACI standards, however, they cite only three specific parts of the ACI and provide
      no specific examples of where the design documents are not in compliance. Hunt's
      review concludes the Contractor has failed to substantiate merit for this issue.

      DM's design assist services included the deliverable of a Constructability Review.
      While BAR was apparently not involved with input in this review, DM failed its
      contractual obligation and now characterizes the Structural Drawings as deficient
      and unconstructible.

      DM/BAR's arguments amount to the work, absent of any scope changes, was harder
      than they anticipated. However, later in the project with increased coordination,
      improved means and methods, changes in staff, and attention to quality the
      Contractor demonstrated the documents were, in fact, constructible to the specified
      level of quality.

   b. Contractual Issues (Notwithstanding Merit)

      DM's Request for Equitable Adjustment is incomplete under GSAR 552.243-71.
      While BAR has included some scheduling information and time related costs related
      to its alleged time impact, DM has made no statement on time, or provided
      documentation on how the alleged impact has affected the critical path of the project
      other than to state DM may submit for additional time and costs at a later date.

      DM has included BAR costs which are included as part of $8,000/day compensable
      delay costs under Section H -- Special Contract Requirements No. 5 of the Contract.

      DM has included BAR costs which are included as part of the 18% markup under
      Section H – Special Contract Requirements No. 5 of the Contract.

   c.

      DM has included BAR costs for changes approved under Substitution Requests
      which were conditionally approved on the basis the approval represented no cost to
      the Government.

      The alleged congestion problem occurred in the vertical elements of the project. The
      only significant scope change to rebar on the project, Instruction Bulletin #5, involved
      mainly the horizontal elements. DM/BAR have represented they have been
      adequately compensated for this work, including its impact on adjacent vertical work,
      in the negotiated agreement on IB #5, COR/Issue 94, PS106.

# Exhibit D

ALLEN L. OVERCASH
PAUL M. SCHUDEL
EDWARD H. TRICKER
WM. LEE MERRITT
JOSEPH H. BADAMI
KERRY L. KESTER
ROBERT B. EVNEN
JOEL D. HEUSINGER
TERRY C. DOUGHERTY
JENNIFER J. STRAND
CRAIG C. DIRRIM
BRUCE A. SMITH
JEFFERY T. PEETZ
KENT E. ENDACOTT
KRISTA L. KESTER
JAMES A. OVERCASH
ANDREW B. KOSZEWSKI
NATHAN J. GURNSEY
KORY D. GEORGE
TODD W. WEIDEMANN
DAVID J. McCLURE
JEFFREY S. MAKOVICKA
ALLEN M. TATE
JILL D. FIDDLER

# WOODS & AITKEN
## L • L • P

SUITE 500
301 SOUTH 13TH STREET
LINCOLN, NEBRASKA 68508-2578
TELEPHONE 402-437-8500
FAX 402-437-8558

WWW.WOODSAITKEN.COM

October 27, 2006

E-mail – JHeusinger@woodsaitken.com
Direct Dial – (402) 437-8517

OMAHA OFFICE
SUITE 350
10250 REGENCY CIRCLE
OMAHA, NEBRASKA 68114-3754
TELEPHONE 402-898-7400
FAX 402-898-7401

———

WASHINGTON, D.C. OFFICE
THOMAS J. MOORMAN*
JOSHUA H. SEIDEMANN*‡
SUITE 200
2154 WISCONSIN AVENUE, N.W.
WASHINGTON, D.C. 20007
TELEPHONE 202-944-9500
FAX 202-944-9501

ADMITTED TO PRACTICE ONLY IN:
*THE DISTRICT OF COLUMBIA
‡NEW JERSEY AND NEW YORK

**via E-MAIL and U.S. MAIL**          *kjones@bowlesverna.com*

Mr. Kenneth G. Jones
Bowles & Verna LLP
2121 North California Blvd., Suite 875
P.O. Box 8180
Walnut Creek, CA  94596

       Re:    *GSA denial of Webcor COR's*

Dear Ken:

       I have enclosed for your review a copy of the letter we recently received from GSA denying our change order requests for the rebar congestion issue and the concrete finish issue.  Obviously, we are disappointed in the denials and the fact that we had to wait over 15 months to receive a one page response for each request.

       Regardless of our disappointment, we are committed to moving forward with these requests.  To that extent, we would like to set up a meeting to review the key issues involved in the overall claims of Dick/Morganti and review and revise the rejected change order requests for consistency with those issues. In addition, we would like to have our scheduling and cost experts review the change order requests as well and communicate directly with your experts.  I believe we are particularly interested in having the schedulers get together to review the number of days these issues may have affected the project critical path.

       We continue to believe that our joint cooperation is the most effective means of maximizing our recovery from the GSA.  We look forward to working with your team to finalize these requests for the claim.  Please let Mike or myself know your thoughts and schedule to work through these matters.  If you have any questions, please do not hesitate to contact me.

                        Sincerely,

                        Joel D. Heusinger

JDH:jb
Enclosure
cc:    Mike Ambroso (*via E-mail and U.S. Mail*)

00217840

# Exhibit E

liability to the Government for infringement of a patent of the United States shall be determined solely by the provisions of the indemnity clause, if any, included in this contract or any subcontract hereunder (including any lower-tier subcontract), and the Government assumes liability for all other infringement to the extent of the authorization and consent hereinabove granted.

(b) The Contractor agrees to include, and require inclusion of , this clause, suitably modified to identify the parties, in all subcontracts at any tier for supplies or services (including construction, architect-engineer services, and materials, supplies, models, samples, and design or testing services expected to exceed the simplified acquisition threshold); however, omission of this clause from any subcontract, including those at or below the simplified acquisition threshold, does not affect this authorization and consent.

(End of Clause)

8    FAR 52.233-1 DISPUTES (DEC 1998)

(a) This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613).

(b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved under this clause.

(c) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the Act until certified as required by subparagraph (d)(2) of this clause. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in reasonable time.

(d)(1) A claim by the Contractor shall be made in writing and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision. A claim by the Government against the Contractor shall be subject to written decision by the Contracting Officer.

(2)(i) The Contractor shall provide the certification specified in paragraph (d)(2)(iii) of this clause when submitting any claim exceeding $100,000.

(ii) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.

(iii) The certification shall state as follows: "I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify   the claim on behalf of the Contractor."

(3) The certification may be executed by any person duly authorized to bind the Contractor with respect to the claim.

(e) For Contractor claims of $100,000 or less, the Contracting Officer must, if requested in writing by the Contractor, render a decision within 60 days of the request. For Contractor-certified claims over $100,000, the Contracting Officer must, within 60 days, decide the claim or notify the Contractor of the date by which the decision will be made.

0146

SECTION I2 - PAGE 12

(f)  The Contracting Officer's decision shall be final unless the Contractor appeals or files a suit as provided in the Act.

(g)  If the claim by the Contractor is submitted to the Contracting Officer or a claim by the Government is presented to the Contractor, the parties, by mutual consent, may agree to use alternative dispute resolution (ADR).  If the Contractor refuses an offer for ADR, the Contractor shall inform the Contracting Officer, in writing, of the Contractor's specific reasons for rejecting the offer.

(h)  The Government shall pay interest on the amount found due and unpaid from (1) the date that the Contracting Officer receives the claim (certified, if required); or (2) the date that payment otherwise would be due, if that date is later, until the date of payment.  With regard to claims having defective certifications, as defined in FAR 33.201, interest shall be paid from the date that the Contracting Officer initially receives the claim.  Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable to the period during which the Contracting Officer receives the claim and then at the rate applicable for each 6 month period as fixed by the Treasury Secretary during the pendency of the claim.

(i)  The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under or relating to the contract, and comply with any decision of the Contracting Officer.

(End of clause)

9      FAR 52.236-13  ACCIDENT PREVENTION (NOV 1991)

(a)  The Contractor shall provide and maintain work environments and procedures which will -

(1) safeguard the public and Government personnel property, materials, supplies, and equipment exposed to Contractor operations and activities; (2) avoid interruptions of Government operations and delays in project completion dates; and (3) control costs in the performance of this contract.

(b)  For these purposes on contracts for construction or dismantling, demolition, or removal of improvements, the Contractor shall—

(1)  Provide appropriate safety barricades, signs, and signal lights;

(2)  Comply with the standards issued by the Secretary of Labor at 29 CFR Part 1926 and 29 CFR Part 1910; and

(3)Ensure that any additional measures the Contracting Officer determines to be reasonably necessary for the purposes are taken.

(c)  If this contract is for construction or dismantling, demolition or removal of improvements with any Department of Defense agency or component, the Contractor shall comply with all pertinent provisions of the latest version of U.S. Army Corps of Engineers Safety and Health Requirements Manual, EM 385-1-1, in effect on the date of the solicitation.

(d)  Whenever the Contracting Officer becomes aware of any noncompliance with these requirements or any condition which poses a serious or imminent danger to the health or safety of the public or Government personnel, the Contracting Officer shall notify the Contractor orally, with written confirmation, and request immediate initiation of corrective action.  This notice, when delivered to the Contractor or the Contractor's representative at the work site, shall be deemed sufficient notice of the noncompliance and that corrective action is required.  After receiving the notice, the Contractor shall immediately take corrective action.  If the Contractor fails or refuses to promptly take corrective action, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken.  The

SECTION I2 – PAGE 13                                           0147

# Exhibit F



Richard T. Bowles     David W. Trotter
Michael P. Verna     Jason J. Granskog
Robert L. Westerfield     Bradley R. Bowles
Richard A. Ergo     Lawrence D. Goldberg
K.P. Dean Harper     William T. Nagle
Mary P. Sullivan     Cathleen S. Huang
Kenneth G. Jones     Michael P. Connolly
Charles S. Goldman     Steven P. McFarlane
Kenneth B. McKenzie     Veronica Ann O. Benigno

March 23, 2007

**<u>Via Overnight Delivery</u>**

Joel D. Heusinger                  Michael Ambroso
Woods & Aitken LLP            Dick Corporation
301 South 13th Street, Suite 500      P.O. Box 10896
Lincoln, Nebraska 68508-2578        Pittsburgh, Pennsylvania 15236



       Re: **Webcor/Dick-Morganti**

Dear Mike & Joel:

      Enclosed is Webcor's certified claim for an equitable adjustment related to the rebar congestion and increased finishes requirements on the GSA Project No. NCA00049. Demand is hereby made that you submit this claim for a Contracting Officer's decision by no later than April 2, 2007. Please copy me on any transmittal of this claim to the GSA.

      Also, by no later than April 2, 2007, please provide us with all bonding and surety information related to this project. Further, please put any bonding company and/or surety for this Project on notice of Webcor's claim herein.

      Finally, when we met in December of last year you informed us that we would receive Dick Morganti's position with respect to Webcor's Change Order Nos. 61 - 65 by the end of January 2007. Having received no response, we can only assume that Dick Morganti has no basis for its failure to pay these Change Orders. Consequently, demand is hereby made that Dick Morganti approve and pay for Change Order Nos. 61-65 by no later than April 2, 2007.

      Please do not hesitate to call if you have any questions.

                       Very truly yours,

                       KENNETH G. JONES

Encl.

## Certification of Claim

I certify, under penalty of perjury, that Webcor's claim for additional compensation as a result of the rebar congestion and increased finish requirements on the GSA Project No. NCA 00049 is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes it is entitled; and that I am duly authorized to certify the claim on behalf of the Contractor.

Dated: 3/22/07

By: _____
   Webcor Concrete



San Francisco Federal Building
31145 San Antonio St.
Hayward, CA 94544
Ph. (510) 476-2500
Fx. (510) 476-3000

COR 60R1
Rebar Congestion and Increased Finishes

## Summary of Costs

| | Item | Additional Costs due to Rebar Congestion | | Additional Costs due to Increased Finishes | | Total | |
|---|---|---|---|---|---|---|---|
| 1 | Labor | $ | 2,448,865.75 | $ | 775,182.88 | $ | 3,224,048.63 |
| 2 | Material, Concrete | $ | 149,852.26 | $ | 32,572.20 | $ | 182,424.46 |
| 3 | Material, Other | $ | 22,371.86 | $ | 247,763.73 | $ | 270,135.59 |
| 4 | Equipment | $ | 373,312.83 | $ | 144,782.25 | $ | 518,095.08 |
| 5 | Expenses | $ | 314,576.54 | $ | 162,459.96 | $ | 477,036.51 |
| | | | | | | $ | - |
| | **Totals** | $ | **3,308,979.24** | $ | **1,362,761.02** | $ | **4,671,740.27** |

| **Time Extension (Days)** | **134** | **48** | **182** |
|---|---|---|---|