```
 1  Roger P. Heyman (State Bar No. 046798)
    James K. T. Hunter (State Bar No. 073369)
 2  HEYMAN • DENSMORE LLP
    21550 Oxnard Street, Suite 450
 3  Woodland Hills, California 91367
    Telephone: 818.703.9494
 4  Facsimile: 818.703.9495

 5  Attorneys for Permasteelisa Group USA Holdings Corp., and
    Permasteelisa Cladding Technologies, L.P. fdba Permasteelisa
 6  Cladding Technologies, LTD.
```

ORIGINAL FILED

SEP 1 8 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA for the Use and Benefit of WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS, and WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS,<br><br>Plaintiffs,<br><br>vs.<br><br>DICK/MORGANTI, a joint venture; DICK CORPORATION; THE MORGANTI GROUP; AMERICAN CASUALTY COMPANY OF READING, PA; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AMERICAN CASUALTY COMPANY OF READING, PA; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>Third Party Plaintiffs, | CIVIL ACTION NO.: 3:07-CV-02564-CRB<br><br>BRIEF OF THIRD PARTY DEFENDANT PERMASTEELISA IN RESPONSE TO AMENDED SCHEDULING ORDER OF AUGUST 27, 2007<br><br>HEARING DATE: October 19, 2007<br>HEARING TIME: 10:00 a.m.<br>COURTROOM 8<br>JUDGE: Hon. Charles R. Breyer |

| | |
|---|---|
| 1 | vs. |
| 2 | BOYETT CONSTRUCTION, INC., a California corporation; MARELICH MECHANICAL CO., INC., a California corporation; PERFORMANCE CONTRACTING GROUP, INC., dba PERFORMANCE CONTRACTING, INC., a Delaware corporation; PERMASTEELISA GROUP USA HOLDINGS CORP., a Delaware corporation fdba PERMASTEELISA CLADDING TECHNOLOGIES, LTD.; PERMASTEELISA CLADDING TECHNOLOGIES L.P., a Delaware limited partnership, fbda PERMASTEELISA CLADDING TECHNOLOGIES, LTD.; ROSENDIN ELECTRIC, INC., a California corporation; THIRD PARTY DOE DEFENDANTS 1 THROUGH 20, |
| | Third Party Defendants. |

I.

PERMASTEELISA'S CLAIMS

Permasteelisa Cladding Technologies, L.P. fdba Permasteelisa Cladding Technologies, LTD ("Permasteelisa") was the curtainwall/glazing/metal panel/skylights/sunscreen Subcontractor under an $18.5 million Subcontract with the Prime Contractor, Dick/Morganti Joint Venture, for the San Francisco Federal Building.[1] Permasteelisa is currently completing final punch list work on the Project which will be fully completed prior to the October 19, 2007 hearing herein.

Dick/Morganti has failed to pay Permasteelisa the past due contract balance of $1,280,244.00 (the last payment by Dick/Morganti to Permasteelisa was over a year ago on October 3, 2006). In addition, Permasteelisa has incurred additional costs in excess of $2.0 million due to delays, disruption and storage requirements on the Project. The delay, disruption and storage costs were primarily due to delayed and out of tolerance concrete work, delayed framing work, severe trade stacking caused by out-of-sequence work and trade related damage to Permasteelisa's work, causes attributable to Dick/Morganti. These claims are essentially and legally made against Dick/Morganti and its Sureties, not against the United States. Permasteelisa has a total claim against Dick/Morganti and the Sureties in excess of $3.3 million. Dick/Morganti has been given notice of Permasteelisa's claims against it and demand for payment thereof has been made to Dick/Morganti numerous times from 2005 to the present, but Dick/Morganti has refused all of Permasteelisa's claims and demands.

The GSA has not considered or adjudicated, and is not considering or adjudicating, these claims and, to the best of Permasteelisa's knowledge, they were never presented nor certified by Dick/Morganti to the GSA or to the Contract Officer.

Permasteelisa's claims are all covered, and their adjudication governed, by the Miller Act (40 U.S.C. 3131-3133).[2] Permasteelisa currently and absolutely intends to file a Miller Act action

---

[1] Permasteelisa Group USA Holding Corp. was also named as a third party defendant but it is neither a party to nor successor-in-interest to a party to the Subcontract.

[2] The Miller Act covers the claims for delay costs as well as the unpaid contract balance. See e.g., *Mai Steel Service Inc. v. Blake Construction Co.* 981 F.2d 414, 418-419 (9th Cir. 1992); *Consolidated Electrical & Mechanicals Inc. v. Biggs General Contracting Inc.* 167 F.3d. 432, 434-

1

against Dick/Morganti and the Sureties for its damages in excess of $3.3 million upon completion of its work on the Project pursuant to 48 U.S.C. 3133 (b)(1).[3]

## II.

## SUBCONTRACTOR CLAIMS SHOULD NOT AND MAY NOT BE STAYED

While the Sureties'[4] pending motion to stay is directed only towards Webcor's action, their Third Party Complaint indicates that they will seek a "Judicial Order declaring that the Third Party Defendants stay any separate claims, proceedings or actions related to the Project and participate in and be bound by the ongoing [proceedings pending between Dick/Morganti and the GSA]." Moreover, Permasteelisa, like PCI "fears that a stay in these proceedings would likely portend a stay of proceedings in its own [soon to be filed] case." Since the Dick/Morganti/GSA dispute process does not include Permasteelisa's claims against Dick/Morganti and the Sureties and since it is a process that could extend well past the one year deadline for the filing of a Miller Act complaint, a stay against Permasteelisa would effect a total deprivation of Permasteelisa's right to file its Miller Act complaint.

And such a stay would be absolutely improper under the Miller Act. The existence of a dispute clause in the Dick/Morganti Prime Contract and its flow down by incorporation by reference into the subcontracts is industry standard. "Almost all of the contracts between subcontractors and

---

435 (8th Cir. 1999); *Lighting & Power Services, Inc. v. Roberts* 354 F. 3d 817, 821 (8th Cir. 2004).

[3] "Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due."

[4] Preliminarily, it should be noted that the Sureties have no standing to seek a stay based upon the dispute resolution provisions of the subcontracts. Subcontractors are not contractually bound to the Sureties at all. Nor do the Sureties have any direct or indirect contract rights under the boilerplate subcontract language between Dick/Morganti and the subcontractors (Section 38). To the contrary, the pertinent "stay" provisions of Section 38 expressly apply to "a dispute, controversy or claim between the Contractor and the Subcontractor" (Section 38 (d)). Neither the Sureties nor their bonds are mentioned.

2

BRIEF OF THIRD PARTY DEFENDANT PERMASTEELISA   3:07-CV-02564-CRB
IN RESPONSE TO AMENDED SCHEDULING ORDER OF AUGUST 27, 2007

HEYMAN•
DENSMORE LLP

prime contractors in government construction cases contain language similar to or identical with the language in this contract." *H.W. Caldwell & Son, Inc. v. John H. Moon & Sons, Inc.* 407 F.2d 21, 23 (5th Cir. 1969)."

The Circuit Courts of Appeal addressing the issue, including specifically the Ninth Circuit Court of Appeal, have uniformly held that unless a subcontractor has expressly and specifically waived its rights under the Miller Act such a dispute clause contained in a prime contract and incorporated by reference into a subcontract <u>does not limit, and cannot be used to stay</u>, a subcontract's right to pursue its Miller Act claim (and this is true even if the prime contractor has claims against the GSA for the same amounts that the subcontractor seeks to recover from the prime contractor). See e.g., *Central Steel Erection Co. v. Will*, 304 F.2d 548, 551 (9th Cir. 1962); *Fanderlik-Locke Co. v. United States*, 285 F.d 939, 942-943 (10th Cir. 1960); *Pembroke Steel Company v. Phoenix General Construction Co.*, 462 F.2d 1098, 1099 (4th Cir. 1972); *B's Company v. Cleveland Electric Company of South Carolina*, 373 F.2d 585, 588 (4th Cir. 1967); *H.W. Caldwell & Son, Inc. v. John H., Moon & Sons, Inc.*, 407 F.2d 21, 23 (5th Cir. 1969); *T/N Plumbing & Heating Co. v. Fryd Construction Corp.*, 423 F.2d 980, 983-984 (5th Cir. 1970); *DDC Interiors Inc. v. Dawson Construction Co.*, 895 F. Supp. 270, 271-274 (D. Colo. 1995).

The purpose of the Miller Act is to provide security for subcontractors furnishing labor and material in the performance of government contracts. *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957). It is to ensure the right to the "<u>prompt payment</u>" of subcontractor claims. *DDC Interiors Inc. v. Dawson Construction Co.*, 895 F. Supp. 270, 271 (D. Colo. 1995). It shifts the risk of non-payment from the subcontractors to the Sureties. *American Sur. Co. of New York v. Hinds*, 260 F.2d 366, 368 (10th Cir. 1958). "Because the Miller Act is 'highly remedial in nature . . . [i]t is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects.'" *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 citing *Fleisher Engineering Co. v. United States ex rel. Hallenbeck*, 311 U.S. 15, 17 (1940)."

///

The only exception to the unanimous Circuit Court law barring <u>any</u> stay is where the subcontractor has "expressly and specifically" waived its rights under the Miller Act. Under the prior case law, subcontractors' Miller Act rights could only be waived by "clear and express provisions in the contract between the prime contractor and the subcontractor . . . [which] at a minimum . . . must include mention of the Miller Act and unambiguously express intention to waive the rights provided by it." *DDC Interiors Inc. v. Dawson Construction Co.,* 895 F. Supp. 270, 273-274 (D. Colo. 1995). Not only is there no such provision which <u>either</u> expressly "mentions" or expressly "waives" the Miller Act rights in the Permasteelisa Subcontract, but in 1999 the Miller Act was specifically amended by Congress to impose an even more stringent requirement for any waiver, requiring that it be in a separate, subsequent writing executed after the subcontractor had first furnished labor and material under its subcontract - - a writing that also does not exist between Permasteelisa and Dick/Morganti. 40 U.S.C. 3133 (c) now reads:

> "A waiver of the right to bring a civil action on a payment bond required under this subchapter is void unless the waiver is --
>
> (1)   in writing;
>
> (2)   signed by the person whose right is waived; and
>
> (3)   executed after the person whose right is waived has furnished labor or material for use in the performance of the contract."

Absent such an express waiver, a subcontractor has the <u>absolute right</u> to file and prosecute its claims under the Miller Act; <u>and that action need not await, nor may it be stayed pending, completion of any dispute process between the Prime Contractor and the GSA.</u>

*Central Steel Erection Co. v. Will,* 304 F.2d 548, 551 (9th Cir. 1962):

> "Appellants argue that Willar cannot maintain this action for failure first to exhaust their administrative remedies. The argument is that since Willar in its subcontract agreed to be bound by the terms of the main contract between the prime contractor and the United States, the subcontractor was bound to comply with the disputes provision of the

prime contractor's undertaking with the United States. Appellants point to that contract's disputes clause which provides that any dispute concerning a question of fact arising out of the contract which is not disposed of by agreement shall be decided by the Contracting Officer, and that from that officer's decision the contractor may appeal to the head of the department, whose decision shall be final and conclusive . . . For the reasons stated in *Fanderlik-Locke Co. v. United States*, 10 Cir., 285 F.2d 939, this disputed clause in a case of this kind applies only to the prime contractor and not to a subcontractor."

*Fanderlik-Locke Co. v. United States,* 285 F.2d 939, 942-943 (10th Cir. 1960) (emp. added):

"The purpose of the Miller Act is to provide security for those who furnish labor and material in the performance of government contracts, and a liberal construction should be given the Act to accomplish this purpose. (Citations) The benefits of the Act are not intended for the prime contractor who is required by the Act to furnish a bond to effectuate its provisions. If a prime contractor is dissatisfied with the administrative disposition of a claim submitted under the 'disputes clause' of the prime contract, it may seek a remedy in the Court of Claims. <u>The liability of the United States is to the prime contractor, and the 'disputes clause' provides only for administrative consideration of claims made by the prime contractor.</u>

\* \* \*

<u>The subcontractor has no standing before the Contracting Officer or the Board of Contract Appeals, and no provision is made for the hearing of disputes between a prime contractor and a subcontractor. The remedy for one seeking to recover for labor and materials furnished on a government contract is under the Miller Act, and</u>

5

BRIEF OF THIRD PARTY DEFENDANT PERMASTEELISA
IN RESPONSE TO AMENDED SCHEDULING ORDER OF AUGUST 27, 2007
Z:\Clients\Permasteelisa\San Fran Fed Case\Pleadings\Brief.doc

3:07-CV-02564-CRB

ordinarily the fact that a prime contractor has a claim for the same amounts pending under the 'disputes clause' of the prime contract, does not affect Miller Act cases.

* * *

If Morgan is limited to the presentation of his claims as provided for in the 'disputes clause' of the prime contract, he has surrendered his right to the benefits of the Miller Act provisions."

*Pembroke Steel Company v. Phoenix General Construction Co.*, 462 F.2d 1098, 1099 (4th Cir. 1972):

"Phoenix and its surety have resisted these suits on the ground that the subcontracts, in effect, stipulate that all disputes between the general and subcontractor must be submitted to the Government, and administratively decided before suit can be brought against Phoenix. <u>In short, the defendants say that the plaintiffs waived their immediate right of action.</u>

Accordingly, the defendants moved the District Court to stay the prosecution of the suits until the administrative decision was rendered ... With the appellees, we agree that under the Miller Act the subcontractor has no claim upon the Government. As the Act prescribes, the only remedy is to proceed against the prime contractor and his surety. <u>By law, the Government does not recognize the subcontractor, and there can be no submission to the Government for resolution of disputes between the subcontracting parties.</u> While the right to sue the prime contractor may be waived "by clear and express provisions" in the subcontract, we observe no such waiver here, express or implied."

///

*B's Company v. Cleveland Electric Company of South Carolina*, 373 F.2d 585, 588 (4th Cir. 1967), (quoted and cited with approval in *H.W. Coldwell & Son Inc. v. John H. Moon & Sons Inc.*, 407 F.2d 21, 23 (5th Cir. 1969)) (emp. added):

> "It is true that the terms of the subcontract stated that the subcontractor was bound by the terms of the prime contract and that it assumed the prime contractor's obligations to the Government insofar as applicable to the work performed by the subcontractor, but this identical language has been held, and we think properly, not to require the subcontractor to pursue the administrative remedies given the prime contractor in the disputes article. (Citations.) The Government does not recognize or deal with the subcontractor and owes no obligation to him for the work he performs. (Citations.)
>
> &ast; &ast; &ast;
>
> If the subcontractor is not paid, his only remedy is a suit under the Miller Act. He has no lien and no claim against the Government. <u>This is the reason for the Act and, while this right to sue may be waived by clear and express provisions in the contract between the prime contractor and the subcontractor, no such provisions are contained in the contract at issue here and no such drastic curtailment of the subcontractor's rights will be read into a general agreement to be bound by the terms of the prime contract in so far as they affect the work of the subcontractor. . . . The obligation to pursue and to exhaust the administrative remedies provided in the disputes article of the prime contract is the prime contractor's obligation alone</u>, and any conflict between these divergent remedies constitutes a business risk which the parties incur by virtue of their different contracts."

///

HEYMAN · DENSMORE LLP

BRIEF OF THIRD PARTY DEFENDANT PERMASTEELISA
IN RESPONSE TO AMENDED SCHEDULING ORDER OF AUGUST 27, 2007
Z:\Clients\Permasteelisa\San Fran Fed Case\Pleadings\Brief.doc

3:07-CV-02564-CRB

*T/N Plumbing & Heating Co. v. Fryd Construction Corp.*, 423 F.2d 980, 983-984 (5th Cir. 1970) (emp. added):

> "<u>A subcontractor has no standing before the Contracting Officer or the Board of Contract Appeals, and no provision is made for the hearing of disputes between a prime contractor and a subcontractor. The remedy for a subcontractor seeking to recover for labor and materials furnished on a government contract is under the Miller Act</u>, and it has been held that when a prime contractor has a claim for the same amounts pending under the 'disputes clause' of the prime contract, a subcontractor's claim under the Miller Act is not affected."

This review of the law reveals the Sureties' Motion for Stay and Third Party Complaint for exactly what they are: An old, always rejected, ploy by Miller Act Sureties to attempt to avoid liability to the very subcontractors for whose protection the Miller Act was enacted and for whom it is the sole recourse for recovery. No stay should be entered now or at any time baring any subcontractor on this federal government project from pursuing their absolute Miller Act rights for prompt payment against Dick/Morganti and the Sureties.

Respectfully submitted,

HEYMAN • DENSMORE LLP

By _____
ROGER P. HEYMAN
Attorneys for Permasteelisa Group USA Holdings Corp., and Permasteelisa Cladding Technologies, L.P. fdba Permasteelisa Cladding Technologies, LTD.

8

BRIEF OF THIRD PARTY DEFENDANT PERMASTEELISA
IN RESPONSE TO AMENDED SCHEDULING ORDER OF AUGUST 27, 2007                3:07-CV-02564-CRB

PROOF OF SERVICE

STATE OF CALIFORNIA      )
COUNTY OF LOS ANGELES    )

I, LUISA M. SOLIS, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action. My business address is Heyman · Densmore LLP, 21550 Oxnard Street, Suite 450, Woodland Hills, California 91367.

On September 14, 2007, I served the document(s) described as **BRIEF OF THIRD PARTY DEFENDANT PERMASTEELISA IN RESPONSE TO AMENDED SCHEDULING ORDER OF AUGUST 27, 2007** on the interested parties in this action by enclosing a true copy of the document(s) in a sealed envelope addressed to the addressee(s) as listed on the attached service list:

☒ BY MAIL: I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 21550 Oxnard Street, Suite 450, Woodland Hills, California 91367 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm. Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Heyman · Densmore LLP, 21550 Oxnard Street, Suite 450, Woodland Hills, California 91367.

☐ ☐ BY FED EX ☐ UPS ☐ OVERNITE EXPRESS: I deposited such envelope in a facility regularly maintained by ☐ FED EX ☐ UPS ☐ OVERNITE EXPRESS with delivery fees fully provided for or delivered the envelope to a courier or driver of ☐ FED EX ☐ UPS ☐ OVERNITE EXPRESS authorized to receive documents at Heyman · Densmore LLP, 21550 Oxnard Street, Suite 450, Woodland Hills, California 91367 with delivery fees fully provided for.

☐ BY FACSIMILE: By use of facsimile machine number (818) 703-9495, I served a copy of the within document(s) on the interested parties at the facsimile numbers listed on the attached Service List. The transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

☐ BY PERSONAL SERVICE: I caused said document(s) to be delivered to the addressees listed on the attached Service List.

☐ [State]      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ [Federal]    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on September 14, 2007, at Woodland Hills, California.

LUISA M. SOLIS

---

## SERVICE LIST

| | |
|---|---|
| Kenneth G. Jones, Esq.<br>California Plaza<br>2121 N. California Blvd., Suite 875<br>Walnut Creek, California 94596-8180 | Attorneys for Plaintiff Webcor Construction, Inc. dba Webcor Builders |
| Raymond M. Buddie, Esq.<br>Rick W. Grady, Esq.<br>Peckar & Abramson, P.C.<br>250 Montgomery Street, 16th Floor<br>San Francisco, California 94104 | Attorneys for Defendants Dick/Morganti; Dick Corporation; and The Morganti Group, Inc. and American Casualty Company of Reading, PA; National Union Fire Insurance Company of Pittsburgh, PA |
| J. Morrow Otis, Esq.<br>Steven L. Iriki, Esq.<br>OTIS CANLI & IRIKI<br>625 Market Street, 4th Floor<br>San Francisco, California 94105-3306 | Attorneys for Third-Party Defendant Performance Contracting, Inc. erroneously sued as Performance Contracting Group, Inc |

HEYMAN · DENSMORE LLP

BRIEF OF THIRD PARTY DEFENDANT PERMASTEELISA
IN RESPONSE TO AMENDED SCHEDULING ORDER OF AUGUST 27, 2007

3:07-CV-02564-CRB