IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. C 07-02564 CRB |
| Plaintiff, | **ORDER** |
| v. | |
| DICK/MORGANTI, | |
| Defendant. | |

On October 19, 2005, this Court granted defendants' motion to stay. This supplemental Order addresses in greater detail third-party defendant Permasteelisa's contention that the stay may not be issued as a matter of law.

**BACKGROUND**

This case arises from a dispute between the general contractor and a number of subcontractors who performed work on the San Francisco Federal Building. Pursuant to the Miller Act, 40 U.S.C. § 3131, the general contractor for the project, defendant Dick/Morganti, purchased a bond to secure the project's subcontractors. The bond was furnished by co-defendants American Casualty Company of Reading, PA and National Union Fire Insurance Company of Pittsburgh, PA ("Sureties").

Plaintiff Webcor Construction, Inc. ("Webcor") entered into a subcontract agreement with Dick/Morganti to perform work on the project. Webcor alleges that Dick/Morganti

breached the subcontract agreement and seeks recovery in this Court under the Miller Act, and in quantum meruit for the reasonable value of services rendered.

Dick/Morganti, for its part, contends that defects in the government's design documents for the Federal Building led to the cost overruns. Dick/Morganti alleges that it intends to submit a "Global Claim" to the General Services Administration's contracting officer to seek recovery of these cost overruns. According to Dick/Morganti, this Global Claim will incorporate Webcor's claim along with virtually all claims that have been made, or are likely to be made, by the various subcontractors for the project.

The Sureties have moved to stay Webcor's claim pending the administrative resolution of the Global Claim. The Sureties have also filed a third-party complaint seeking a declaratory judgment staying the claims of additional subcontractors that worked on the Federal Building project (collectively "Subcontractors"). The Sureties rely on the following language, which the parties included in each of the subcontracts:

> If the Owner [GSA] and the Contractor [Dick/Morganti], pursuant to the General Contract or by agreement, submit any dispute, controversy, or claim between them to arbitration or some other dispute resolution procedure specified in the General Contract and such a matter involves or relates to a dispute, controversy, or claim between the Contractor and the Subcontractor, Subcontractor agrees . . . <u>to stay any action filed by the Subcontractor until the dispute resolution and appeals process between the Contractor and the Owner is exhausted</u>.

Ambroso Decl. Exh. D ¶ 38 (emphasis added).

One of the Subcontractors, Permasteelisa, argues that this provision cannot, as a matter of law, effect a stay. Permasteelisa contends that a valid waiver of its Miller Act right to sue must be express and specific, and that this provision lacks the requisite specificity.

## DISCUSSION

Permasteelisa places principal reliance on a body of case law that prohibits the incorporation of a prime contract's disputes clause into a subcontract by way of a general incorporation clause. See Central Steel Erection Co. v. Will, 304 F.2d 548, 551 (9th Cir. 1962); Fanderlik-Locke Co. v. United States, 285 F.2d 939, 942-43 (10th

1  Cir. 1960); Pembroke Steel v. Phoenix Gen. Constr. Co., 462 F.2d 585, 588 (4th Cir.
2  1972).
3     In Fanderlik, for instance, a general contractor entered into an agreement with
4  the United States to construct dwelling units at an Air Force base. Fanderlik, 285 F.2d
5  at 941. The agreement provided that "any dispute arising under this contract which is
6  not disposed of by agreement shall be decided by the Contracting Officer." Id. The
7  general contractor then entered into subcontracts which, in general language,
8  purported to incorporate the terms of the prime contract. See id. at 942. Because
9  subcontractors have no standing to present their claims to the Contracting Officer,
10 binding the subcontractors to the disputes clause was held to effect a complete waiver
11 of their right to sue under the Miller Act. See id. at 943. The Fanderlik court
12 concluded that "[a]n agreement should not be construed to bring about such a result
13 unless it be manifest by the plain language of the contract." Id. (internal quotations
14 omitted); accord Central Steel, 304 F.2d at 551 (adopting Fanderlik's analysis).
15    Here, however, the Sureties do not seek to bind the Subcontractors to the
16 disputes process of the prime contract by way of a general incorporation clause.
17 Rather, the disputes process the Sureties seek to enforce is explicitly set forth in the
18 subcontracts themselves. As noted previously, the subcontracts expressly provide that
19 if Dick/Morganti avails itself of the disputes procedures of the general contract, the
20 "Subcontractor agrees . . . to stay any action filed by the Subcontractor until the
21 dispute resolution and appeals process between the Contractor and the Owner is
22 exhausted." Ambroso Decl. Exh. D ¶ 38. Because this provision is contained in the
23 subcontracts at issue, the line of cases Permasteelisa relies on is clearly
24 distinguishable. See United States v. Daniel, 357 F. Supp. 853, 861 (N.D. Ill. 1973)
25 (Fanderlik analysis does not control when dispute process is set forth expressly in the
26 subcontract); United States v. Boland, 922 F. Supp. 597 (S.D. Fla. 1996) (enforcing
27 waiver of Miller Act rights contained in subcontract).
28

3

This Court is mindful that the Miller Act should be construed liberally to effect its purpose of protecting subcontractors from unscrupulous and insolvent general contractors. See United States v. Weststar Eng'g, Inc., 290 F.3d 1199, 1205 (9th Cir. 2002). The Miller Act does not, however, strip subcontractors of their right to specify resolution processes that will govern contractual disputes, if any should arise. See Fanderlik, 285 F.2d at 943; Pembroke, 462 F.2d at 1099. Indeed, in many situations, the subcontractor may have a financial incentive to stay its Miller Act suit. For example, by staying the judicial proceeding, a subcontractor can avoid costly litigation and rely on the general contractor's more ample resources to advance its claim through the Contract Disputes Act's administrative process. Moreover, because the Contract Disputes Act includes stringent time limitations, see 41 U.S.C. § 605(c)(2), resolution may be reached in a more timely manner. Thus, where the unambiguous language of a subcontract provides for a stay, enforcing that language does not contravene the purposes of the Miller Act. Fanderlik, 285 F.2d at 943 (holding that Miller Act rights can be relinquished by "plain language"); Pembroke, 462 F.2d at 1099 (holding that right to sue under Miller Act can be waived by "clear and express provisions").

The Subcontractors also contend that § 3133(c) of the Miller Act prohibits staying this action. Section 3133(c) was added to the Miller Act by amendment in 1999 and provides that:

> A waiver of the right to bring a civil action on a payment bond required under this subchapter is void unless the waiver is –
> (1)   in writing;
> (2)   signed by the person whose right is waived; and
> (3)   executed after the person whose right is waived has furnished labor or material for use in the performance of the contract.

40 U.S.C. § 3133(c).

4

Defendants do not argue that the subcontracts at issue were executed after the provision of labor or materials. Thus, this Court may assume that § 3133(c) would operate to void any "waiver of the [Subcontractors'] right to bring a civil action" under the Miller Act. This Court is confident, however, that the temporary stay at issue does not effect a "waiver" of the Subcontractors' Miller Act rights within the meaning of § 3133(c).

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). It is not clear from the plain language of § 3133(c) whether a temporary stay effects a "waiver of the right to bring an action" under the Miller Act. For instance, if the "right to bring" a Miller Act claim encompasses the right to bring it at any point, a stay would constitute a waiver. On the other hand, if the "right to bring" merely means the right to bring a Miller Act claim at some point, a stay would not constitute a waiver.

Because the text does not resolve the ambiguity, this Court can consult the statute's legislative history. Coeur D'Alene Tribe of Idaho, v. Hammond, 384 F.3d 674, 692 (9th Cir. 2004). The legislative history forcefully demonstrates that the latter interpretation is correct and that § 3133(c) does not apply to stays which merely postpone a subcontractor's Miller Act right to sue. Congress explained that § 3133(c) was not intended to:

> void subcontract provisions requiring arbitration or other alternative methods of resolving disputes. Such provisions would remain enforceable with a claimant's Miller act rights preserved by a timely suit that can be stayed pending the outcome of the subcontract dispute resolution procedure. The bill respects the freedom of the parties to the subcontract to specify means to resolve their disputes and the exclusive jurisdiction of the district court to decide issues arising under the Miller Act.

H.R. Rep. No. 106-277, at 5 (1999) (emphasis added).

The subcontracts at issue do not establish a complete waiver of the

subcontractors' right to bring a Miller Act claim.  Rather, the subcontracts merely stay such a claim pending the completion of the administrative resolution process.  It is clear that Congress intended such agreements to be binding notwithstanding § 3133(c).  Thus, § 3133(c) does not prohibit staying this action.

For the reasons stated herein, the defendants' motion to stay has been **GRANTED**, on the condition that Dick/Morganti's "Global Claim" be filed with the General Services Administration's contracting officer on or before November 30, 2007.  If the "Global Claim" is not filed on or before November 30, 2007, and this Court has not otherwise granted an extension, the stay will automatically dissolve.  Those Subcontractors who have not yet filed claims shall be permitted to do so, whereupon those claims will be stayed pursuant to this order.

The parties shall appear on December 19, 2007 at 3:00p.m., to address whether the stay should be lifted because the claims submitted in the "Global Claim" do not involve or relate to claims filed by the plaintiffs in this Court.

**IT IS SO ORDERED.**

Dated: October 30, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE