1  RICHARD T. BOWLES (# 46234)
   KENNETH G. JONES (# 196868)
2  WILLIAM T. NAGLE (# 180162)
   MICHAEL P. CONNOLLY (# 238478)
3  BOWLES & VERNA LLP
   2121 N. California Boulevard, Suite 875
4  Walnut Creek, California 94596
   Telephone: (925) 935-3300
5  Facsimile: (925) 935-0371
   Email: rbowles@bowlesverna.com
6        kjones@bowlesverna.com
         mconnolly@bowlesverna.com
7
   Attorneys for Plaintiff
8  WEBCOR CONSTRUCTION, INC. dba
   WEBCOR CONCRETE
9

10                 UNITED STATES DISTRICT COURT

11      NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

12

13  UNITED STATES OF AMERICA for the use and     CASE NO.: 3:07-CV-02564-CRB
    benefit of WEBCOR CONSTRUCTION, INC. dba
    WEBCOR BUILDERS, and WEBCOR              DECLARATION OF KENNETH G. JONES
14  CONSTRUCTION, INC. dba WEBCOR            IN SUPPORT OF WEBCOR
    BUILDERS,                                CONSTRUCTION'S STATUS UPDATE
15                                           RE: STAY OF PROCEEDINGS
                Plaintiffs,
16                                           Date: December 19, 2007
        vs.                                  Time: 3:00 p.m.
17                                           Dept.: Courtroom 8
    DICK/MORGANTI, a joint venture; DICK     Judge: Hon. Charles R. Breyer
18  CORPORATION; THE MORGANTI GROUP;
    AMERICAN CASUALTY COMPANY OF
19  READING, PENNSYLVANIA; NATIONAL
    UNION FIRE INSURANCE COMPANY OF
20  PITTSBURGH, PA; and DOES 1-10, inclusive,

21              Defendants.

22
    AND RELATED THIRD-PARTY ACTIONS AND
23  CROSS-ACTIONS

24

25  I, KENNETH G. JONES, declare:

26      1.     I am an attorney at law duly licensed to practice before all Courts of the State of

27  California and am a partner at Bowles & Verna LLP, attorneys for plaintiff Webcor Construction Inc,

28

DECLARATION OF KENNETH G. JONES IN SUPPORT OF WEBCOR          Case No. 3:07-CV-02564-CRB
CONSTRUCTION'S STATUS UPDATE RE: STAY OF PROCEEDINGS

1  dba Webcor Builders ("Webcor"), in the above action. As such, I have personal knowledge of the facts
2  set forth herein and if called as a witness, could and would competently testify thereto.

3      2.    On Monday, December 10, 2007 I received a copy of Dick/Morganti's Global Claim.

4      3.    Attached hereto as Exhibit A is a true and correct excerpt of the transcript of proceedings
5  that took place before this Court on October 19, 2007.

6      4.    Attached hereto as Exhibit B is a true and correct copy of D/M's certification of its
7  claim.

8      5.    Attached hereto as Exhibit C is a true and correct copy of a December 12, 2007 letter
9  from Michael T. Ambroso of Dick Corporation asking that Webcor's COR 63 and 64 be submitted to
10  arbitration and acknowledging that COR 65 does not involve GSA.

11      6.    Attached hereto as Exhibit D is a true and correct copy of the Declaration of Michael T.
12  Ambroso in Support of Motion to Stay Proceedings, in which, at 3:8-15, Mr. Ambroso represents that
13  Dick/Morganti processed and submitted Webcor's CORs to the GSA.

14      7.    Attached hereto as Exhibit E is a true and correct copy of a December 11, 2007 letter
15  from Michael T. Ambroso of Dick Corporation requesting that Webcor certify CORs 61 and 62.

16      I declare under penalty of perjury of the laws of the State of California that the foregoing is true
17  and correct, and that I executed this Declaration on this ___ day of December, 2007, at Walnut Creek,
18  California.

19
20  By: _____
21      KENNETH G. JONES
22
23
24
25
26
27
28

Bowles & Verna LLP
2121 N. California Blvd
Suite 875
Walnut Creek 94596

DECLARATION OF KENNETH G. JONES IN SUPPORT OF WEBCOR          Case No. 3:07-CV-02564-CRB
CONSTRUCTION'S STATUS UPDATE RE: STAY OF PROCEEDINGS

COPY

1

PAGES 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE

UNITED STATES OF AMERICA,      )
FOR THE USE AND BENEFIT        )
OF WEBCOR CONSTRUCTION,        )
INC.,                          )
                               )
          PLAINTIFF,           )
                               )
     VS.                       )        NO. CR 07-2564 CRB
                               )
DICK MORGANTI, ET AL.,         )
                               )
          DEFENDANTS.          )
_____)


SAN FRANCISCO, CALIFORNIA
FRIDAY, OCTOBER 19, 2007

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

FOR AMERICAN              HALLINAN & WINE
CASUALTY:                 345 FRANKLIN STREET
                          THIRD FLOOR
                          SAN FRANCISCO, CALIFORNIA   94102
                    BY:   **PATRICK SARSFIELD HALLINAN**
                          ATTORNEY AT LAW

                          PECKAR & ABRAMSON
                          455 MARKET STREET
                          21ST FLOOR
                          SAN FRANCISCO, CA   94105
                    BY:   **RAYMOND MARION BUDDIE**
                          ATTORNEY AT LAW
              **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:              JAMES YEOMANS, CSR #4039, RPR
                          OFFICIAL REPORTER
              COMPUTERIZED TRANSCRIPTION BY ECLIPSE

EXHIBIT A

2

1    **APPEARANCES:   (CONTINUED)**

2    FOR PERFORMANCE            OTIS CANLI & DUCKWORTH
     CONTRACTING                180 MONTGOMERY STREET
3    GROUP, INC.:               SUITE 1240
                                SAN FRANCISCO, CA  94104
4                         BY:   **STEVEN L. IRIKI**
                                **ATTORNEY AT LAW**
5
     FOR MARELICH               CHAMBERLAIN HRDLICKA WHITE WILLIAMS
6    MECHANICAL CO.:            & MARTIN
                                191 PEACHTREE STREET, NE
7                               34TH FLOOR
                                ATLANTA, GA 30303
8                         BY:   **SETH ROGER PRICE**
                                **ATTORNEY AT LAW**
9
     FOR ROSENDIN               STANTON KAY & WATSON
10   ELECTRIC, INC.:            101 NEW MONTGOMERY STREET
                                5TH FLOOR
11                              SAN FRANCISCO, CA  94105
                          BY:   **STEVEN F. BROCKHAGE**
12                              **ATTORNEY AT LAW**

13   FOR PERMASTEELISA          HEYMAN DENSMORE LLP
     CLADDING TECHNOLOGIES:     21550 OXNARD STREET
14                              SUITE 450
                                WOODLAND HILLS, CA  91367
15                        BY:   **ROGER P. HEYMAN**
                                **ATTORNEY AT LAW**
16

17

18

19

20

21

22

23

24

25

1   AGAINST THE GOVERNMENT IS LIKELY TO FAIL AND FALL APART.

2         **THE COURT:** THEY ARE AFRAID ON THE MERITS OF THE

3   DISPUTE, THEY'RE AFRAID THEY'RE GOING TO LOSE?

4         **MR. IRIKI:** THE REASON I SAY THAT IS THIS:

5         THEY HAD WHAT'S CALLED A DESIGN ASSIST CONTRACT.

6   UNDER THEIR CONTRACT THEY WERE RESPONSIBLE FOR, BEFORE THE

7   PROJECT EVEN STARTED, REVIEWING THE PLANS COMPLETELY AND

8   POINTING OUT ANY ERRORS, OMISSION OR PROBLEMS THAT MAY ARISE

9   WITH THOSE PLANS.

10        NOW, THEY'RE SAYING, LOOK, WHAT HAPPENED ON THIS

11  PROJECT, YOUR HONOR, IS THAT THERE WERE PROBLEMS IN THE VERY

12  BEGINNING WITH THE CONCRETE REBAR WORK AND THE DESIGNS WERE

13  INCOMPLETE.  WELL, YOU KNOW WHAT?  THAT'S THEIR FAULT.

14        THAT'S DICK MORGANTI'S FAULT, NOT THE GSA'S FAULT.

15  UNDER THIS CONTRACT THEY WERE RESPONSIBLE FOR SAYING TO THE GSA

16  BEFORE THE PROJECT BEGAN, LOOK, YOU HAVE A PROBLEM HERE WITH

17  THIS, IT'S GOING TO AFFECT THE CONSTRUCTABILITY OR -- AND/OR

18  IT'S GOING TO AFFECT THE SCHEDULE OF THIS PROJECT.  SO THEY'RE

19  GOING TO LOSE IN THEIR CLAIM AGAINST GSA.

20        **THE COURT:** OKAY.  WHEN, BY THE WAY, WHAT DO YOU

21  ANTICIPATE THE FINAL ADJUDICATION, AT LEAST, THE APPELLATE

22  PROCESS OF THIS CLAIM?

23        **MR. HALLINAN:** WHAT DO WE?

24        **THE COURT:** YOURSELF.  YOU'RE THE CONTRACTING

25  OFFICERS, HE'S SUPPOSE TO RESPOND WITHIN 60 DAYS, UNLESS YOU

1   NEED MORE TIME.  OF COURSE, YOU NEED MORE TIME.

2          **MR. HALLINAN:**  WE HAVE 90 DAYS TO GO DIRECTLY TO THE

3   BOARD TO ASK THE BOARD TO ORDER THE CONTRACTING OFFICER TO

4   EITHER WRITE THE LETTER OR TO -- OR TO TAKE A POSITION THAT

5   IT'S DENIED AND WE CAN THEN GO BEFORE THE BOARD, BUT WE ARE

6   INTERESTED IN GOING AS FAST AS WE CAN.

7          **THE COURT:**  ARE YOU GIVING ME, CAREFUL IN YOUR

8   RESPONSE BECAUSE I'M GOING TO HOLD YOU TO IT, ARE YOU SAYING TO

9   ME, THAT YOU WILL DEMAND OF THE CONTRACTING, I DON'T KNOW

10  CONTRACTING, I DON'T KNOW THE LAW IN THIS AREA, YOU WILL DEMAND

11  THAT THEY RESPOND, THE CONTRACTING OFFICER RESPOND, AND I DON'T

12  KNOW WHAT THAT TIME PERIOD IS, 60 DAYS, 90 DAYS FROM A

13  PARTICULAR DATE, LET'S SAY, YOU FILE YOUR CLAIM ON

14  NOVEMBER 30TH.

15         NOW, AS I UNDERSTAND THE LAW THAT IS SET OUT, I DON'T

16  KNOW WHETHER MY UNDERSTANDING IS CORRECT, THEY HAVE 60 DAYS TO

17  RESPOND, WITHIN WHICH TIME THEY CAN SEEK ADDITIONAL TIME.  AND

18  YOUR TELLING ME THAT BECAUSE THIS IS -- RATHER THIS IS OLD SOME

19  SENSE, YOU'RE SAYING THAT YOUR CLIENT IS GOING TO TAKE THE

20  POSITION THAT THEY'RE NOT GOING TO GIVE THE CONTRACTING OFFICER

21  ADDITIONAL TIME, THEY'RE GOING TO DEMAND THAT THERE BE A

22  RESPONSE WITHIN 90 DAYS OF SOME PARTICULAR DAY?

23         **MR. HALLINAN:**  WHAT I'M SAYING, WE WILL PUSH EVERY

24  BUTTON WE CAN TO GET A HEARING.

25         **THE COURT:**  THAT'S A BUTTON?

Case 3:07-cv-02564-CRB Document 74 Filed 12/13/2007 Page 7 of 24
Case 3:07-cv-02564-CRB Document 72 Filed 12/12/2007 Page 29 of 152

25

1          **MR. IRIKI:**   THANK YOU.

2          **MR. HALLINAN:**   THANK YOU.

3                    (PROCEEDINGS ADJOURNED.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 2ND DAY OF NOVEMBER, 2007.


_____
JAMES YEOMANS, CSR, RPR



November 30, 2007


General Services Administration
Property Development Division 9PCN
450 Golden Gate Avenue
3rd Floor West
San Francisco, CA 94102

Attn:    Shelita Harper

Re:    New San Francisco Federal Office Building
       Project No. NCA00049
       Contract No. GS-09P-02-KTC-0002

Subject:    Dick/Morganti Claim for Equitable Adjustment

Dear Shelita Harper:

Enclosed please find two (2) copies of Dick/Morganti's Claim for Equitable Adjustment
against the GSA on this Project. Pursuant to FAR 52.233-1 Disputes, we hereby request
that you, as the Contracting Officer, issue a Final Decision on this Claim as soon as
possible.

Please let me know if you have any questions.


                                    Very Truly Yours,

                                    **Dick/Morganti, JV**



                                    Daniel R. Martin
                                    Executive Vice President

DRM:mh
Enclosure
CC:    Ron Brookfield, Dick/Morganti, JV – w/o enc.
       Vincent C. Petito, DM  - w/o enc.
       File

EXHIBIT B

CERTIFICATION FOR CLAIM OF

DICK/MORGANTI, A JOINT VENTURE

UNITED STATES FEDERAL BUILDING

SAN FRANCISCO, CALIFORNIA


I certify that the Claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount to be requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the Claim on behalf of the Contractor.


DICK CORPORATION

Signature: _____

Daniel R. Martin
Executive Vice President

Date: ___November 30, 2007_____



*Building Excellence for Over 80 Years!*

**Michael T. Ambroso**
*Assistant General Counsel &*
*Assistant Secretary*

December 12, 2007

<u>VIA FACSIMILE #925-935-0371</u>
<u>and First Class Mail</u>
Kenneth Jones, Esq.
Bowles & Verna, LLP
2121 N. California Blvd., Suite 875
Walnut Creek, CA 94596-8180

RE:    San Francisco Federal Building

Dear Ken:

This is in response to your December 6, 2007 letter.

Over the last week, you have received documentation and communication from Dick/Morganti which addresses some of the questions and requests contained in your December 6th letter. On December 6, 2007, D/M sent you a copy of its global claim (including exhibits) which was submitted to the GSA on November 30, 2007. On December 11, 2007, D/M sent you a letter informing Webcor that, after completing its entitlement analysis for the global claim, D/M was able to submit, as part of the global claim to the GSA, two of Webcor's remaining claim issues (Webcor CORs #61 and #62). D/M will submit those claims to the GSA immediately upon receiving the requested Webcor certification of those claims.

As for Webcor's claims relating to "Productivity Impacts Due to Access and Site Staging" (Webcor COR #63), and "Compensable Delays Due to Tower Crane" (Webcor COR #64), D/M is willing to submit these two Webcor claims to binding arbitration, as contemplated by the terms of the Subcontract. D/M believes that the binding arbitration of these two issues will be the most efficient and economical way for the parties to resolve these disputes. Please confirm that Webcor is agreeable to arbitrate these two issues so that we can promptly discuss the selection of an arbitrator(s) and the arbitration process.

On Webcor's other remaining claim, "Costs Associated with February 21, 2004 Fire" (Webcor COR #65), D/M does not understand how this issue can be a "force majeure event", as described by Webcor. Attached please find FAR 52.249-10 "Default" from D/M's Contract with the GSA. This FAR provision is, in effect, the only "force majeure" provision of the Contract. Given the language of this clause and the facts relating to the fire, we request Webcor to explain how this Webcor caused fire can be a claim issue to take to the GSA. If Webcor has an explanation for how this claim issue can go back to the GSA as a "force majeure" event or otherwise, D/M will submit it. At this point, however, we do not have this information from Webcor. It is our understanding that Webcor has put its General Liability insurance carrier on notice of this event. Unless Webcor has an explanation as to why this fire issue should be submitted to the GSA, D/M

Dick Corporation
Contractors, Construction Managers & Design Builders
P.O. Box 10896    Pittsburgh, PA  15236-0896    412-384-1287
mtambroso@dickcorp.com

EXHIBIT C



Kenneth Jones, Esq.
Bowles & Verna, LLP
December 12, 2007
Page 2

believes that compensation for the delays and cost impacts arising from this event need to be pursued against Webcor's General Liability carrier.

In regards to another statement and question raised in your December 6th letter, the GSA's request for additional information relating to the "Supervision Claims" contained in Webcor's COR #60, is not addressed to D/M. While the GSA letter does state that it is requesting "D/M" to provide the requested information, this reference is only made because D/M is the entity that submitted this claim to the GSA. Clearly, the GSA's request for additional information on this item relates to the Webcor documents contained in the following sections of Webcor's COR #60, specifically the sections labeled "Rebar Labor", "Rebar Equipment", "Rebar Expenses", "Finishes Labor", "Finishes Equipment", and "Finishes Expenses". In your December 6, 2007 letter, you state that Webcor will be responding to the GSA's request for additional information in early January 2008. In that response, please include Webcor's response to the GSA's request for information relating to the "Supervision Claims".

Please let me know if you have any questions relating to the contents of this letter.

Sincerely,

DICK CORPORATION

Michael T. Ambroso

MTA/lsn
enclosure
cc:    Joel Heusinger, Esq. (via fax #402-437-8558)
       Ray Buddie, Esq. (via fax #415-837-1320)

Contracting Officer under 49.202 of the Federal Acquisition Regulation, in effect on the date of this contract, to be fair and reasonable; however, if it appears that the Contractor would have sustained a loss on the entire contact had it been completed, the Contracting Officer shall allow no profit under this subdivision

(iii) and shall reduce the settlement to reflect the indicated rate loss.

(2) The reasonable costs of settlement of the work terminated, including-

(i) Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data;

(ii) The termination and settlement of subcontracts (excluding the amounts of such settlements); and

(iii) Storage, transportation, and other costs incurred, reasonably necessary for the preservation, protection, or disposition of the termination inventory.

## 12.   FAR 52.249-10 DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984)

(a) If the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in this contract including any extension, or fails to complete the work within the time, the Government may, by written notice to the Contractor, terminate the right to proceed with the work (or the separable part of the work) that has been delayed. In this event, the Government may take over the work and complete it by contractor or otherwise, and may take possession of and use any materials, appliances, and plant on the work site necessary for completing the work. The Contractor and its sureties shall be liable for any damage to the Government resulting from the Contractor's refusal or failure to complete the work within the specified time, whether or not the Contractor's right to proceed with the work is terminated. This liability includes any increased costs incurred by the Government in completing the work.

(b) The Contractor's right to proceed shall not be terminated nor the Contractor charged with damages under this clause, if-

(1) The delay in completing the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include

(i) Acts of God or of the public enemy,

(ii) Acts of the Government in either its sovereign or contractual capacity,

(iii) Acts of another Contractor in the performance of a contract with the Government,

(iv) Fires,

(v) Floods,

(vi) Epidemics,

(vii) Quarantine restrictions,

(viii) Strikes,

(ix) Freight embargoes,

(x) Unusually severe weather, or

(xi) Delays of subcontractors or suppliers at any tier arising from unforeseeable causes beyond the control and without the fault or negligence of both the Contractor and the subcontractors or suppliers; and

(2) The Contractor, within 10 days from the beginning of any delay (unless extended by the Contracting Officer), notifies the Contracting Officer in writing of the causes of delay. The Contracting Officer shall ascertain the facts and the extent of delay. If, in the judgment of the Contracting Officer, the findings of fact warrant such action,

SECTION 12 - PAGE 20

the time for completing the work shall be extended. The findings of the Contracting Officer shall be final and conclusive on the parties, but subject to appeal under the Disputes clause.

(c) If, after termination of the Contractor's right to proceed, it is determined that the Contractor was not in default, or that the delay was excusable, the rights and obligations of the parties will be the same as if the termination had been issued for convenience of the Government.

(d) The rights and remedies of the Government in this clause are in additional to any other rights and remedies provided by law or under this contract.

**(End of clause)**

Current through FAC-97-23 and GSAM, Chge. 01                    Revision date 04/13/01

1   RAYMOND M. BUDDIE    (SBN 121353)
2   TIMOTHY E. ELLIOTT     (SBN 210640)
    RICK W. GRADY        (SBN 235976)
3   PECKAR & ABRAMSON, P.C.
    250 Montgomery Street, 16th Floor
4   San Francisco, CA 94104
5   Telephone: (415) 837-1968
    Facsimile: (415) 837-1320
6   Email: rbuddie@pecklaw.com
         telliott@pecklaw.com
7         rgrady@pecklaw.com

8
9   PATRICK HALLINAN     (SBN 33838 )
    KENNETH WINE        (SBN 142385)
10   LAW OFFICES OF HALLINAN & WINE
    345 Franklin Street
11   San Francisco, CA 94102
    Telephone: (415) 621-2400
12   Facsimile: (415) 575-9930
13   Email: butchhallinan@hotmail.com
        kenwine@hotmail.com

14
15   Attorneys for AMERICAN CASUALTY COMPANY OF READING, PA; and NATIONAL
    UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

16
                    UNITED STATES DISTRICT COURT
17
       NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION
18

| | |
|---|---|
| UNITED STATES of AMERICA for the Use and Benefit of WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS, and WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS, <br><br> Plaintiffs, <br><br> vs. <br><br> DICK/MORGANTI, a joint venture; DICK CORPORATION; THE MORGANTI GROUP; AMERICAN CASUALTY COMPANY OF READING, PA; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 3:07-CV-02564-CRB <br><br> **DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY TO OPPOSITION TO MOTION TO STAY PROCEEDINGS** |

LAW OFFICES

Peckar &
Abramson
Professional Corporation

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY     Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

EXHIBIT D

1

2  AND ALL RELATED COUNTER-CLAIMS
   AND THIRD PARTY COMPLAINTS.

3

4        I, Michael T. Ambroso, declare as follows:

5        1.      Unless otherwise indicated herein, the facts set forth below are personally known

6  to me and if called upon I am willing and able to testify in support of these facts.

7        2.      I am the Assistant General Counsel and Assistant Secretary for Defendant Dick

8  Corporation. Dick Corporation is the managing partner of Defendant Dick/Morganti, A Joint

9  Venture formed between Dick Corporation and Defendant Morganti Texas, Inc.

10  Dick/Morganti's sureties for the construction project which is the subject matter of this lawsuit

11  are Defendant American Casualty Company of Reading, PA ("American") and National Union

12  Fire Insurance Company of Pittsburgh, PA ("National").

13        3.      I have detailed knowledge of the construction project that gives rise to this action

14  ("Project"), as well as detailed knowledge of Dick/Morganti's relationship with the owner of the

15  Project, the General Services Administration of the United States Government ("GSA" or

16  "Owner"). I also have detailed knowledge of Dick/Morganti's work with its subcontractors for

17  the Project, including Plaintiff Webcor Construction, Inc. ("Webcor").

18                              **BACKGROUND**

19        4.      The Project was recently completed, and an official dedication ceremony for the

20  building was held on July 9, 2007.

21        5.      Webcor's scope of work for the Project included providing the materials and labor

22  for the placement and finishing of the concrete portions of the Project, including the foundation,

23  structural beams, walls and floors.

24        6.      I have read Webcor's August 3, 2007 Opposition to Motion to Stay Proceedings

25  ("Opposition"). I have also read the Declaration of Kenneth G. Jones, Esq. ("Jones Dec.") and

26  the exhibits thereto and the Declaration of Jack Harrington ("Harrington Dec.") and the exhibits

27  thereto which were filed in support of Webcor's Opposition.

28  ///

LAW OFFICES

Peckar &
Abramson
Professional Corporation

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY      Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

1    7.    I have detailed knowledge of the facts, circumstances, and documents related to

2    Webcor's work for the Project, including the issues and assertions raised in Webcor's

3    Opposition, the Jones Dec., and the Harrington Dec.

### THE TIMELINE RELEVANT TO WEBCOR'S COR 60

5    8.    Throughout the course of the Project Webcor submitted change order requests

6    ("COR's") seeking increases in the compensation and/or time for completing Webcor's work.

7    Webcor's largest COR was COR 60, which originally sought an increase of $5,221,053 in

8    amounts due Webcor, and also requested a schedule extension of 209 days for Webcor's work.

9    (See Exhibit A to Harrington Dec.)

10    9.    COR 60 involves complex issues related to the plans and specifications for the

11    Project, including the design and placement of rebar in the foundation and supporting beams and

12    walls for this 18-story building.(Furnishing and installing the rebar was performed by another

13    subcontractor of Dick/Morganti, with Webcor then installing the forms and placing and finishing

14    the concrete.)  COR 60 also involves complex issues related to the finish on the open, exposed

15    surfaces of some of the concrete provided by Webcor.

16    10.    Webcor submitted COR 60 to Dick/Morganti on or about June 29, 2005 and

17    requested that Dick/Morganti, as the general contractor having the contract with the Owner,

18    submit it to the GSA.  A true and correct copy of Webcor's June 29, 2005 submittal of COR 60

19    is attached hereto as **Exhibit A**.

20    11.    Within 10 days of receiving COR 60 from Webcor, Dick/Morganti submitted it to

21    the GSA on July 8, 2005.  (For numbering purposes between Dick/Morganti and the GSA,

22    Dick/Morganti  numbered this COR as "Change Order Request No. GSA 182." This COR is

23    also labeled as Dick/Morganti Issue 364.)  A true and correct copy of Dick/Morganti's July 8,

24    2005 submittal of COR 60 to the GSA is attached hereto as **Exhibit B**.

25    12.    The GSA did not respond to Dick/Morganti's submittal of COR 60, despite

26    numerous prompts and requests by Dick/Morganti to the GSA as to the status of the GSA

27    review, until the GSA rejected COR 60 in a letter dated October 10, 2006.  A true and correct

28    copy of the GSA's rejection letter regarding COR 60 is attached hereto as **Exhibit C**.

LAW OFFICES

Peckar &
Abramson
Professional Corporation

3

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY      Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

1    13.    Dick/Morganti received the GSA's rejection letter at the Project site, and one of

2  Dick/Morganti's attorneys, Joel Heusinger, forwarded the rejection letter to counsel for Webcor

3  on October 27, 2006.  A true and correct copy of Mr. Heusinger's cover letter to Webcor

4  enclosing the GSA's rejection is attached hereto as **Exhibit D**.

5    14.    After the GSA's October 10, 2006 rejection of Webcor's COR 60, Dick/Morganti

6  and Webcor took steps to prepare and submit this COR as a formal, certified "Claim" to the

7  GSA's Contracting Officer.  The requirements for a formal Claim for the Project are set forth in

8  the Disputes provision of Dick/Morganti's General Contract with the GSA and Federal

9  Acquisition Regulation ("FAR") 52.233-1.  A true and correct copy of the Disputes provision

10  from the General Contract is attached hereto as **Exhibit E**.

11    15.    Because Webcor is bound by the terms of the General Contract, including the

12  certification requirement of the Disputes provision, Dick/Morganti informed Webcor that it must

13  certify that COR 60 is made in good faith and that the supporting data was accurate and

14  complete.  (See Exhibit E, FAR 52.233-1(d)(2)(iii).)

15    16.    As set forth in Mr. Heusinger's October 27, 2006 letter, and as the Project was

16  nearing its final stages, Dick/Morganti was in the process of preparing its overall claim to the

17  GSA which seeks additional compensation for Dick/Morganti and its subcontractors for the total

18  increased costs and additional time for completing the Project (the"Global Claim").

19    17.    Webcor's COR 60, as well as Webcor's COR's 61-65, involve complex issues

20  related to impacts to the Project schedule, including impacts to the sequence of work done by

21  other subcontractors and overall delays to the Project's final completion.  As such, the events

22  identified in Webcor's COR's are closely related to the delays and impacts experienced by

23  Dick/Morganti and the other subcontractors on the Project, and to the claims those entities have

24  been and will be asserting.

25    18.    The claims by Dick/Morganti's other subcontractors that are related to the events

26  identified in Webcor's COR's 60-65 include components for delays, re-sequenced work, trade

27  stacking, labor inefficiency, price escalation for labor and materials, and competing time for time

28  for use of the Project cranes, among other things.  To date, the trade subcontractors making

AW OFFICES

Peckar &
Abramson
Professional Corporation

4

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY    Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

1    claims related to the events identified in Webcor's COR's include, but are not limited to, the

2    electrician, the interior wall and panel installer, and the door and hardware installer.

3         19.    Because of the magnitude of the events identified in COR 60 and their impact on

4    Dick/Morganti's analysis and preparation of the Global Claim, officials from Dick/Morganti and

5    Webcor have worked together to make sure that Webcor's claim was and is consistent with the

6    Global Claim. This work includes direct consultation between the separate scheduling

7    consultants retained by Dick/Morganti and Webcor, including consultation between one of

8    Dick/Morganti's consultants, Rex Snyder, and Webcor's consultant, Dan Kass, after the GSA's

9    rejection of COR 60.

10        20.    As stated above in paragraph 8, Webcor's COR 60 originally sought damages of

11   $5,221,053 and requested a schedule extension of 209 days. Webcor's revised version of COR

12   60, which was accompanied by Webcor's proposed certification language, reduced Webcor's

13   total damages figure to $4,671,740 and reduced Webcor's time extension request to 182 days.

14   Webcor submitted this revised version of COR 60 and its proposed certification language to

15   Dick/Morganti on or about March 23, 2007. A true and correct copy of the cover letter for

16   Webcor's revised COR 60, Webcor's proposed certification language, and a summary of the

17   revised version of COR 60 is attached hereto as **Exhibit F**.

18        21.    Dick/Morganti, as the General Contractor, is also required to certify that any

19   Claim submitted to the GSA (including any claim from its subcontractors) is made in good faith

20   and is supported by accurate data. Thus, after receiving Webcor's revised version of COR 60 in

21   late March 2007 and before certifying it and submitting it as a formal Claim to the GSA,

22   Dick/Morganti conducted its own due diligence as to the supporting data for Webcor's COR 60.

23   This was especially necessary given the fact that the total damages figure for COR 60 had been

24   recently reduced by Webcor by approximately $550,000 and Webcor's request for a time

25   extension had gone down by 27 days. (Some of Webcor's damage components actually

26   increased, therefore increasing the need for due diligence.) Additionally, because COR 60 is

27   related to the Global Claim, Dick/Morganti had to assure that Webcor's COR 60 was consistent

28

AW OFFICES

Peckar &
Abramson
Professional Corporation

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY     Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

1     with the related claims by Dick/Morganti and other subcontractors. The Global Claim involves

2     the analysis of approximately 2,000 itemized time and cost issues.

3           22.     Dick/Morganti's due diligence upon receiving Webcor's revised claim included

4     analysis of Webcor's entitlement issues by legal counsel and Dick/Morganti's consultants,

5     analysis of Webcor's cost data by legal counsel and Dick/Morganti's consultants, and analysis of

6     Webcor's schedule data and conclusions by Dick/Morganti's own schedule experts.

7           23.     Also, after receiving revised COR 60 with Webcor's proposed certification

8     language, Dick/Morganti and Webcor engaged in discussions regarding the proper language for

9     Webcor's certification of its claim. The version of Webcor's certification attached to Webcor's

10     March 23, 2007 cover letter, was not acceptable to Dick/Morganti because it did not comply with

11     FAR 52.233-1(d)(2)(iii).

12           24.     As Dick/Morganti's due diligence regarding Webcor's revised COR 60 was still

13     ongoing, and before resolution of the issues related to the certification language, Webcor filed

14     this lawsuit on May 15, 2007.

15                        **THE JUNE 11, 2007 TELECONFERENCE**

16           25.     As referenced in paragraphs 11-12 of the Jones Dec., I participated in a

17     teleconference on June 11, 2007 with John Bowles and Ken Jones (Webcor counsel). The

18     subject matter of this teleconference was the submittal of Webcor's certified claim and how

19     Webcor's recently filed lawsuit would be handled.

20           26.     Mr. Jones' statement in paragraph 11 of his declaration that, in that

21     teleconference, Dick/Morganti "...for the first time, agreed to pass up Webcor's claim regarding

22     COR 60..." is inaccurate. On July 8, 2005, Dick/Morganti had already submitted Webcor's

23     COR 60 as an uncertified claim to the GSA, and Dick/Morganti officials have informed Webcor

24     on numerous occasions of Dick/Morganti's intent to fully pursue Webcor's claims against the

25     GSA in accordance with the Disputes provisions of the General Contract. (See, e.g., Exhibit D,

26     paragraph 2.) On numerous occasions, Dick/Morganti had also informed Webcor that any

27     Webcor claim to be submitted to the GSA would have to be certified in accordance with the

28     applicable FAR requirements and that, in order to do so, Dick/Morganti would have to assure

6

LAW OFFICES

Peckar &
Abramson
a Professional Corporation

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY     Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

1  itself that there was legal entitlement for the claim and that the damage figures were supported

2  by proper data. Further, Webcor had frequently been informed that its claims involve complex

3  schedule issues that are inherently related to the Global Claim.

4      27.     Mr. Jones' statement that "…Webcor further informed counsel for DMJV that it

5  considered DMJV's breach material such that Webcor's further performance of any ADR or

6  dispute provisions was excused" is incorrect. Webcor has never, prior to the filing of the present

7  Opposition, asserted that Dick/Morganti breached its subcontract agreement so that Webcor was

8  somehow excused from its obligations under the Disputes provisions of the subcontract.

9                  **WEBCOR'S COR'S 61-65**

10      28.     Webcor's COR's 61-65 involve disputes between Dick/Morganti and the GSA.

11  Specifically, each of these COR's involves time extension requests which form, in part, the basis

12  for the Global Claim. Dick/Morganti's position vis-à-vis the GSA is that the GSA is responsible

13  for the late start of the Project, weather delays, site access and staging issues caused by the GSA

14  and its agents, as well as the associated delays and extended performance periods related to the

15  tower cranes. Additionally, Dick/Morganti's schedule claims against the GSA relate to unknown

16  and unsuitable soil conditions, as well as crane usage on the Project, which impacted not only

17  Webcor, but numerous other subcontractors on the Project.

18      29.     The dispute between Dick/Morganti and the GSA involves not only the number of

19  days of time extension to which Dick/Morganti is entitled, but also issues as to whether any

20  schedule extensions are compensable, or merely excusable but noncompensable. Webcor's

21  COR's 61-65 are being analyzed as part of the Global Claim that will be presented to the GSA.

22  It is necessary that Webcor participate in and provide further analysis of COR's 61-65 as it

23  relates to the Global Claim.

24      30.     Dick/Morganti denies that "…DMJV has admitted that COR's 61-65 do not

25  involve any dispute between DMJV and the GSA…", as stated in paragraph 15 of the Jones Dec.

26      31.     Dick/Morganti denies the assertions in paragraph 8 of the Harrington Dec.

27  wherein Mr. Harrington states that he was informed by Jim Dravet or Fred Daven that COR's

28  61-65 "…are not the GSA's responsibility, do not involve the GSA, will not be a part of the

AW OFFICES
Peckar &
Abramson
Professional Corporation

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY     Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01

1  formal FARS claims process and that DMJV will not pass COR's 61 to 65 through to the GSA."

2  Mr. Dravet and Mr. Daven were formerly Dick/Morganti's Project Manager and Project

3  Director, respectively, but neither Mr. Dravet nor Mr. Daven have worked at the Project for close

4  to two years, nor have either been employed by Dick/Morganti for over one year.

5  Dick/Morganti's position regarding Webcor's COR's 61-65, both currently and at the time

6  Mssrs. Dravet and Daven were involved in the Project, is that these COR's likely involve

7  disputes between Dick/Morganti and the GSA.

8       32.     Contrary to any assertions by Mr. Jones or Mr. Harrington, there is a strong

9  likelihood that COR's 61-65 are legally and factually related to Dick/Morganti's claims against

10  the GSA, and resolution of the Global Claim is necessary prior to determining whether any

11  issues exist solely between Dick/Morganti and Webcor.

13       I declare under penalty of perjury under the laws of the State of California that the

14  foregoing is true and correct.

16       Executed this 10th day of August, 2007 at Pittsburgh, Pennsylvania.

                                          Michael T. Ambroso

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

DECLARATION OF MICHAEL T. AMBROSO IN SUPPORT OF REPLY    Case No.: 3:07-CV-02564-CRB
TO OPPOSITION TO MOTION TO STAY PROCEEDINGS
49806.01





C O R P O R A T I O N                    *Building Excellence for Over 80 Years!*

**Michael T. Ambroso**
*Assistant General Counsel &*
*Assistant Secretary*

December 11, 2007

<u>VIA FACSIMILE #925-935-0371</u>
<u>and First Class Mail</u>
Kenneth Jones, Esq.
Bowles & Verna, LLP
2121 N. California Blvd., Suite 875
Walnut Creek, CA  94596-8180

RE:    San Francisco Federal Building
         Webcor Pass Through Claims

Dear Ken:

After performing its entitlement analysis and completing its global claim (a copy of which was
sent to you on December 6, 2007), Dick/Morganti believes that the following previously
submitted Webcor claims are the responsibility of the GSA: Late Start Delay to Work (Webcor's
COR #61), and Compensable Delay – Adverse Weather (Webcor COR #62).  In order to pass
those two claims to the GSA, D/M first needs Webcor to certify those claims consistent with the
Contract Disputes Act.

Attached please find a copy of the Webcor certification which was provided for Webcor's claim
relating to rebar congestion and concrete finish.  Using the same format as attached, please have
Webcor provide its certifications for the two claims referenced above.  Webcor should send those
original certifications to me as soon as possible so that these two claims can then be submitted to
the GSA.

Please contact me with any questions.

Sincerely,

DICK CORPORATION

Michael T. Ambroso

MTA/lsn
enclosure
cc:     Joel Heusinger, Esq. (via fax #402-437-8558)
         Ray Buddie, Esq. (via fax #415-837-1320)

Dick Corporation
Contractors, Construction Managers & Design Builders
P.O. Box 10896    Pittsburgh, PA  15236-0896    412-384-1287
mtambroso@dickcorp.com       EXHIBIT E

### Certification of Claim

I certify, under penalty of perjury, that Webcor's claim for additional compensation as a result of the rebar congestion and increased finish requirements on the GSA Project No. NCA 00049 is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes Dick Morganti and the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Dated: _4/10/2007_

By: _____
Webcor Concrete