RAYMOND M. BUDDIE       (SBN 121353)
RICK W. GRADY           (SBN 235976)
PECKAR & ABRAMSON, P.C.
455 Market Street, 21st Floor
San Francisco, California 94105
Telephone: (415) 837-1968
Facsimile:  (415) 837-1320
Email: rbuddie@pecklaw.com
       rgrady@pecklaw.com

PATRICK HALLINAN        (SBN 33838 )
KENNETH WINE            (SBN 142385)
LAW OFFICES OF HALLINAN & WINE
345 Franklin Street
San Francisco, CA 94102
Telephone: (415) 621-2400
Facsimile:  (415) 575-9930
Email: butchhallinan@hotmail.com
       kenwine@hotmail.com

Attorneys for Defendants, Counter-Claimants, and Third Party Complainants, AMERICAN CASUALTY COMPANY OF READING, PA; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA for the Use and Benefit of WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS, and WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS,<br><br>        Plaintiffs,<br>vs.<br><br>DICK/MORGANTI, a joint venture; DICK CORPORATION; THE MORGANTI GROUP; AMERICAN CASUALTY COMPANY OF READING, PA; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.:  3:07-CV-02564-CRB<br>Consolidated with Case No.: 3:07-CV-07-04180 EDL<br><br>**STATUS BRIEF OF AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA RE: DICK/MORGANTI'S GLOBAL CLAIM** |

1

STATUS BRIEF OF AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA RE: DICK/MORGANTI'S GLOBAL CLAIM    Case No.: 3:07-CV-02564-CRB
Consolidated with Case No.: 3:07-CV-07-04180 EDL

AND ALL RELATED COUNTER-CLAIMS AND THIRD-PARTY COMPLAINTS.

## I.    SUMMARY

This brief summarizes events since the Court granted the Sureties' Motion to Stay and sets forth Dick/Morganti's plans for continuing to prosecute its Global Claim against the GSA. Dick/Morganti submitted the complete entitlement portion of its Claim on November 30, 2007, and the GSA has requested the amount of total damages. While Dick/Morganti has certified and passed on certain appropriate subcontractor damages for claims related to the GSA, it is impossible to calculate the *exact total damages figure* at this time because Dick/Morganti and some of the subcontractors still must reconcile necessary cost and damages data. As set forth below, Dick/Morganti has analyzed Webcor's claim and certified and submitted, with minor exceptions, the portions which are attributable to the GSA. Correspondingly, Dick/Morganti has largely been able to determine which portions of Webcor's claim constitute disputes solely with Dick/Morganti. PCI's claim primarily relates to GSA-caused damages, yet PCI remains uncooperative in supplementing the Global Claim, despite its clear requirement to do so in its subcontract. As to the other subcontractors – both Third Party Defendants and others on the Project – Dick/Morganti has passed on the certified claims it has received and continues to work with the subcontractors to harmonize their claims for certification and supplementation of the Global Claim.

The complexity of marshalling numerous related subcontractor entitlement arguments, tens of thousands of supporting documents, and then submitting a comprehensive claim for approximately $60 million to the U.S. Government cannot be overstated. While Dick/Morganti has every motivation to prosecute the Global Claim in the quickest manner possible (its own potential losses, not including subcontractor claims, exceed $30 million), it must do so while recognizing the ramifications of the False Claims Act. 31 U.S.C. § 3129 provides, among other things, that if Dick/Morganti knowingly presents a false or fraudulent claim for payment, it may be liable "…for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains…" (31 U.S.C. § 2129(a).) Moreover,

2
STATUS BRIEF OF AMERICAN CASUALTY COMPANY OF    Case No.: 3:07-CV-02564-CRB
READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY    Consolidated with Case No.:
OF PITTSBURGH, PA RE: DICK/MORGANTI'S GLOBAL CLAIM    3:07-CV-07-04180 EDL

LAW OFFICES
Peckar & Abramson
A Professional Corporation

1  Dick/Morganti could be subject to criminal prosecution for major fraud for submitting a false
2  claim. (18 U.S.C. § 1031.)

3  Dick/Morganti, as the general contractor, is responsible for prosecuting claims related to
4  GSA-caused damages and it must certify everything that is passed up to the GSA. Because the
5  Global Claim is largely dependent on information from its subcontractors, Dick/Morganti must
6  analyze and present this information with caution, or risk the serious consequences of the False
7  Claims Act. This situation illustrates why the clear terms of Article 38 of the subcontracts is so
8  important to Dick/Morganti and the Sureties, i.e., any separate but related action must be stayed
9  while Dick/Morganti prosecutes the Global Claim, while the subcontractors support said
10 prosecution as necessary. The subcontractors agreed to do so in their subcontract agreements
11 with Dick/Morganti, and each, as large and experienced construction professionals, knows the
12 prescribed process and the ramifications of asserting claims on federal projects. Accordingly,
13 the Stay should remain in place while Dick/Morganti and the subcontractors continue to
14 prosecute the Global Claim.

## II. STATUS OF CLAIM[1]

### A. Dick/Morganti Has Timely Submitted The Complete Entitlement Argument Which Forms The Basis Of The Global Claim

Dick/Morganti submitted its five volume Claim for Equitable Adjustment to the Contracting Officer on November 30, 2007, and the entitlement narrative alone totals 116 pages. Hundreds of additional documents were submitted, and this analysis and supporting material forms the factual and contractual entitlement basis for Dick/Morganti's and its subcontractors' claims against the GSA. Dick/Morganti has seven internal employees working full time on various portions of the Claim, in addition to numerous outside attorneys, paralegals, consultants, and experts. Given the magnitude of Dick/Morganti's losses on the Project and the serious ramifications of the required claim certification, Dick/Morganti is performing a thorough and detailed reviewed of its costs overruns and damages. Once Dick/Morganti's

---

[1] Facts relating to the status are supported by the December 18, 2007 Declaration of Michael T. Ambroso and related exhibits, which are submitted herewith ("Ambroso Decl.).

3
STATUS BRIEF OF AMERICAN CASUALTY COMPANY OF         Case No.: 3:07-CV-02564-CRB
READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY  Consolidated with Case No.:
OF PITTSBURGH, PA RE: DICK/MORGANTI'S GLOBAL CLAIM   3:07-CV-07-04180 EDL

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

damages are complete, they will be immediately certified and submitted to the GSA, and Dick/Morganti is confident that its claimed damages will stand up well under the GSA's review and scrutiny. PCI's attempt to categorize Dick/Morganti's efforts as a "farce" simply amounts to unsubstantiated name calling, as no one can seriously question the massive amount of time and money needed to assemble and prosecute a claim of this size and complexity.

While Dick/Morganti believes that the vast majority of the subcontractors' claims are the result of the GSA's actions on the Project which are identified in the November 30, 2007 Dick/Morganti submission, the subcontractors have a relatively myopic view of their claims insofar as they believe it is simply a matter of passing their claims up the line to the GSA. Each of the subcontractors has claims for schedule extensions, for example, but the number of requested days must be reconciled with Dick/Morganti's critical path schedule analysis and its claim for approximately 473 days of compensable time extension to the GSA. Dick/Morganti must also deal with the fact that the GSA has only recognized 59 days of time extension, while withholding liquidated damages based on a per diem rate for delays allegedly caused by Dick/Morganti and its subcontractors.

Additionally, because of the claim certification requirement and the serious consequences of such certification, Dick/Morganti must perform its own due diligence on any claim and damages submitted by its subcontractors on this Project. Besides making sure that the subcontractors' claims arise out of the entitlement issues identified in Dick/Morganti's November 30, 2007 claim document, Dick/Morganti must also ensure that the subcontractors' claimed damages are real and are the responsibility of the GSA. In such situations, Dick/Morganti often must conduct an analysis of its subcontractors' bid and cost reports for the Project to assure that the claims are accurate and supportable. When additional work claims involve more than one trade subcontractor, as well as Dick/Morganti's own forces, the claim becomes an amalgam of entitlement positions and cost data. It is Dick/Morganti's responsibility to sort these issues out and then certify that the claims are valid and not based on false or unsupportable information.

The majority of Dick/Morganti's subcontractors, realizing the interrelated nature of the

trade work for the Project and the strength and importance of Dick/Morganti's entitlement arguments, seem willing to cooperate with Dick/Morganti and finalize their claims and damages so that they dovetail with Dick/Morganti's position regarding GSA-caused damages. Dick/Morganti is diligently working to finalize its own damages (which have changed because, among other reasons, the GSA continues to issue change orders), as well as to incorporate the subcontractors' claims and damages so that the final, total figure can be certified and submitted. Dick/Morganti anticipates having its final, total damages calculated and certified sometime in February 2008. The final certification and submission of the subcontractors' claims and damages will, of course, depend on when those subcontractors submit their respective claims and when Dick/Morganti's due diligence can be completed on those subcontractor claims. Dick/Morganti rejects the notion that its November 30th submission was somehow improper, as Dick/Morganti has submitted and will continue to submit damage claims to the GSA that the GSA must process.

### B.   Subcontractor Claims

#### 1.   Webcor

Webcor's claims are categorized as Webcor's change order requests ("COR's") 60 to 65. COR 60, in the amount of $4,671,740.27, is the primary Webcor claim, and it was certified by Dick/Morganti and passed on to the GSA on June 13, 2007. COR 60 is chronologically the first entitlement issue analyzed in the Global Claim, as the rebar congestion at the outset of the Project delayed and impacted the rest of the Project. COR 60 is related to Bay Area Reinforcing's claim (another subcontractor with whom Dick/Morganti has reached a joint prosecution agreement), which has been certified by Dick/Morganti and submitted to the GSA. Dick/Morganti and Webcor's entitlement arguments in support of COR 60 are covered extensively in the Global Claim. The GSA has recently requested more backup information regarding COR 60, and Dick/Morganti has passed on this request to Webcor. Webcor, in turn, responded and stated that it will provide more information, if Webcor decides to, by January 11, 2007. (See correspondence between Dick/Morganti and Webcor, attached as Exhibits B to G to the Ambroso Decl.) Dick/Morganti has been diligent in pursuing Webcor's claims, yet Webcor,

5
STATUS BRIEF OF AMERICAN CASUALTY COMPANY OF
READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA RE: DICK/MORGANTI'S GLOBAL CLAIM

Case No.: 3:07-CV-02564-CRB
Consolidated with Case No.:
3:07-CV-07-04180 EDL

essentially, believes that one can simply and quickly demand and recover $4.7 million. This belief is not consistent with Webcor's obligations to Dick/Morganti under the parties' subcontract.

As Dick/Morganti previously informed Webcor, COR's 61 to 65 were being analyzed for submission with the Global Claim, and Dick/Morganti recently informed Webcor of Dick/Morganti's position with respect to these COR's. COR's 61 and 62 will be submitted by Dick/Morganti as part of the Global Claim upon receipt of Webcor's certification. (See Exhibit F to the Ambroso Decl.) Dick/Morganti has determined that COR's 63 and 64 (together totaling $839,935) essentially constitute a dispute between Dick/Morganti and Webcor. Dick/Morganti has informed Webcor of its intent to submit to these two COR's to binding arbitration, as contemplated by the Webcor subcontract. As to COR 65 ("Costs Associated with February 21, 2004 Fire" in the amount of $136,961), Dick/Morganti has requested that Webcor cease its efforts to classify the fire as a "force majeure event." Dick/Morganti's position, based on the facts of the fire, is that Webcor is responsible for any resulting losses and that it should take the issue up with Webcor's general liability insurance carrier for the Project. (See Dick/Morganti letter attached as Exhibit G to the Ambroso Decl.)

Thus, Dick/Morganti demands that Webcor submit its dispute over COR's 63 and 64 to binding arbitration, and seek compensation for the losses caused by the fire from its insurance carrier. Essentially, the ball is in Webcor's Court, as Dick/Morganti has set forth its plan for dealing with Webcor's outstanding COR's based on their respective legal and factual merits.

### 2. Performance Contracting Inc. ("PCI")

PCI's claim for additional compensation submitted to Dick/Morganti for the Project amounts to $7,612,331.83. Dick/Morganti believes that the vast majority of the delays, impacts, and added costs referenced in PCI's claim document were caused by the GSA's actions and decisions identified by Dick/Morganti in its November 30, 2007 Global Claim. Those entitlement issues with the GSA include: (1) rebar congestion and concrete finishes; (2) F through L line support steel for flat-lock panes; (3) window wall/concrete camber design problems; (4) GSA-directed tenant improvements; and (5) the cumulative impact from GSA's

6

STATUS BRIEF OF AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA RE: DICK/MORGANTI'S GLOBAL CLAIM

Case No.: 3:07-CV-02564-CRB
Consolidated with Case No.:
3:07-CV-07-04180 EDL

LAW OFFICES
Peckar & Abramson
A Professional Corporation

1  design deficiencies and changed/added work for the Project.  The entitlement issues identified in
2  Dick/Morganti's Global Claim clearly caused significant delays and impacts to all of the work
3  on the Project, including PCI's work.  The damages identified in PCI's claim relating to delays
4  and loss of productivity costs certainly were caused (in whole or part) by the entitlement events
5  identified in the Global Claim as being the responsibility of the GSA.  Indeed, the work
6  associated with the F through L line support steel and GSA-directed tenant improvement work
7  was almost exclusively the type of work included in PCI's scope of work, and that work is at the
8  heart of Dick/Morganti's claim relating to those extra and disputed work items.  PCI cannot
9  plausibly deny that the bulk of its claim is related to the GSA's acts, errors, and omissions.

10  There is an obvious need for Dick/Morganti and PCI to cooperate with each other and
11  reconcile differences over schedule issues and pricing PCI's claims for extra work.  Indeed,
12  Article 38 of the PCI subcontract, which forms the basis for this Stay, states that PCI will "join
13  in" the GSA claims process, and if not a formal party, "cooperate with [Dick Morganti]."  (See
14  Exhibit L to the Ambroso Decl.)  Unfortunately, PCI has failed to "join in" and "cooperate"
15  with those claims against the GSA.  Prior to submitting the Global Claim, Dick/Morganti
16  contacted PCI's attorney requesting that PCI review Dick/Morganti's soon-to-be-submitted
17  Global Claim and to identify any of PCI's damages caused by the entitlement events set forth in
18  the Global Claim.  To date, PCI has done nothing in response to this request to identify and
19  allocate PCI's damages, but simply demanded that the claim be submitted "as is.".  (See
20  Ambroso Decl., ¶'s 21-24; Exhibit J.)

21  Dick/Morganti must certify any subcontractor claim submitted to the GSA.  Attendant to
22  any such certification are the penalties of the False Claims Act referenced above.  In order for
23  Dick/Morganti to certify PCI's claim and damages, PCI must designate which of its damages
24  result from the GSA's actions, and which of those damages result from the actions of others.
25  On December 18, 2007, Dick/Morganti formally demanded that PCI identify the damages
26  caused by the GSA's actions on the Project.  While Dick/Morganti believes that the vast
27  majority of the delays and impacts to PCI's work were the result of the GSA's actions, until PCI
28  identifies and allocates those damages, i.e., "joins in" and "cooperates," Dick/Morganti cannot

7
STATUS BRIEF OF AMERICAN CASUALTY COMPANY OF         Case No.: 3:07-CV-02564-CRB
READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY   Consolidated with Case No.:
OF PITTSBURGH, PA RE: DICK/MORGANTI'S GLOBAL CLAIM    3:07-CV-07-04180 EDL

LAW OFFICES
Peckar & Abramson
A Professional Corporation

certify PCI's claim and submit it to the GSA. Dick/Morganti has offered to have its personnel and consultants meet with PCI to help PCI better understand the basis for the entitlement issues against the GSA. (See December 18, 2007 letter, Exhibit K to the Ambroso Decl.)

### 3. Other Subcontractors

Dick/Morganti has submitted to the GSA the certified claims of Bay Area Reinforcing and Third Party Defendant Boyett Door & Hardware on December 11, 2007 to supplement the Global Claim. The amounts of those submitted claims are $2,406,112 and $719,219, respectively. Dick/Morganti and Third Party Defendant Marelich have been negotiating the final terms of a joint prosecution agreement, and Dick/Morganti anticipates finalizing this agreement and dismissing Marelich by early January 2008, if not before. Third Party Defendant Rosendin has certified its unresolved COR's for submission to the GSA, and Dick/Morganti is working with Rosendin to finalize its remaining claim for certification and submission as a supplement to the Global Claim. Third Party Defendant Permasteelisa has not yet submitted a certified claim, but Dick/Morganti anticipates working with Permasteelisa and its claim consultants to finalize the claim for supplementing the Global Claim. Another subcontractor, T&M Manufacturing, has signed a joint prosecution agreement with Dick/Morganti, and is working with Dick/Morganti to finalize its claim to be submitted as a supplement to the Global Claim.

Three of Dick/Morganti's other smaller subcontractors have filed actions in this Court: (1) Berger Brothers (Case No. C-07-05108-JSW); (2) Eggli Landscaping (Case No. C-07-05699-CRB); and (3) Concrete Polishing Technologies, Inc. (Case No. C-07-06129-EMC). Dick/Morganti and Berger Brothers have reached a settlement agreement in principal and are finalizing the terms of the formal written agreement. Dick/Morganti has also reached a settlement with Eggli Landscaping and a formal written agreement is being finalized. Concrete Polishing Technologies, Inc. filed its action on December 4, 2007 and counsel for Dick/Morganti agreed to accept service of the summons and complaint on December 10, 2007. Dick/Morganti is analyzing this complaint and anticipates negotiating a potential settlement in early January 2008.

LAW OFFICES
Peckar & Abramson
A Professional Corporation

8
STATUS BRIEF OF AMERICAN CASUALTY COMPANY OF       Case No.: 3:07-CV-02564-CRB
READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY   Consolidated with Case No.:
OF PITTSBURGH, PA RE: DICK/MORGANTI'S GLOBAL CLAIM      3:07-CV-07-04180 EDL

### III. CONCLUSION

Dick/Morganti's ability to further supplement its Global Claim and present its total damages is largely dependent on getting the remaining, necessary information from its subcontractors. Each of the subcontractors, with the exception of Webcor and PCI, are cooperating with Dick/Morganti. This is what they are required to do pursuant to the subcontracts, and cooperation certainly makes the most practical sense in forcing the GSA to completely pay for the Project. Dick/Morganti's position vis-a-vis Webcor has been made clear, and Dick/Morganti believes that any more procedural issues can be informally resolved. PCI is in breach of its obligations to cooperate with Dick/Morganti in pursuing its claim for damages caused by the GSA. If PCI is allowed to continue its obstinate behavior, the parties' legal costs will likely increase, while pressure on the GSA to pay for the damages will decrease. From a legal, factual, and practical standpoint, the Stay should remain in place and each subcontractor should be required to cooperate with Dick/Morganti in prosecuting the Global Claim.

Dated: December 18, 2007                         PECKAR & ABRAMSON, P.C.


                                                 By:        /s/ Rick W. Grady
                                                        Raymond M. Buddie
                                                        Rick W. Grady
                                                        Attorneys for AMERICAN CASUALTY
                                                        COMPANY OF READING, PA; and
                                                        NATIONAL UNION FIRE INSURANCE
                                                        COMPANY OF PITTSBURGH, PA

9
STATUS BRIEF OF AMERICAN CASUALTY COMPANY OF READING, PA AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA RE: DICK/MORGANTI'S GLOBAL CLAIM    Case No.: 3:07-CV-02564-CRB  Consolidated with Case No.: 3:07-CV-07-04180 EDL

LAW OFFICES
Peckar & Abramson
A Professional Corporation