# EXHIBIT A



November 30, 2007

General Services Administration
Property Development Division 9PCN
450 Golden Gate Avenue
3rd Floor West
San Francisco, CA 94102

Attn:    Shelita Harper

Re:    New San Francisco Federal Office Building
        Project No. NCA00049
        Contract No. GS-09P-02-KTC-0002

Subject:    Dick/Morganti Claim for Equitable Adjustment

Dear Shelita Harper:

Enclosed please find two (2) copies of Dick/Morganti's Claim for Equitable Adjustment against the GSA on this Project. Pursuant to FAR 52.233-1 Disputes, we hereby request that you, as the Contracting Officer, issue a Final Decision on this Claim as soon as possible.

Please let me know if you have any questions.

Very Truly Yours,

**Dick/Morganti, JV**

Daniel R. Martin
Executive Vice President

DRM:mh
Enclosure
CC:    Ron Brookfield, Dick/Morganti, JV – w/o enc.
        Vincent C. Petito, DM - w/o enc.
        File

CERTIFICATION FOR CLAIM OF

DICK/MORGANTI, A JOINT VENTURE

UNITED STATES FEDERAL BUILDING

SAN FRANCISCO, CALIFORNIA


I certify that the Claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount to be requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the Claim on behalf of the Contractor.


DICK CORPORATION

Signature: _____
Daniel R. Martin
Executive Vice President

Date:    November 30, 2007

# EXHIBIT B



*Building Excellence for Over 80 Years!*

**Michael T. Ambroso**
*Assistant General Counsel &*
*Assistant Secretary*

October 31, 2007

VIA FACSIMILE #925-935-0371
and First Class Mail
William T. Nagle, Esq.
Bowles & Verna, LLP
2121 N. California Blvd.
Suite 875
Walnut Creek, CA  94569-8180

RE:    San Francisco Federal Building

Dear Mr. Nagle:

This is in response to your letter of October 24, 2007, in which you stated Webcor's objections to the recent GSA letter in which the Contracting Officer stated the GSA's need for additional time to issue a Final Decision on the June 13, 2007 claim submitted by Dick/Morganti, on behalf of Webcor.

First, let me say that Dick/Morganti supports Webcor's claim and will continue to support it through the claim and disputes process.  Dick/Morganti also understands and shares in Webcor's frustration with the GSA's delays, refusals to authorize and pay for valid change order costs, and other unjustified actions throughout the long and difficult process of completing this Project.  As you are well aware, the number and pervasiveness of the GSA's changes and failures have made the claim submission process a very difficult and time-consuming task.  Dick/Morganti does not disagree with Webcor's position that the GSA's continued delays in processing and paying valid change order requests and claims on this Project is unreasonable.

Dick/Morganti strongly disagrees, however, with the allegations in your letter that Dick/Morganti somehow has breached its obligations to pursue any claims on this Project on behalf of Webcor. As you know, that is not the case.  Contrary to the allegations in your letter, Dick/Morganti has diligently supported and pursued Webcor's claim in this matter.  Dick/Morganti worked with Webcor personnel to evaluate the Webcor submission and to comply with Dick/Morganti's obligations to certify the Webcor claim before passing it on to GSA.  Due to the magnitude and interrelatedness of the various claim entitlement issues on this Project, that task required considerable time and attention.  Dick/Morganti is not the cause of the GSA's delay in these matters.

Currently, Dick/Morganti is diligently working to prepare and submit its global claim on the Project.  That document will set forth the bases for claim entitlement against the GSA, justifying additional time and compensation for Dick/Morganti and its subcontractors.  We expect to submit the global claim in accordance with the court's order to do so by November 30.  We do not

Dick Corporation
Contractors, Construction Managers & Design Builders
P.O. Box 10896    Pittsburgh, PA 15236-0896    412-384-1287
mtambroso@dickcorp.com



William T. Nagle, Esq.
Bowles & Verna, LLP
October 31, 2007
Page 2


believe, however, that our subcontract with Webcor requires Dick/Morganti to take the steps you have requested in your letter, in order to expedite consideration of Webcor's claim ahead of all others.

Attached hereto is a copy of an undated letter from GSA received by Dick/Morganti late last week. As you can see, the letter requests certain backup information for the Webcor claims contained in Dick/Morganti's June 13, 2007 claim submission. A prompt Webcor response to the GSA's request for information may be helpful in expediting GSA's consideration and disposition of Webcor's claim. Please advise me at your earliest opportunity what, if any, information Webcor wishes to submit in response to the GSA's request. Dick/Morganti will promptly forward to the GSA any of the requested information provided by Webcor. Further, Dick/Morganti will continue to urge GSA and the Contracting Officer to promptly and fairly evaluate Webcor's claim.

Sincerely,

DICK CORPORATION

Michael T. Ambroso


enclosure
cc:    Joel Heusinger, Esq.
       Ray Buddie, Esq.

Dick Corporation
Contractors, Construction Managers & Design Builders
P.O. Box 10896    Pittsburgh, PA  15236-0896    412-384-1287
mtambroso@dickcorp.com



Dan Martin
Dick/Morganti
P.O. Box 10896
Pittsburg, PA 15236-0896

Regarding:    New San Francisco Federal Office Building
              GSA Project No. NCA00049
              GSA Contract No. GS-09P-02-KTC-0002

Subject:      Webcor Construction COR 60

As indicated in our recent letter to you dated October 11, 2007, GSA requires additional
time in which to consider DM's June 13, 2007 claim for damages allegedly incurred by
its subcontractor Webcor in connection with rebar and finish requirements. In order for
GSA to complete its evaluation of DM's claim, we need additional information for the
Labor and Supervision claims and additional detail for the Schedule ("Disruption")
Analysis.

**Labor Claims**

In support of the additional man hour claim calculations, Webcor has provided GSA
various summaries reflecting quantities of materials, man-hours and labor costs by cost
code and Work Activity – all in the aggregate rather than on a weekly or monthly basis.
Additionally, the data provided in the summaries cannot be confirmed because the data is
illegible, incomplete or was not provided. Therefore, GSA requests that DM provide the
following additional documentation:

1.  Legible copy of <u>Exhibit B</u>, Webcor's Payroll Summary;

2.  Documents in support of the claimed quantities installed, man hours and dollars
    by Individual and cost code for the work activities/cost codes used to calculate the
    labor damages. These documents may include:

    a)    Webcor's weekly/monthly Quantity Installed reports or such other
          reporting information maintained by Webcor that tracks the quantities
          claimed over time;

    b)    Webcor's Final Job Cost Report to confirm the budgeted, and actual
          costs, hours and quantities installed;

c)   Webcor's Productivity Reports or such other reports maintained to track the actual and planned productivity by work activity/cost code over time for the activities identified in its Claim

d)   Webcor's weekly Labor Distribution Reports or such other report that provides the detail information included in Exhibit B (e.g. hours, wage rates and dollars by individual and cost code) for the duration of the Job.

e)   Worksheets, calculations and supporting contemporaneous accounting documents to support the various adjustments set forth in the Claim Summaries (e.g. "Level Deck Fillers" and "Rework" adjustments).

f)   Documentation (e.g. timesheets, daily reports) to support the assumptions set forth in its Claim for *Increased Finishes* (Cost Codes 32019, 34020 and 34030) including but not limited to, production rate, crew size and durations.

**Supervision Claims**

In support of this portion of the claim, DM has provided GSA with a summary spreadsheet of the hours and dollars by week it has considered to calculate the daily rate. The schedule also references an Equipment Number without any other information. This claim suffers from the same documentation deficiencies noted above with regard to DM's Labor Claim. Therefore, GSA requests that DM provide the following additional documentation:

1.   Weekly Labor Distribution Reports for this Job that document the hours, dollars and wage rate for the individuals included in this Claim;

2.   Equipment Distribution and Equipment Utilization Reports to support the hours and dollars included in the Daily Rate calculation.

**Schedule Analysis**

DM has not provided legible and sufficient data to support its schedule analysis. In order to properly evaluate DM's Schedule Analysis, GSA requires the following information:

- Webcor's original as-planned schedule for its work on the project, including all supporting documentation
- All as-built, statused, updated, impacted and subcontractor schedules prepared in connection with the project, including all supporting documentation
- Supporting documentation for as-built dates specifically used in Webcor's analysis (e.g. daily reports/foreman daily logs prepared by Webcor, meeting minutes, correspondence related to the project)
- Supporting documentation for problems/impacts claimed by Webcor (e.g. RFIs, change orders, rain days, strikes, etc)

- Basis for disruption factors applied by Webcor due to claimed rebar congestion for wall and deck work.

Please provide this information by November 9, 2007, so that the Claim may be properly analyzed and evaluated. If you have any questions or would like additional time to respond, you may reach me at 415.522.3206.

Very truly yours,

Shelita M. Harper
Contracting Officer

    Meg Haggerty, 9L
    Maria Ciprazo, GSA
    Monsy Agleham, GSA
    David Proctor, Hunt
    File

# EXHIBIT C



Richard T. Bowles
Michael P. Verna
Robert I. Westerfield
Richard A. Ergo
K. P. Dean Harper
Mary P. Sullivan
Kenneth G. Jones
Charles S. Goldman
Kenneth B. McKenzie

David W. Trotter
Jason J. Granskog
Bradley R. Bowles
Lawrence D. Goldberg
William T. Nagle
Cathleen S. Huang
Brian D. Horwitz
Michael P. Connolly
Steven P. McFarlane
Veronica Ann O. Benigno

November 21, 2007

**VIA FACSIMILE AND MAIL**

Michael T. Ambroso
Assistant General Counsel
Dick Corporation
P. O. Box 10896
Pittsburgh, Pennsylvania 15236

   **Re: Webcor/Dick-Morganti**

Dear Mr. Ambroso:

   This letter confirms receipt of your letter dated October 31, 2007. In the letter, you admitted that the GSA's continued delays in processing and paying the Change Order Requests and claims on this project are unreasonable. The GSA's response is tantamount to a rejection requiring immediate appeal. Yet, you failed to appeal the GSA's request for additional time. As a result, you are in breach of the agreement between Dick-Morganti and Webcor that obligates you to cooperate in the pursuit of Webcor's claims.

   There is nothing in the contract between Webcor and Dick-Morganti that allows Dick-Morganti to lump Webcor's claim into a "global claim." Webcor's claim is independent. There are no contractual terms that allow Dick-Morganti to submit a "global claim" of dubious value (that will sit with the GSA for 2+ years) in lieu of Webcor's independent claim. You are required to treat Webcor's claim independently and take action on Webcor's behalf within 48 hours.

   If you continue to fail to treat Webcor's claim independently, you will be putting Dick-Morganti's interests ahead of Webcor's by submitting a "global claim," which neither Webcor nor any other subcontractor supports nor will certify, that will be negotiated for pennies on the dollar at the expense of Webcor. Such action will dilute the independent value of Webcor's claim, and constitute a further breach of the agreement.

   Moreover, you have a duty under Section 38 of the Agreement (page 23) to diligently pursue claims "until the dispute resolution and appeals process between the contractor and the owner is exhausted…" Under this provision, you have a duty to appeal the GSA's request now.

California Plaza  ◆  2121 N. California Blvd.  ◆  Suite 875  ◆  P.O. Box 8180  ◆  Walnut Creek, CA 94596-8180

Phone (925) 935-3300  ◆  Fax (925) 935-0371  ◆  www.bowlesverna.com



Michael Ambroso
November 21, 2007
Page 2

Otherwise, there is no question you are in default of the "diligent pursuit" requirement. Please confirm that you will immediately appeal GSA's denial of Webcor COR #60.

### COR Numbers 61-65

You previously informed Webcor that COR Nos. 61-65 do not involve the GSA. Subsequently, you changed that position and submitted a declaration to the Court on August 10, 2007 stating that the GSA is responsible for COR Nos. 61-65 and informing the Court that those change orders are being analyzed as part of the "global claim." If that is so, we need to see a draft of the claim immediately. We do not see how you can certify the validity of a claim that you have not ever shown to your subcontractor. Further, we note that, per the contract, you were required to submit Webcor's CORs to the GSA for review and approval within 48 hours of receiving them from Webcor. Please immediately provide us with all documents which evidence your submittal of these CORs to the GSA.

### Demand to See All Drafts and the Final Claim

This letter reiterates our request to see all drafts of the "global claim" you intend to submit to the GSA. Further, we demand to be copied on all past and future correspondence with the GSA regarding any claims Dick-Morganti is pursuing related to the Project and the "global claim" you have told the Court will be submitted to the GSA by November 30th. Please confirm that you will provide this documentation to us immediately. Thank you.

Very truly yours,

William T. Nagle

cc:    Roger P. Heyman
       Raymond M. Buddie
       Steven L. Iriki

# EXHIBIT D



*Building Excellence for Over 80 Years!*

**Michael T. Ambroso**
*Assistant General Counsel &*
*Assistant Secretary*

December 4, 2007

Via Facsimile #925-935-0371
<u>and First Class Mail</u>

William T. Nagle, Esq.
Bowles & Verna, LLP
2121 N. California Blvd.
Suite 875
Walnut Creek, CA  94596-8180

RE:    San Francisco Federal Building

Dear Mr. Nagle:

In my letter to you dated October 31, 2007, I attached a copy of the GSA's undated letter in which the GSA requested certain backup information relative to the Webcor claims contained in Dick/Morganti's June 13, 2007 claim submission.  (See attached for a copy of the GSA's undated letter.)  In my October 31 letter, I asked you to provide me with whatever information Webcor wanted to submit in response to the GSA's request.  To date, Dick/Morganti has not received any response from Webcor as to the GSA's document request, nor has Webcor provided any information or documents to pass on to the GSA in response to the GSA's letter.  Please note that Dick/Morganti has received another letter from the GSA (see attached) requesting a response to GSA's request for information.

Dick/Morganti believes that providing GSA with properly and legitimately requested information will certainly expedite the GSA's review of these claim entitlement issues, as well as the damages being sought by Webcor relating to these issues.  Please let me know as soon as possible how Webcor wants to respond to the GSA's request.  If Webcor believes that the GSA requests are inappropriate, overbroad or seek information which is legally privileged, please let me know the specifics of that Webcor position so that position can be communicated to the GSA.

Sincerely,

Michael T. Ambroso
Assistant General Counsel and
Assistant Secretary

MTA/slg
Attachments
cc:    Ray Buddie, Esq.
       Joel Heusinger, Esq.

Dick Corporation
Contractors, Construction Managers  & Design Builders
P.O. Box 10896   Pittsburgh, PA  15236-0896    412-384-1287
mtambroso@dickcorp.com



Dan Martin
Dick/Morganti
P.O. Box 10896
Pittsburg, PA 15236-0896

Regarding:    New San Francisco Federal Office Building
              GSA Project No. NCA00049
              GSA Contract No. GS-09P-02-KTC-0002

Subject:      Webcor Construction COR 60

As indicated in our recent letter to you dated October 11, 2007, GSA requires additional
time in which to consider DM's June 13, 2007 claim for damages allegedly incurred by
its subcontractor Webcor in connection with rebar and finish requirements. In order for
GSA to complete its evaluation of DM's claim, we need additional information for the
Labor and Supervision claims and additional detail for the Schedule ("Disruption")
Analysis.

**Labor Claims**

In support of the additional man hour claim calculations, Webcor has provided GSA
various summaries reflecting quantities of materials, man-hours and labor costs by cost
code and Work Activity – all in the aggregate rather than on a weekly or monthly basis.
Additionally, the data provided in the summaries cannot be confirmed because the data is
illegible, incomplete or was not provided. Therefore, GSA requests that DM provide the
following additional documentation:

1. Legible copy of Exhibit B, Webcor's Payroll Summary;

2. Documents in support of the claimed quantities installed, man hours and dollars
   by Individual and cost code for the work activities/cost codes used to calculate the
   labor damages. These documents may include:

   a)    Webcor's weekly/monthly Quantity Installed reports or such other
         reporting information maintained by Webcor that tracks the quantities
         claimed over time;

   b)    Webcor's Final Job Cost Report to confirm the budgeted, and actual
         costs, hours and quantities installed;

c)  Webcor's Productivity Reports or such other reports maintained to track the actual and planned productivity by work activity/cost code over time for the activities identified in its Claim

d)  Webcor's weekly Labor Distribution Reports or such other report that provides the detail information included in Exhibit B (e.g. hours, wage rates and dollars by individual and cost code) for the duration of the Job.

e)  Worksheets, calculations and supporting contemporaneous accounting documents to support the various adjustments set forth in the Claim Summaries (e.g. "Level Deck Fillers" and "Rework" adjustments).

f)  Documentation (e.g. timesheets, daily reports) to support the assumptions set forth in its Claim for *Increased Finishes* (Cost Codes 32019, 34020 and 34030) including but not limited to, production rate, crew size and durations.

## Supervision Claims

In support of this portion of the claim, DM has provided GSA with a summary spreadsheet of the hours and dollars by week it has considered to calculate the daily rate. The schedule also references an Equipment Number without any other information. This claim suffers from the same documentation deficiencies noted above with regard to DM's Labor Claim. Therefore, GSA requests that DM provide the following additional documentation:

1.  Weekly Labor Distribution Reports for this Job that document the hours, dollars and wage rate for the individuals included in this Claim;

2.  Equipment Distribution and Equipment Utilization Reports to support the hours and dollars included in the Daily Rate calculation.

## Schedule Analysis

DM has not provided legible and sufficient data to support its schedule analysis. In order to properly evaluate DM's Schedule Analysis, GSA requires the following information:

- Webcor's original as-planned schedule for its work on the project, including all supporting documentation
- All as-built, statused, updated, impacted and subcontractor schedules prepared in connection with the project, including all supporting documentation
- Supporting documentation for as-built dates specifically used in Webcor's analysis (e.g. daily reports/foreman daily logs prepared by Webcor, meeting minutes, correspondence related to the project)
- Supporting documentation for problems/impacts claimed by Webcor (e.g. RFIs, change orders, rain days, strikes, etc)

- Basis for disruption factors applied by Webcor due to claimed rebar congestion for wall and deck work.

Please provide this information by November 9, 2007, so that the Claim may be properly analyzed and evaluated. If you have any questions or would like additional time to respond, you may reach me at 415.522.3206.

Very truly yours,

Shelita M. Harper
Contracting Officer

     Meg Haggerty, 9L
     Maria Ciprazo, GSA
     Monsy Agleham, GSA
     David Proctor, Hunt
     File



November 16, 2007

Dan Martin
Dick/Morganti
P.O. Box 10896
Pittsburg, PA 15236-0896

Regarding:    New San Francisco Federal Office Building
              GSA Project No. NCA00049
              GSA Contract No. GS-09P-02-KTC-0002

Subject:      Webcor Construction COR 60

This letter is a follow-up to the October 25, 2007 letter (copy attached) in which GSA
requested additional information regarding the above claim submitted from
Dick/Morganti on behalf of Webcor. GSA requested a response by November 9, 2007.
At this time we still have not received a response. Please provide us with a response by
Monday November 26, 2007. If you have any questions or concerns, you may reach me
at 415.522.3206.

Very truly yours,

Shelita M. Harper
Contracting Officer

        Maria Ciprazo, GSA
        Monsy Agleham, GSA
        David Proctor, Hunt
        Vince Petito, DM
        File



DICK CORPORATION

Ray Buddie
Peckar & Abramson, P.C.
455 Market Street
21st Floor
San Francisco, CA 94105

94105+2420 C018



$00.410D
12/05/2007
Mailed From 15025
US POSTAGE

# EXHIBIT E

DEC. 6. 2007  3:47PM                                    NO. 627    P. 2/3



Richard T. Bowles          David W. Trotter
Michael P. Verna           Jason J. Granskog
Robert t. Westerfield      Bradley R. Bowles
Richard A. Ergo            Lawrence D. Goldberg
K.P. Dean Harper           William T. Nagle
Mary F. Sullivan           Cathleen S. Huang
Kenneth G. Jones           Brian D. Horwitz
Charles S. Goldman         Michael P. Connolly
Kenneth B. McKenzie        Steven F. McFarlane
                           Veronica Ann O. Benigno

December 6, 2007

**VIA FACSIMILE AND MAIL**

Michael T. Ambroso
Assistant General Counsel
Dick Corporation
P. O. Box 10896
Pittsburgh, Pennsylvania 15236

     Re:  Webcor/Dick-Morganti

Dear Mike:

     This will respond to your letter of December 4, 2007 to William Nagle.

     We note that we have already told you what we think of the GSA's request for more time and information related to C/O No. 60. The GSA has had Webcor's COR and supporting information in its possession for nearly two years. If the GSA couldn't read the supporting information we provided, one would think it would have asked for legible copies months, if not years ago. Further, as you are well aware, the vast majority of the information being requested by the GSA was already provided in our claim notebook. For example, Webcor's LDRs, daily logs, productivity reports and basis for disruption factors were are clearly and concisely included in its claim materials.

     Moreover, the GSA has not provided you with any explanation as to why it needs more time to evaluate Webcor's claim and why it needs the additional documents it seeks. As you have previously admitted, given the long history related to this claim, the GSA's request for additional time and information prior to responding to Webcor's claim is unreasonable. In light of these prior admissions, why are you now flip-flopping and taking the position that the GSA's requests are both proper and legitimate? Have you even bothered to ask the GSA why, after having sat on this claim for nearly two years, it NOW needs the additional requested information? Have you even looked at the information being requested by the GSA and/or bothered to point out that much of the information sought is already contained within the voluminous binders submitted with the claim? Or, are you simply pushing paper in a transparent effort to make it look like Webcor is delaying the claims review process?

     In reviewing the information requested by the GSA, we note that there are several categories of information that have been requested to be provided by DMJV, not Webcor. For



Michael Ambroso
December 6, 2007
Page 2

example, all of the information identified under the heading "Supervision Claims" relates to information that is sought from DMJV. Has DMJV provided this information to the GSA?

Further, when am I going to receive copies of DMJV's alleged "global claim"? The Court ordered you to have this submitted on November 20, 2007. It is now December 6, 2007, and we have seen nothing. Also, when are you going to respond to my queries regarding Change Orders Nos. 61-65? Also, when are you going to provide me with all of the drafts of DMJV's alleged "global claim?" How about our request for copies of correspondence between DMJV and the GSA regarding Webcor's COR No. 60, any other Webcor claims and/or DMJV's alleged "global claim?" When are we going to receive this information? We have been requesting it from you for months to no avail.

In your letter of October 31, 2007, you state that "Dick/Morganti supports Webcor's claim and will continue to support it through the claim and disputes process." Indeed, DMJV has declared, under penalty of perjury, that Webcor's claim is valid and warrants payment. Statements like these ring hollow, however, when our repeated requests for information from, and action by, DMJV are ignored.

As soon as we have received and had an opportunity to review the above information that has long since been requested of DMJV, including its alleged "global claim" (which was ordered to be submitted by November 30, 2007), we will assess what additional information we are prepared to forward to the GSA. Assuming you provide us with the above-requested information by no later than the close of business on December 14, 2007, we should be able to provide you with the additional information, if any, we intend to provide to the GSA, by no later than January 11, 2007.

Please do not hesitate to call if you have any questions.

Very truly yours,

Kenneth G. Jones

# EXHIBIT F



*Building Excellence for Over 80 Years!*

*Michael T. Ambroso*
*Assistant General Counsel &*
*Assistant Secretary*

December 11, 2007

VIA FACSIMILE #925-935-0371
and First Class Mail
Kenneth Jones, Esq.
Bowles & Verna, LLP
2121 N. California Blvd., Suite 875
Walnut Creek, CA 94596-8180

RE:    San Francisco Federal Building
       Webcor Pass Through Claims

Dear Ken:

After performing its entitlement analysis and completing its global claim (a copy of which was sent to you on December 6. 2007), Dick/Morganti believes that the following previously submitted Webcor claims are the responsibility of the GSA: Late Start Delay to Work (Webcor's COR #61), and Compensable Delay – Adverse Weather (Webcor COR #62). In order to pass those two claims to the GSA, D/M first needs Webcor to certify those claims consistent with the Contract Disputes Act.

Attached please find a copy of the Webcor certification which was provided for Webcor's claim relating to rebar congestion and concrete finish. Using the same format as attached, please have Webcor provide its certifications for the two claims referenced above. Webcor should send those original certifications to me as soon as possible so that these two claims can then be submitted to the GSA.

Please contact me with any questions.

Sincerely,

DICK CORPORATION

Michael T. Ambroso

MTA/lsn
enclosure
cc:    Joel Heusinger, Esq. (via fax #402-437-8558)
       Ray Buddie, Esq. (via fax #415-837-1320)

Dick Corporation
Contractors, Construction Managers & Design Builders
P.O Box 10896    Pittsburgh, PA 15236-0896    412-384-1287
mtambroso@dickcorp.com

**Certification of Claim**

      I certify, under penalty of perjury, that Webcor's claim for additional compensation as a result of the rebar congestion and increased finish requirements on the GSA Project No. NCA 00049 is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes Dick Morganti and the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Dated: 4/10/2007

By: _____
     Webcor Concrete

# EXHIBIT G

Dec 12 2007 1:07PM    DICK CORP                    4123841360                    p.1



*Building Excellence for Over 80 Years!*

**Michael T. Ambroso**
*Assistant General Counsel &*
*Assistant Secretary*

December 12, 2007

<u>VIA FACSIMILE #925-935-0371</u>
<u>and First Class Mail</u>
Kenneth Jones, Esq.
Bowles & Verna, LLP
2121 N. California Blvd., Suite 875
Walnut Creek, CA  94596-8180

RE:    San Francisco Federal Building

Dear Ken:

This is in response to your December 6, 2007 letter.

Over the last week, you have received documentation and communication from Dick/Morganti which addresses some of the questions and requests contained in your December 6th letter.  On December 6, 2007, D/M sent you a copy of its global claim (including exhibits) which was submitted to the GSA on November 30, 2007.  On December 11, 2007, D/M sent you a letter informing Webcor that, after completing its entitlement analysis for the global claim, D/M was able to submit, as part of the global claim to the GSA, two of Webcor's remaining claim issues (Webcor CORs #61 and #62).  D/M will submit those claims to the GSA immediately upon receiving the requested Webcor certification of those claims.

As for Webcor's claims relating to "Productivity Impacts Due to Access and Site Staging" (Webcor COR #63), and "Compensable Delays Due to Tower Crane" (Webcor COR #64), D/M is willing to submit these two Webcor claims to binding arbitration, as contemplated by the terms of the Subcontract.  D/M believes that the binding arbitration of these two issues will be the most efficient and economical way for the parties to resolve these disputes.  Please confirm that Webcor is agreeable to arbitrate these two issues so that we can promptly discuss the selection of an arbitrator(s) and the arbitration process.

On Webcor's other remaining claim, "Costs Associated with February 21, 2004 Fire" (Webcor COR #65), D/M does not understand how this issue can be a "force majeure event", as described by Webcor.  Attached please find FAR 52.249-10 "Default" from D/M's Contract with the GSA.  This FAR provision is, in effect, the only "force majeure" provision of the Contract.  Given the language of this clause and the facts relating to the fire, we request Webcor to explain how this Webcor caused fire can be a claim issue to take to the GSA.  If Webcor has an explanation for how this claim issue can go back to the GSA as a "force majeure" event or otherwise, D/M will submit it.  At this point, however, we do not have this information from Webcor.  It is our understanding that Webcor has put its General Liability insurance carrier on notice of this event.  Unless Webcor has an explanation as to why this fire issue should be submitted to the GSA, D/M

Dick Corporation
Contractors, Construction Managers & Design Builders
P.C. Box 10896   Pittsburgh, PA 15236-0896    412-384-1287
mtambroso@dickcorp.com



Kenneth Jones, Esq.
Bowles & Verna, LLP
December 12, 2007
Page 2

believes that compensation for the delays and cost impacts arising from this event need to be pursued against Webcor's General Liability carrier.

In regards to another statement and question raised in your December 6th letter, the GSA's request for additional information relating to the "Supervision Claims" contained in Webcor's COR #60, is not addressed to D/M. While the GSA letter does state that it is requesting "D/M" to provide the requested information, this reference is only made because D/M is the entity that submitted this claim to the GSA. Clearly, the GSA's request for additional information on this item relates to the Webcor documents contained in the following sections of Webcor's COR #60, specifically the sections labeled "Rebar Labor", "Rebar Equipment", "Rebar Expenses", "Finishes Labor", "Finishes Equipment", and "Finishes Expenses". In your December 6, 2007 letter, you state that Webcor will be responding to the GSA's request for additional information in early January 2008. In that response, please include Webcor's response to the GSA's request for information relating to the "Supervision Claims".

Please let me know if you have any questions relating to the contents of this letter.

Sincerely,

DICK CORPORATION

Michael T. Ambroso

MTA/lsn
enclosure
cc:    Joel Heusinger, Esq. (via fax #402-437-8558)
       Ray Buddie, Esq. (via fax #415-837-1320)

Contracting Officer under 49.202 of the Federal Acquisition Regulation, in effect on the date of this contract, to be fair and reasonable; however, if it appears that the Contractor would have sustained a loss on the entire contact had it been completed, the Contracting Officer shall allow no profit under this subdivision

     (iii) and shall reduce the settlement to reflect the indicated rate loss.

(2)  The reasonable costs of settlement of the work terminated, including-

     (i) Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data;

     (ii)  The termination and settlement of subcontracts (excluding the amounts of such settlements); and

     (iii) Storage, transportation, and other costs incurred, reasonably necessary for the preservation, protection, or disposition of the termination inventory.

## 12.    FAR 52.249-10 DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984)

     (a)  If the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in this contract including any extension, or fails to complete the work within the time, the Government may, by written notice to the Contractor, terminate the right to proceed with the work (or the separable part of the work) that has been delayed.  In this event, the Government may take over the work and complete it by contractor or otherwise, and may take possession of and use any materials, appliances, and plant on the work site necessary for completing the work.  The Contractor and its sureties shall be liable for any damage to the Government resulting from the Contractor's refusal or failure to complete the work within the specified time, whether or not the Contractor's right to proceed with the work is terminated.  This liability includes any increased costs incurred by the Government in completing the work.

     (b)  The Contractor's right to proceed shall not be terminated nor the Contractor charged with damages under this clause, if-

     (1)  The delay in completing the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor.  Examples of such causes include

     (i) Acts of God or of the public enemy,

     (ii) Acts of the Government in either its sovereign or contractual capacity,

     (iii) Acts of another Contractor in the performance of a contract with the Government,

     (iv) Fires,

     (v) Floods,

     (vi) Epidemics,

     (vii) Quarantine restrictions,

     (viii) Strikes,

     (ix) Freight embargoes,

     (x) Unusually severe weather, or

     (xi) Delays of subcontractors or suppliers at any tier arising from unforeseeable causes beyond the control and without the fault or negligence of both the Contractor and the subcontractors or suppliers; and

     (2)  The Contractor, within 10 days from the beginning of any delay (unless extended by the Contracting Officer), notifies the Contracting Officer in writing of the causes of delay.  The Contracting Officer shall ascertain the facts and the extent of delay. If, in the judgment of the Contracting Officer, the findings of fact warrant such action,

Current through FAC-97-23 and GSAM, Chge. 01                    Revision date 04/13/01

the time for completing the work shall be extended.  The findings of the Contracting Officer shall be final and conclusive on the parties, but subject to appeal under the Disputes clause.

(c)  If, after termination of the Contractor's right to proceed, it is determined that the Contractor was not in default, or that the delay was excusable, the rights and obligations of the parties will be the same as if the termination had been issued for convenience of the Government.

(d) The rights and remedies of the Government in this clause are in additional to any other rights and remedies provided by law or under this contract.

(End of clause)

Current through FAC-97-23 and GSAM, Chge. 01                    Revision date 04/13/01

# EXHIBIT H



Steven L. Iriki
Voice-mail Extension No. 32
e-mail: sli@ocilaw.com

October 25, 2007

Patrick Hallinan, Esq.
Law Offices of Hallinan & Wine
345 Franklin Street
San Francisco, CA 94102

Raymond Buddie, Esq.
Rick W. Grady, Esq.
Peckar & Abramson, P.C.
250 Montgomery Street, 16th Floor
San Francisco, CA 94104

Re:    ***Performance Contracting, Inc. v. Dick/Morganti, et al.***
       **Our File Number:  2010-020**

Gentlemen:

In some of your recent pleadings, Dick/Morganti has suggested that there are errors with Performance Contracting's certification to its claim dated June 29, 2007. Dick/Morganti suggests that PCI improperly excluded items or claims in the amount of $100,000 or less. Please note that under 48 C.F.R. section 33.207 contractors are only required to certify items or claims in excess of $100,000. I trust this satisfies the concerns that you have raised.

If you have any other comments or questions about PCI's claim, feel free to contact me.

Very truly yours,

**OTIS CANLI & IRIKI, LLP**

Steven L. Iriki

SLI:ah
cc:    J. Morrow Otis, Esq.
       Charles F. Williams, Esq.

2010-020-CORR-Hallinan, Buddie & Grady fr SLI 102507.doc

OTIS CANLI & IRIKI, LLP
ATTORNEYS AT LAW

625 Market Street, 4th Floor San Francisco, California, 94105-3306 Phone 415-362-4442 Fax 415-362-7332 www.ocilaw.com

# EXHIBIT I

**DICK**
C O R P O R A T I O N

*Building Excellence for Over 80 Years!*

Michael T. Ambroso
*Assistant General Counsel &*
*Assistant Secretary*

November 12, 2007

VIA FACSIMILE #415-362-7332
and First Class Mail
Steven L. Iriki, Esq.
Otis, Canli & Iriki, LLP
625 Market Street – 4th Floor
San Francisco, CA  94105-3306

RE:    San Francisco Federal Building
       Claim by Performance Contracting, Inc.

Dear Mr. Iriki:

This is in response to your October 25, 2007 letter to Messrs. Hallinan and Buddie.  In that letter, you raise the issue of PCI's June 29, 2007 Certification (copy attached) which excludes "…any items that are equal to or less than $100,000 . . .".  While you are correct that the Contract Disputes Act does not require a certification for a claim under $100,000, PCI's June 29, 2007 claim certainly does not fall under that $100,000 threshold for which a certification would not be required.  PCI's June 29, 2007 claim document requests payment of $7,612,332.  Since PCI has not submitted a claim under $100,000, the exclusionary language contained in PCI's Certification is inappropriate.  Dick/Morganti therefore requests PCI to reissue its Certification with the following language deleted:  "any items that are equal to or less than $100,000 or".  Please send that revised Certification to me as soon as possible.

Additionally, Dick/Morganti is continuing its due diligence review of the PCI claim in order to determine what portions should be certified by Dick/Morganti and passed on to the GSA.  In order to complete that review, Dick/Morganti requires a copy of PCI's current cost report for its work on this Project.  This requested financial document should indicate PCI's estimated or budgeted costs for its work activities on this Project, and should also indicate PCI's actual costs incurred to date for those work activities.  This PCI budget and cost information is necessary for Dick/Morganti to perform its due diligence in reviewing the damages requested by PCI in its claim, so that Dick/Morganti can then certify those PCI damages in accordance with Dick/Morganti's obligations under the Contract Disputes Act.

Given the Court's directive for Dick/Morganti to have its global claim submitted to the GSA by November 30, 2007, it is necessary for PCI to supply the requested cost report information no later than Friday, November 16, 2007.  I am certain that the requested current cost report is readily available to PCI.  Please have the PCI records sent to me via email or facsimile as referenced on the letterhead of this letter.

**DICK**
CORPORATION

Steven L. Iriki, Esq.
Otis, Canli & Iriki, LLP
November 12, 2007
Page 2

Sincerely,

DICK CORPORATION

Michael T. Ambroso

enclosure
cc:     Joel Heusinger, Esq.
            Woods & Aitken, LLP
            Cornhusker Plaza
            301 South 13th Street - Suite 500
            Lincoln, NE 68508-2578
        Ray Buddie, Esq.
            Peckar & Abramson, P.C.
            455 Market Street - 21st Floor
            San Francisco, CA 94105

Dick Corporation
Contractors, Construction Managers & Design Builders
P.O. Box 10896    Pittsburgh, PA 15236-0896    412-384-1287
mtambroso@dickcorp.com

## CERTIFICATION

I certify that the aforementioned claim is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which Performance Contracting, Inc., believes the Government is liable; and that I am duly authorized to certify the claim on behalf of Performance Contracting, Inc. Excluded from this Certification are any items that are equal to or less than $100,000.00 or any items that cannot be passed through as claims to the Government Services Administration.

Dated: June 29 , 2007

Robert Dean
Performance Contracting, Inc.
Operations Manager

# EXHIBIT J



Steven L. Iriki
Voice-mail Extension No. 32
e-mail: sli@ocilaw.com

November 21, 2007

*Via Facsimile and U.S. Mail:*  *(412) 384-1150*

Michael T. Ambroso, Esq.
Dick Corporation
P.O. Box 10896
Pittsburg, PA  15236

Re:    ***Performance Contracting, Inc. v. Dick/Morganti, et al.***
       **Our File Number:  2010-020**

Dear Mr. Ambroso:

I am responding to your letter of November 12, 2007.  First, I must respectfully disagree with your interpretation of 48 C.F.R. section 33.207.  As you know, Performance Contracting's claim is made up of many diverse items each of which involves differing time periods, parts of the building, scope of work and other issues.  Given these differences, we are justified in taking the approach that we did in our certification.  PCI calls upon Dick/Morganti to submit its claim as is to the GSA.

Attached please find a summary of PCI's costs and budgeted costs for the project as you requested.  The spreadsheets are broken down by activity and you will find one spreadsheet for each of the three activities performed by PCI--drywall, cement panels and acoustical ceilings. Please note that on the spreadsheet for drywall there is an entry for Code No. 3999 entitled "Pending CHR Order COS" near the top of the first page.  The title is a misnomer as the item more accurately represents PCI's unpaid contract balance of approximately $2,969,727.  From an accounting perspective, PCI takes a conservative point of view toward its projects and for the GSA project, PCI has written off the outstanding and unpaid contract balance for accounting purposes only.  From a legal standpoint and for the purposes of its claim, PCI fully expects Dick/Morganti and the sureties to make good on the contract balance, as well as all of the other items listed in PCI's claim.

OTIS CANLI & IRIKI, LLP

Michael T. Ambroso, Esq.
November 21, 2007
Page 2

If you have any other comments or questions about PCI's claim, feel free to contact me.

Very truly yours,

**OTIS CANLI & IRIKI, LLP**

Steven L. Iriki

Enclosures
SLI:ah
cc:   J. Morrow Otis, Esq. (wo/encls.)
       Charles F. Williams, Esq. (wo/encls.)
       Dennis Dean (wo/encls.)

2010-020-CORR-Ambroso fr SLI 112007.doc

CCH Report from 0xxx to 9xxx by SysCode for Job: 7074 and Branch: 010576

| Sys Code | Description | JTD Est | JTD Prj | JTD | EST vs ACT | PRJ vs ACT | MTD |
|---|---|---|---|---|---|---|---|
| xxxx | Grand Total | 2,530,683 | 11,649,000 | 11,566,385 | (9,036,702) | 82,615 | 21,011 |
| D000 | DAYS | 8,701 | 15,513 | 15,417.56 | (6,717) | 95 | 0.00 |
| Lxxx | Labor Total | 3,850,727 | 6,972,297 | 6,919,915 | (3,069,188) | 52,292 | 0.00 |
| 3000 | Contract Contingency | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 3001 | Other Contingency | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 3999 | PENDING CHG ORDER CO | (2,969,727) | 0 | 0.00 | (2,969,727) | 0 | 0.00 |
| 3xxx | Bucket Total | (2,969,727) | 0 | 0.00 | (2,969,727) | 0 | 0.00 |
| 4000 | MATERIAL-OTHER | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 4100 | WIRES | 0 | 120 | 120.00 | (120) | 0 | 0.00 |
| 4110 | GRID CROSS TEES ETC | 0 | 504 | 504.00 | (504) | 0 | 0.00 |
| 4120 | CEILING TILE | 0 | 239 | 239.09 | (239) | 0 | 0.00 |
| 4190 | MISC. CEILINGS | 0 | 1,050 | 1,050.00 | (1,050) | 0 | 0.00 |
| 4230 | SAFING | 11,290 | 0 | 0.00 | 11,290 | 0 | 0.00 |
| 4308 | FRAMING | 506,174 | 424 | 424.26 | 505,750 | 0 | 0.00 |
| 4310 | LT GAUGE FRAMING | 25,576 | 950,573 | 950,573.14 | (924,997) | 0 | 0.00 |
| 4315 | HVY GAUGE FRAMING | 2,361 | 3,903 | 3,902.50 | (1,542) | 1 | 0.00 |
| 4320 | RIGID X GRID | 1,280 | 128 | 127.90 | 1,152 | 0 | 0.00 |
| 4325 | FASTENERS | 47,040 | 141,970 | 141,969.79 | (94,930) | 0 | 0.00 |
| 4330 | EXTERIOR SHEATHG | 14,588 | 28,003 | 28,003.27 | (13,415) | 0 | 0.00 |
| 4332 | Misc. Wood | 1,193 | 646 | 646.48 | 547 | 0 | 0.00 |
| 4334 | CEMENT/BACKER BOARD | 1,521 | 0 | 0.00 | 1,521 | 0 | 0.00 |
| 4335 | DRYWALL | 290,136 | 348,141 | 348,141.29 | (58,005) | 0 | 0.00 |
| 4340 | TRIMS | 16,210 | 10,739 | 10,738.68 | 5,471 | 0 | 0.00 |
| 4341 | SPECIAL TRIMS | 5,700 | 0 | 0.00 | 5,700 | 0 | 0.00 |
| 4345 | FINISH COMPOUND | 33,738 | 38,293 | 38,292.51 | (4,555) | 0 | 0.00 |
| 4350 | SEALANT & TAPE | 480 | 0 | 0.00 | 480 | 0 | 0.00 |
| 4390 | Misc. Drywall | 840 | 2,209 | 2,209.08 | (1,369) | 0 | 0.00 |
| 4395 | SPECIAL SECURITY CONS | 2,134 | 0 | 0.00 | 2,134 | 0 | 0.00 |
| 4400 | WALL PANELS | 0 | 2,925 | 2,925.00 | (2,925) | 0 | 0.00 |
| 4410 | LATH & TRIMS | 0 | 12,503 | 12,502.70 | (12,503) | 0 | 0.00 |
| 4430 | SYNTHETIC PLSTR. | 0 | 537 | 536.68 | (537) | 0 | 0.00 |
| 4470 | FIREPROOFING | 0 | 25,888 | 25,888.36 | (25,888) | 0 | 0.00 |
| 4475 | PLASTER | 0 | 4,191 | 4,191.19 | (4,191) | 0 | 0.00 |
| 4481 | HUMIDIFIERS | 3,700 | 0 | 0.00 | 3,700 | 0 | 0.00 |
| 4506 | INSULATION | 493 | 1,309 | 1,309.20 | (816) | 0 | 0.00 |
| 4515 | TRIMS/ALUMINUMS | 0 | (33) | (33.35) | 33 | 0 | 0.00 |
| 4520 | CAULK/SEALANTS | 84,915 | 35,966 | 35,966.43 | 48,949 | 0 | 0.00 |
| 4525 | DOORS/HARDWARE | 0 | 8,580 | 8,580.00 | (8,580) | 0 | 0.00 |
| 4560 | STOCK & PROTECT | 0 | 2,002 | 2,001.60 | (2,002) | 0 | 0.00 |
| 4xxx | Bucket Total | 1,049,369 | 1,620,810 | 1,620,809.80 | (571,441) | 0 | 0.00 |
| 5000 | FREIGHT | 984 | 45,141 | 45,140.93 | (44,157) | 0 | 0.00 |
| 5001 | FREIGHT BILLS | 1,607 | 36,385 | 36,384.89 | (34,778) | 0 | 0.00 |
| 5003 | VENDOR STOCKING | 109,925 | 21,374 | 21,374.39 | 88,551 | 0 | 0.00 |
| 5xxx | Bucket Total | 112,516 | 102,900 | 102,900.21 | 9,616 | 0 | 0.00 |
| 6000 | Taxes | (27) | 0 | 0.00 | (27) | 0 | 0.00 |
| 6021 | BOND COSTS | 0 | 27,688 | 27,688.00 | (27,688) | 0 | 0.00 |
| 6700 | Tax Accrual | 89,400 | 137,769 | 137,768.87 | (48,369) | 0 | 0.00 |
| 6xxx | Bucket Total | 89,373 | 165,457 | 165,456.87 | (76,084) | 0 | 0.00 |
| 7000 | EQUIPMENT | 0 | 3,212 | 3,211.60 | (3,212) | 0 | 0.00 |
| 7002 | TOOLS | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 7004 | GASOLINE / LPG | 0 | 3,862 | 3,862.43 | (3,862) | 0 | 0.00 |
| 7006 | FORKLIFT RENTAL | 15 | 43,825 | 43,825.00 | (43,810) | 0 | 0.00 |
| 7007 | SCISSOR LIFT RENTAL | 25,000 | 63,260 | 63,260.00 | (38,260) | 0 | 0.00 |
| 7009 | Scaffold Rent | 197,669 | 10,000 | 10,000.00 | 187,669 | 0 | 0.00 |
| 7011 | TAPING TOOL RENTAL | 92 | 20,341 | 20,341.40 | (20,249) | 0 | 0.00 |
| 7020 | EQUIPMENT REPAIR | 90 | 0 | 0.00 | 90 | 0 | 0.00 |
| 7xxx | Bucket Total | 222,866 | 144,500 | 144,500.43 | 78,366 | 0 | 0.00 |
| 8000 | OTHER COSTS | (300) | 1,752 | 1,751.59 | (2,052) | 0 | 0.00 |
| 8001 | TRUCK/ACCESSORIES/MAI | 0 | 22,040 | 22,040.00 | (22,040) | 0 | 0.00 |

7074-74W40-010

CCH Report from 0xxx to 9xxx by SysCode for Job: 7074 and Branch: 010576

| Sys Code | Description | JTD Est | JTD Prj | JTD | EST vs ACT | PRJ vs ACT | MTD |
|---|---|---|---|---|---|---|---|
| xxxx | Grand Total | 2,530,683 | 11,649,000 | 11,566,385 | (9,035,702) | 82,615 | 21,011 |
| + 8002 | ENGINEERING (STRUCTUR | 0 | 8,164 | 8,163.88 | (8,164) | 0 | 0.00 |
| + 8004 | SMALL TOOLS | 0 | 44 | 43.70 | (44) | 0 | 0.00 |
| + 8007 | PROJECT MANAGEMENT | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| + 8008 | Telephone | 0 | 10,229 | 10,229.34 | (10,229) | 0 | 0.00 |
| + 8009 | DRUG TESTING | 0 | 512 | 512.00 | (512) | 0 | 0.00 |
| + 8010 | T & E | 0 | 219 | 218.80 | (219) | 0 | 0.00 |
| + 8017 | Mail/Fed Ex | 0 | 74 | 74.00 | (74) | 0 | 0.00 |
| + 8018 | DRINKING WATER | 0 | 6,837 | 6,836.52 | (6,837) | 0 | 0.00 |
| + 8022 | Clean Up | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| + 8024 | CITATIONS/FINES | 0 | 2,161 | 2,161.08 | (2,161) | 0 | 0.00 |
| + 8050 | CONSUMABLES | 0 | 40,564 | 40,563.75 | (40,564) | 0 | 0.00 |
| + 8070 | OFFICE TRAILER | 9,000 | 256,000 | 256,000.00 | (247,000) | 0 | 0.00 |
| + 8072 | TRAILER UTILITIES | 0 | 13,609 | 13,609.38 | (13,609) | 0 | 0.00 |
| + 8073 | Office Supplies | 10,000 | 10,230 | 10,230.45 | (230) | 0 | 0.00 |
| + 8090 | EQUIPMENT RENTAL | 0 | 5,411 | 5,410.64 | (5,411) | 0 | 0.00 |
| + 8095 | BLUEPRINTS | 0 | 13,521 | 13,520.91 | (13,521) | 0 | 0.00 |
| + 8097 | PROJECT ENGINEER | 0 | 785,474 | 785,474.18 | (785,474) | 0 | 0.00 |
| + 8099 | DUMP BINS | 35,000 | 3,023 | 3,022.87 | 31,977 | 0 | 0.00 |
| + 8197 | COMPUTER EQUIPMENT | 0 | 121 | 121.23 | (121) | 0 | 0.00 |
| + 8199 | CLAIM PREPARATION | 0 | 9,583 | 9,582.61 | (9,583) | 0 | 0.00 |
| + 8200 | PARKING | 0 | 43 | 43.00 | (43) | 0 | 0.00 |
| + 8250 | OFFICE SUPPLIES | 0 | 4,497 | 4,496.65 | (4,497) | 0 | 0.00 |
| + 8273 | TRAVEL EXP | 0 | 28,749 | 28,749.21 | (28,749) | 0 | 0.00 |
| + 8712 | SUBSISTENCE PROJ ENGI | 0 | 1,784 | 1,783.53 | (1,784) | 0 | 0.00 |
| 8804 | OFFICE SUPPLIES | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 8900 | X | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| + 8999 | LEGAL BILLS/Claim Prep | 0 | 1,274,966 | 1,244,648.53 | (1,244,649) | 30,317 | 21,011.45 |
| + 8xxx | Bucket Total | 53,700 | 2,499,607 | 2,469,287.85 | (2,415,588) | 30,319 | 21,011.45 |
| + 9000 | SUB CONTRACTS | 0 | 2,120 | 2,120.00 | (2,120) | 0 | 0.00 |
| + 9001 | electrical | 0 | 3,268 | 3,267.66 | (3,268) | 0 | 0.00 |
| + 9006 | Scaffolding | 8,000 | 41,179 | 41,178.68 | (33,179) | 0 | 0.00 |
| + 9012 | PLASTERING | 28,000 | 0 | 0.00 | 28,000 | 0 | 0.00 |
| + 9035 | ENGINEERING | 85,859 | 96,952 | 96,952.43 | (11,093) | 0 | 0.00 |
| + 9xxx | Bucket Total | 121,859 | 143,519 | 143,518.77 | (21,660) | 0 | 0.00 |

7074- DRYWALL

CCH Report from  0xxx to 9xxx by SysCode for Job: 7081 and Branch: 010576

| Sys Code | Description | JTD Est | JTD Prj | JTD | EST vs ACT | PRJ vs ACT | MTD |
|---|---|---|---|---|---|---|---|
| xxxx | Grand Total | 1,322,568 | 1,599,740 | 1,599,704 | (277,136) | 6 | 0 |
| + D000 | DAYS | 1,462 | 1,360 | 1,360.13 | 102 | 0 | 0.00 |
| Lxxx | Labor Total | 631,179 | 652,112 | 652,110 | (20,931) | 2 | 0 |
| 3000 | Contract Contingency | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 3001 | Other Contingency | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 3999 | PENDING CHG ORDER CO. | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 3xxx | Bucket Total | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 4000 | MATERIAL-OTHER | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| + 4100 | WIRES | 0 | 165 | 165.42 | (165) | 0 | 0.00 |
| + 4160 | FRP | 0 | 1,355 | 1,355.00 | (1,355) | 0 | 0.00 |
| + 4310 | LT GAUGE FRAMING | 0 | 59,244 | 59,243.72 | (59,244) | 0 | 0.00 |
| + 4325 | FASTENERS | 0 | 3,148 | 3,148.13 | (3,148) | 0 | 0.00 |
| + 4345 | FINISH COMPOUND | 0 | 233 | 232.50 | (233) | 1 | 0.00 |
| + 4410 | LATH & TRIMS | 0 | 1,531 | 1,530.50 | (1,531) | 1 | 0.00 |
| + 4490 | Misc. Plaster | 0 | 1,325 | 1,325.00 | (1,325) | 0 | 0.00 |
| + 4905 | MISC | 378,595 | 577,578 | 577,577.59 | (198,983) | 0 | 0.00 |
| 4910 | ETERNIT PANELS | 58,460 | 0 | 0.00 | 58,460 | 0 | 0.00 |
| 4915 | POP RIVETS | 13,031 | 0 | 0.00 | 13,031 | 0 | 0.00 |
| 4920 | HILTI KWIK BOLTS | 26,306 | 0 | 0.00 | 26,306 | 0 | 0.00 |
| 4925 | NEOPRENE FOAM TAPS | 5,845 | 0 | 0.00 | 5,845 | 0 | 0.00 |
| + 4xxx | Bucket Total | 482,237 | 644,579 | 644,577.86 | (162,341) | 1 | 0.00 |
| + 5000 | FREIGHT | 0 | 170 | 170.31 | (170) | 0 | 0.00 |
| + 5001 | FREIGHT BILLS | 0 | 67,408 | 67,408.04 | (67,408) | 0 | 0.00 |
| + 5xxx | Bucket Total | 0 | 67,578 | 67,578.35 | (67,578) | 0 | 0.00 |
| 6000 | Taxes | 44,013 | 0 | 0.00 | 44,013 | 0 | 0.00 |
| + 6700 | Tax Accrual | 425 | 54,789 | 54,789.13 | (54,364) | 0 | 0.00 |
| + 6xxx | Bucket Total | 44,438 | 54,789 | 54,789.13 | (10,351) | 0 | 0.00 |
| 7000 | EQUIPMENT | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 7002 | TOOLS | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 7004 | GASOLINE / LPG | 1,750 | 0 | 0.00 | 1,750 | 0 | 0.00 |
| + 7007 | SCISSOR LIFT RENTAL | 18,000 | 12,516 | 12,515.72 | 5,484 | 0 | 0.00 |
| 7008 | Boom Lift Rent | 17,500 | 0 | 0.00 | 17,500 | 0 | 0.00 |
| 7009 | Scaffold Rent | 108,464 | 0 | 0.00 | 108,464 | 0 | 0.00 |
| + 7xxx | Bucket Total | 145,714 | 12,516 | 12,515.72 | 133,198 | 0 | 0.00 |
| 8000 | OTHER COSTS | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| + 8001 | TRUCK/ACCESSORIES/MA | 0 | 1,365 | 1,365.00 | (1,365) | 0 | 0.00 |
| + 8002 | ENGINEERING (STRUCTUR | 0 | 22,564 | 22,564.05 | (22,564) | 0 | 0.00 |
| + 8004 | SMALL TOOLS | 6,000 | 852 | 851.69 | 5,148 | 0 | 0.00 |
| + 8050 | CONSUMABLES | 0 | 8,224 | 8,223.98 | (8,224) | 0 | 0.00 |
| 8099 | DUMP BINS | 13,000 | 0 | 0.00 | 13,000 | 0 | 0.00 |
| + 8273 | TRAVEL EXP | 0 | 436 | 436.40 | (436) | 0 | 0.00 |
| + 8890 | OTHER | 0 | 2,623 | 2,622.82 | (2,623) | 0 | 0.00 |
| + 8xxx | Bucket Total | 19,000 | 36,064 | 36,063.94 | (17,064) | 0 | 0.00 |
| 9000 | SUB CONTRACTS | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| + 9006 | Scaffolding | 0 | 132,072 | 132,072.00 | (132,072) | 0 | 0.00 |
| + 9xxx | Bucket Total | 0 | 132,072 | 132,072.00 | (132,072) | 0 | 0.00 |

7081- CEMENT PANELS

CCH Report from 0xxx to 9xxx by SysCode for Job: 9850 and Branch: 010555

| Sys Code | Description | JTD Est | JTD Prj | JTD | EST vs ACT | PRJ vs ACT | MTD |
|---|---|---|---|---|---|---|---|
| xxxx | Grand Total | 2,859,348 | 2,670,462 | 2,670,456 | 188,892 | 6 | 0 |
| + D000 | DAYS | 1,277 | 2,236 | 2,235.63 | (959) | | 0.00 |
| Lxxx | Labor Total | 564,545 | 1,036,641 | 1,036,640 | (472,095) | 1 | 0 |
| 3000 | Contract Contingency | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 3001 | Other Contingency | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 3999 | PENDING CHG ORDER CO | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 3xxx | Bucket Total | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| 4000 | MATERIAL-OTHER | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| + 4001 | A/C WIRES | 25,317 | 0 | 0.00 | 25,317 | 0 | 0.00 |
| + 4012 | FASTENERS | 1,488 | 3,515 | 3,515.00 | (2,027) | 0 | 0.00 |
| + 4100 | WIRES | 750 | 33,402 | 33,401.94 | (32,652) | 0 | 0.00 |
| 4105 | SEISMIC SPLAYS | 14,978 | 0 | 0.00 | 14,978 | 0 | 0.00 |
| + 4110 | GRID CROSS TEES ETC | 2,437 | 133,138 | 133,137.92 | (130,701) | 0 | 0.00 |
| + 4120 | CEILING TILE | 5,297 | 249,235 | 249,235.14 | (243,938) | 0 | 0.00 |
| + 4140 | METAL PANS | 0 | 348 | 348.00 | (348) | 0 | 0.00 |
| + 4150 | SPECIAL CEILINGS | 1,566,081 | 835,746 | 835,746.30 | 730,335 | 0 | 0.00 |
| + 4160 | FRP | 0 | 16,057 | 16,057.96 | (16,057) | 0 | 0.00 |
| + 4190 | MISC. CEILINGS | 0 | 8,470 | 8,469.90 | (8,470) | 0 | 0.00 |
| + 4302 | GRID | 120,819 | 953 | 952.97 | 119,866 | 0 | 0.00 |
| + 4310 | LT GAUGE FRAMING | 0 | 1,483 | 1,482.59 | (1,483) | 0 | 0.00 |
| + 4325 | FASTENERS | 0 | 6,199 | 6,198.87 | (6,199) | 0 | 0.00 |
| 4351 | Gasketing | 9,252 | 0 | 0.00 | 9,252 | 0 | 0.00 |
| + 4470 | FIREPROOFING | 0 | 538 | 538.08 | (538) | 0 | 0.00 |
| + 4499 | MISCELLANEOUS | 8,109 | 1,938 | 1,937.60 | 6,171 | 0 | 0.00 |
| 4501 | BOARD | 171,174 | 0 | 0.00 | 171,174 | 0 | 0.00 |
| 4xxx | Bucket Total | 1,925,702 | 1,291,022 | 1,291,021.77 | 634,680 | 0 | 0.00 |
| + 5000 | FREIGHT | 94 | 218 | 218.25 | (124) | 0 | 0.00 |
| + 5001 | FREIGHT BILLS | 8,420 | 2,345 | 2,344.83 | 6,075 | 0 | 0.00 |
| + 5003 | VENDOR STOCKING | 0 | 25 | 25.00 | (25) | 0 | 0.00 |
| 5xxx | Bucket Total | 8,514 | 2,588 | 2,588.08 | 5,926 | 0 | 0.00 |
| 6000 | Taxes | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| + 6021 | BOND COSTS | 34,325 | 12,851 | 12,851.00 | 21,474 | 0 | 0.00 |
| + 6700 | Tax Accrual | 294,262 | 109,737 | 109,736.85 | 184,525 | 0 | 0.00 |
| 6xxx | Bucket Total | 328,587 | 122,588 | 122,587.85 | 205,999 | 0 | 0.00 |
| 7000 | EQUIPMENT | 0 | 0 | 0.00 | 0 | 0 | 0.00 |
| + 7007 | SCISSOR LIFT RENTAL | 0 | 696 | 696.12 | (696) | 0 | 0.00 |
| 7xxx | Bucket Total | 0 | 696 | 696.12 | (696) | 0 | 0.00 |
| + 8000 | OTHER COSTS | 0 | 325 | 324.75 | (325) | 0 | 0.00 |
| + 8001 | TRUCK/ACCESSORIES/MA | 0 | 4,470 | 4,470.00 | (4,470) | 0 | 0.00 |
| + 8002 | ENGINEERING (STRUCTUR | 0 | 7,116 | 7,115.95 | (7,116) | 0 | 0.00 |
| 8007 | PROJECT MANAGEMENT | 32,000 | 0 | 0.00 | 32,000 | 0 | 0.00 |
| + 8050 | CONSUMABLES | 0 | 3,579 | 3,578.76 | (3,579) | 0 | 0.00 |
| + 8075 | MATERIAL TRAILERS | 0 | 61 | 60.87 | (61) | 0 | 0.00 |
| + 8095 | BLUEPRINTS | 0 | 3,785 | 3,784.53 | (3,785) | 0 | 0.00 |
| + 8097 | PROJECT ENGINEER | 0 | 19,028 | 19,028.00 | (19,028) | 0 | 0.00 |
| + 8108 | SUPERINTENDENT | 0 | 51,959 | 51,958.50 | (51,959) | 1 | 0.00 |
| + 8273 | TRAVEL EXP | 0 | 7,190 | 7,190.03 | (7,190) | 0 | 0.00 |
| 8xxx | Bucket Total | 32,000 | 97,513 | 97,511.39 | (65,511) | 2 | 0.00 |
| + 9000 | SUB CONTRACTS | 0 | 17,500 | 17,500.00 | (17,500) | 0 | 0.00 |
| + 9006 | Scaffolding | 0 | 101,914 | 101,913.95 | (101,914) | 0 | 0.00 |
| 9xxx | Bucket Total | 0 | 119,414 | 119,413.95 | (119,414) | 0 | 0.00 |

9850- ACOUSTICAL

# EXHIBIT K



*Building Excellence for Over 80 Years!*

*Michael T. Ambroso*
*Assistant General Counsel &*
*Assistant Secretary*

December 18, 2007

<u>VIA FACSIMILE #415-362-7332</u>
<u>and First Class Mail</u>
Steven L. Iriki, Esq.
Otis, Canli & Iriki, LLP
625 Market Street – 4th Floor
San Francisco, CA  94105-3306

RE:    San Francisco Federal Building
       Performance Contracting, Inc.

Dear Mr. Iriki:

On November 30, 2007, Dick/Morganti ("D/M") submitted its Claim for Equitable Adjustment on this Project to the GSA. Prior to submitting that claim document, Joel Heusinger (D/M's attorney) contacted you and requested that, once PCI received a copy of D/M's soon to be submitted claim, PCI review it and seriously consider revising PCI's claim for additional compensation which was sent by PCI to D/M in late June 2007. In his conversation with you, Mr. Heusinger explained that D/M's November 30, 2007 claim submission would set forth the claim entitlements of D/M and its subcontractors against the GSA and that PCI would be well served to review the entitlement events set forth in D/M's November 30, 2007 claim document and identify any of its damages caused by these events.

To date, PCI has provided nothing to D/M indicating what amount of damages PCI incurred as a result of the GSA actions identified by D/M in its November 30, 2007 claim document. D/M strongly believes that most, if not all, of the delays, productivity losses and added costs identified in PCI's June 2007 claim document are the result of the GSA's actions and decisions identified in D/M's November 30, 2007 claim. Specifically, D/M believes that the work of PCI and the other subcontractors on the Project was delayed and impacted by the rebar congestion and concrete finish problems experienced early in the Project. Additionally, as explained in D/M's November 30, 2007 claim, PCI's work on the Project was directly impacted by the added work and design problems associated with the F-L Lines Support Steel for Flat Lock Panels, the Window Wall/Concrete Camber design problem, and the GSA directed Tenant Improvements (IB Nos. 52, 53, 56 and 61). Just as importantly, the work of PCI and the other subcontractors was delayed and impacted by the cumulative impact of the GSA's design deficiencies and added/changed work on this Project. As explained in detail in its November 30, 2007 claim document, D/M believes that all of these significant problems described above are the responsibility of the GSA on this Project. D/M's November 30th claim document also contains a comprehensive schedule analysis concluding that, because of the GSA caused problems on the Project, D/M is entitled to a compensable time extension of 406 calendar days on the Project.

Dick Corporation
Contractors, Construction Managers & Design Builders
P.O. Box 10896    Pittsburgh, PA 15236-0896    412-384-1287
mtambroso@dickcorp.com



Steven L. Iriki, Esq.
Otis, Canli & Iriki, LLP
December 18, 2007
Page 2

If verified, most, if not all, of the delays and productivity impacts identified by PCI in its June
2007 claim document appear to be the result of the GSA's actions and decisions identified in
D/M's November 30, 2007 claim. As part of D/M's contract responsibilities, it must certify any
claim it submits to the GSA on this Project. Therefore, PCI's claim must be certified before
being submitted to the GSA. Before PCI's claim can be certified, the damages identified by PCI
must be segregated into those caused by the GSA, as opposed to those possibly caused by others.
D/M must, therefore, insist that PCI review its damages set forth in the June 2007 claim
document, and designate those damages and additional costs caused by the GSA's actions on the
Project. Without PCI's damages allocations being done, D/M cannot certify PCI's claim and
submit it to the GSA.

In order to assist PCI in this effort, D/M is willing to have its personnel and claim experts meet
with PCI to discuss D/M's November 30, 2007 claim document and the analysis supporting it.
Please contact me to arrange for such a meeting. If no meeting is desired by PCI, please submit
PCI's damages allocation to me as soon as possible.

Sincerely,

DICK CORPORATION

Michael T. Ambroso

enclosure
cc:     Joel Heusinger, Esq. (via fax #402- 437-8558)
        Woods & Aitken, LLP
        Cornhusker Plaza
        301 South 13th Street - Suite 500
        Lincoln, NE 68508-2578
        Ray Buddie, Esq. (via fax #415- 837-1320)
        Peckar & Abramson, P.C.
        455 Market Street - 21st Floor
        San Francisco, CA 94105

# EXHIBIT L

**THIRTY-EIGHTH.**    Choice of Law and Disputes.

(a) The performance of this Subcontract and all of its terms and conditions, as well as any arbitration or judicial proceeding, shall be interpreted and governed by the laws of the State of California.

(b) Subcontractor agrees that any dispute of any kind, nature or description or any controversy or claim arising out of or relating to this Subcontract or the breach thereof may, at the mutual agreed upon election of the parties, be settled by non-binding mediation or by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. In any such arbitration, full discovery will be allowed as described in the Federal Rules of Civil Procedure, and any remedy or relief granted by the arbitrator(s) shall be in accordance with the terms of this Subcontract as interpreted under and governed by the laws of the jurisdiction identified in paragraph (a), above. In any such arbitration, the arbitrator(s) shall not be empowered or authorized to add to, subtract from, delete or in any other way modify the terms of this subcontract. If arbitration is so elected by the Contractor, then judgment upon the award rendered by the arbitrator(s) may be entered in any Court having jurisdiction thereof. If the Contractor elects to proceed by arbitration, the venue of such proceeding shall be the project area.

Case 3:07-cv-02564-CRB    Document 56    Filed 10/05/2007    Page 27 of 56

(c) Contractor shall have the right to elect to proceed to non-binding mediation or binding arbitration, as described in paragraph (b) above, at any time prior to the commencement of a judicial proceeding by the Contractor, or in the event a judicial proceeding is instituted by the Subcontractor, at any time prior to the last day to answer and/or appear to a Summons and/or Complaint of the Subcontractor.

(d) If the Owner and the Contractor, pursuant to the General Contract or by agreement, submit any dispute, controversy, or claim between them to arbitration or some other disputes resolution procedure specified in the General Contract and such a matter involves or relates to a dispute, controversy, or claim between the Contractor and the Subcontractor, Subcontractor agrees (i) to join in and be bound by the same arbitration or other disputes resolution procedure upon written request by the Contractor and (ii) to stay any action filed by the Subcontractor until the dispute resolution and appeals process between the Contractor and the Owner is exhausted. If the Owner refuses to allow this joinder of the Subcontractor, Subcontractor agrees (i) to cooperate with the Contractor, (ii) to assist in the discovery and other preparations for the hearing, (iii) to make available its employees for testimony before or at the hearing, (iv) to share proportionately the costs and legal fees associated with the preparation for and execution of the hearing, (v) to stay any action filed by the Subcontractor until the dispute resolution and appeals process between the Contractor and the Owner is exhausted, and (vi) to be bound by the results of the arbitration or other disputes resolution procedure as it relates to the dispute, controversy, or claim of the subcontractor.

(e) To the extent that any dispute, controversy, or claim arises hereunder and a suit is instituted, it shall be brought in and before the State or Federal Court of the project location wherein exclusive jurisdiction shall lie. Notwithstanding the above, if the Owner is joined by the Contractor in any such suit, Subcontractor hereby stipulates that it shall agree to move the suit to the venue of the project site and/or to the disputes resolution forum specified in the General Contract upon the request or motion of the Contractor.

(f) Subcontractor shall insert a provision identical to this Article Thirty-Eighth into all of its sub-subcontracts for the project. Nothing in this section shall be deemed to waive, alter or modify any condition precedent to suit contained in any other provision of the Subcontract or to give the sub-subcontractors any contractual privity with or rights against the Contractor.

(g) No action or proceeding shall lie or shall be maintained by Subcontractor against the Contractor unless such action shall be commenced within one (1) year after the date payment is mailed or otherwise made in respect of the Final Application for Payment or, if this Subcontractor or performance under this Subcontract is terminated by the Contractor, unless such action or proceeding is commenced within one (1) year after the date of such termination.

**THIRTY-NINTH.**    Headings.

The headings inserted in this Subcontract Agreement are for convenience only and shall in no way affect the interpretation of this Agreement.

**FORTIETH.**    Owner Approval, Succession of Interests and Modification.

It is understood and agreed that the Owner has the right to approve or disapprove the employment of this Subcontractor and in the event that the Owner does not execute the General Contract with the Contractor or does not approve this Subcontract, this Subcontract shall become null and void. This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors, and permitted assigns of the parties hereto, but no third party benefits are created by this Subcontract and no modification of this Agreement shall be binding upon the Contractor unless such modification is in writing and signed by the Contractor.

**FORTY-FIRST.** California License

California law requires that contractors and Subcontractors be licensed and regulated by the

FOR THE PROJECT KNOWN AS:

GSA Federal Building, San Francisco
Subcontract Number 21058-118
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00049
COST CODE:    092500