JOHN W. RALLS (CA Bar No. 148233)
jralls@thelen.com
JOHN A. FOUST (CA Bar No. 218824)
jfoust@thelen.com
JOANNA ROSEN (CA Bar No. 244943)
jrosen@thelen.com
THELEN REID BROWN RAYSMAN & STEINER LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
Tel. 415.371.1200 // Fax 415.371.1211

PATRICK S. HALLINAN (CA Bar No. 33838)
butchhallinan@hotmail.com
KENNETH H. WINE (CA Bar No. 142385)
kenwine@hotmail.com
HALLINAN & WINE
Law Chambers Building, 345 Franklin Street
San Francisco, CA 94102
Tel. 415.621.2400 // Fax 415.575.9930

Attorneys for Defendants, Counter-Claimants and Third Party Complainants
DICK/MORGANTI, DICK CORPORATION, THE MORGANTI GROUP,
AMERICAN CASUALTY COMPANY OF READING, PA and
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA for the Use and Benefit of WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS, and WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS, <br><br> Plaintiffs, <br> vs. <br><br> DICK/MORGANTI, a joint venture, DICK CORPORATION, THE MORGANTI GROUP, AMERICAN CASUALTY COMPANY OF READING, PA, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 10, inclusive, <br><br> Defendants. <br><br> AND RELATED COUNTER-CLAIMS AND THIRD PARTY CLAIMS. | Case No.: 3:07-CV-02564-CRB <br><br> **MEMORANDUM IN OPPOSITION TO WEBCOR'S MOTION TO LIFT STAY** <br><br> Date: August 29, 2008 <br> Time: 10:00 a.m. <br> Place: Courtroom 8 <br><br> Before: Hon. Charles R. Breyer |

Defendants Dick/Morganti ("D/M"), its partners, and its sureties, respectfully submit this memorandum in opposition to Webcor's Motion to Lift Stay.

While the attorneys differ on several facts, and while communications need to be improved, the key facts are undisputed and compel the denial of Webcor's motion. Not only is D/M aggressively pursuing all of the claims arising out of the San Francisco Federal Building ("Project"), including Webcor's claims, but Webcor's claims are, at Webcor's request, now the subject of a separate appeal before the Civilian Board of Contract Appeals ("CBCA"). Moreover, in the last 60 days, D/M has intensified its effort to prosecute the claims, by hiring additional attorneys located in Washington, D.C. who specialize in practice before the CBCA, and by pressing the CBCA for a scheduling conference on the global/omnibus claim, even while the Contracting Officer has yet to issue a final decision on that claim.

By virtue of Article 38 of the parties' subcontract agreement (*see* Ex. A to Ambroso Declaration), and in light of the fact that Webcor's claims are the subject of appeals pending before the CBCA (*see* Ex. C to Werther Declaration), Webcor's CORs 60, 61 and 62 must continue to be stayed.

I.   **D/M Is Aggressively Pursuing Project Claims, Including Webcor's Claims**

This case arises out of the construction of the San Francisco Federal Building, a complicated project built by D/M and its subcontractors that has given rise to a number of claims.

In October 2007, this Court ordered that Webcor's lawsuit be stayed to the extent that D/M was pursuing Webcor's claims against the General Services Administration on a "pass-through" basis and was doing so with diligence. (*See* Docket Nos. 61 and 62.) In subsequent proceedings, the stay was lifted for Webcor's Change Order Requests ("CORs") 63, 64 and 65 because D/M determined that it could not properly pass through those claims to the GSA. The stay was affirmed with respect to CORs 60, 61 and 62 because D/M had certified and presented those claims to the GSA. The issue expressly raised by Webcor's Motion to Lift Stay is whether D/M has failed to exercise diligence in the prosecution of Webcor's claims.

As shown by the accompanying declarations of Barbara Werther (new lead counsel for D/M before the GSA), Joel Heusinger (D/M's longtime outside counsel in this matter) and Mike

1  Ambroso (Assistant General Counsel for Dick Corporation), D/M has in fact been doing, and
2  continues to do, everything in its power to move all of the claims arising out of the Project,
3  including those of Webcor, toward resolution.

### A. D/M Has Submitted Claims and an Appeal on Behalf of Webcor

The first step in the claims process is the certification and presentation of a claim to the Contracting Officer with a request that the Contracting Officer issue a final decision. D/M has done that with regard to the three Webcor claims at issue, CORs 60, 61 and 62. (Heusinger Decl. ¶ 3; Ambroso Decl. ¶ 6.a.) D/M also included the damages claimed by Webcor in D/M's global/omnibus damages claim submitted to the Contracting Officer in April 2008. (Ambroso Decl., Ex. B.) Unfortunately, the Contracting Officer has yet to issue her final decisions on any of these claims. (Ambroso Decl. ¶ 6.b.)

The second step in the claims process is to appeal to the appropriate federal board of contract appeals (or to the United States Court of Federal Claims) a denial by the Contracting Officer. If the Contracting Officer does not render a decision on the claim within 60 days, or such longer period of time as is "reasonable," then the claims may be appealed on the theory of a "deemed denial" of the claim by the Contracting Officer. *See* 41 U.S.C. § 605(c)(7). However, if this approach is taken, the Board has the option to stay the claim, to allow the Contracting Officer additional time to render a final decision. *Id*. § 605(c)(5). As discussed below, D/M did not believe that filing a separate Webcor appeal—before the Contracting Officer's final decision— would expedite resolution. But, in view of Webcor's concerns, D/M has now agreed to take this approach, and Webcor's CORs 60, 61 and 62 are the subject of a separate appeal to the CBCA. (Werther Decl., Ex. C.) D/M has not even take this step for its own portion of the global/omnibus claim.

Webcor complains that D/M did not file an appeal sooner, on a deemed denial basis, and asserts that D/M's counsel promised to do so if the Contracting Officer had not made a final decision by April 2008. There is no merit to this point. First, there is a disagreement about whether D/M agreed to file a separate appeal of D/M's claim. Webcor's counsel has sworn that he recalls D/M made this commitment. D/M's counsel swears the opposite. (Heusinger Decl.

¶¶ 3-4.) Putting aside this unfortunate factual dispute, the question is whether D/M's decision not to appeal separately in April 2008—on a "deemed denial" basis—is an example of a failure to prosecute the claims with diligence. It is not.

As D/M's counsel know from experience, most appeals end up being consolidated when they arise from a single project (just as the first five appeals arising out of this Project have already been consolidated). D/M saw no scheduling advantage to filing a separate Webcor appeal because it anticipated that all of the claims would be have to be appealed and consolidated before a serious discussion of scheduling trial dates and other key deadlines would be conducted. (Heusinger Decl. ¶ 5; Ambroso Decl. ¶ 8; *see also* Werther Decl. ¶ 13.)

Rather that file a large number of separate appeals, D/M's approach has been to focus on finalizing and submitting a "global/omnibus" claim to include the claims of D/M, Webcor and the other subcontractors. An impediment to putting together that global/omnibus claim has been the failure of a number of subcontractors (not including Webcor) to quantify and certify their damages. The lack of quantified and certified damages information has been a serious problem (one that continues to this day) because unless or until D/M has claims in exact dollar amounts, and that have been properly certified (and that D/M is able to satisfy itself are properly certified), D/M cannot submit those claims to the Contracting Officer, which is a prerequisite to the filing of appeals with the Board. (Heusinger Decl. ¶¶ 10-12; *see also Metric Constr. Co., v. U.S.*, 14 Cl. Ct. 177, 179 (1988).)

In April 2008, D/M submitted to the GSA Contracting Officer the quantum portion of its global/omnibus claim, which included all of the damages information D/M was itself able to certify to the GSA, and which included Webcor's damages. (Ambroso Decl., Ex. B.) Although D/M would have preferred to submit its global/omnibus damages statement with the claims of all subcontractors quantified and certified, it did not have the necessary information to do so by April 2008, and so in the interest of expediting resolution, it submitted all of the properly certified damages information it had at the time. (Ambroso Decl. ¶ 6.b.)

In terms of making the necessary submissions to the Contracting Officer and CBCA with respect to Webcor's claim, D/M has done everything possible.

**B.    D/M Has Taken Other, Proactive Steps to Move the Claims Forward**

D/M has not been satisfied with merely making claims submissions and filing appeals. D/M has taken a number of other steps in an effort to push forward for resolution.

**1.    Meetings with, Prompting of, GSA.**  D/M has repeatedly met with the GSA and encouraged the GSA to make prompt decisions on the claims.  (Ambroso Decl. ¶ 6.f.)

**2.    Push to Complete Audits.**  D/M has pushed the GSA to complete its audits of D/M and the subcontractors with claims, including Webcor.  D/M knows from experience that the completion of these audits is essential before the GSA will engage in any serious negotiations. (Ambroso Decl. ¶ 6.e.)

**3.    Prompt Completion of Other Subcontractor Claims.**  As noted above, the April 2008 damages claim had several "blanks" for damages information yet to be provided by D/M's subcontractors.  Throughout 2008, D/M repeatedly held telephone conferences and meetings with its subcontractors, imploring them to submit and certify quantified claims, essential so that the global/omnibus claim can be completed.  (Ambroso Decl. ¶6.c; Heusinger Decl. ¶¶ 10-11.)  While Webcor's claim is already "in," by working to complete the global/omnibus claim, D/M is working to expedite everyone's claims because all of the claims are likely to be consolidated.  (*See* Werther Decl. ¶ 13.)

**4.    Advance Scheduling of Status Conference.**  There are five other, smaller appeals already pending before the CBCA concerning claims arising out of the Project.  These claims have been consolidated, and are before Administrative Judge Borwick.  A status conference was held July 22, 2008, to address these claims.  D/M's counsel used that status conference as an opportunity to make progress in the scheduling of the anticipated appeal arising out of the "global/omnibus" claim.  At that conference, D/M's counsel raised the issue of scheduling the forthcoming appeal of the global claim.  Over the GSA's objections, D/M was successful in getting the CBCA to issue a date certain—January 12, 2009—on which a scheduling conference for all of the claims arising out of the Project would be conducted.  (Heusinger Decl. ¶¶ 14-15 & Ex. A.)

////

     **5.**     **Favorable Ruling on Interest.**  In addition, at the July 22 status conference before the CBCA, D/M raised the issue of interest, an issue of concern to Webcor and others. Contrary to the suggestion by the GSA's counsel that interest should not run until all of the claims were submitted, Judge Borwick ruled that interest would run from the date the omnibus claim was submitted.  (Heusinger Decl. ¶ 16.)

     **6.**     **Requested Status Conference on Webcor's Claim.**  Specifically with regard to Webcor's claim, D/M recently offered to approach the Board and seek a scheduling conference.  Webcor agreed with this suggestion, and this, too, has been done.  (Werther Decl., Exs. B, C; Heusinger Decl. ¶ 7; Ambroso Decl. ¶ 7.)

     **7.**     **Retention of Additional Counsel, GSA Claim Specialists.**  D/M has also added to its legal team attorneys from the Washington D.C. office of Thelen Reid Brown Raysman and Steiner LLP, who specialize in prosecuting construction claims against the federal government.  These attorneys bring not only additional resources, but also relationships with the GSA attorneys who handle claims of this nature.  These attorneys have already been in contact with their counterparts at the GSA to develop a schedule that will avoid delays and get the entire matter moving toward resolution.  (Werther Decl. ¶¶ 8-10, 13; *see also* Ambroso Decl. ¶¶ 6.d.)

In sum, D/M (which is out millions of dollars more than any other subcontractor—see Ambroso Decl. ¶ 6) is doing everything in its power to expedite resolution of the claims on behalf of itself and its subcontractors.  The frustration on Webcor's part is understandable as a business matter, but the claims arising out of the Project are moving along as quickly as possible given their size and complexity.  (*See* Werther Decl. ¶ 13.)  There is no merit to the contention that D/M has failed to prosecute Webcor's claim with diligence, and in these circumstances, Webcor agreed "to stay any action … as long as [its] position is being diligently pursued by Contractor [D/M] in the Owner [GSA] dispute and the Subcontractor's [Webcor's] positions are being carried forward through the Contractor's prosecution of the claims with the Owner…."  (*See* Ex. A to Ambroso Decl., Article 38(d) of the D/M/Webcor subcontract.)

////

////

**II.     Webcor's Motion Must Also Be Denied Because Its Claims Are Before the CBCA**

As set forth above, Webcor's motion should be denied because D/M has pursued, and continues to pursue, Webcor's claims with diligence. Webcor's motion must also be denied because lifting the stay would create the risk of inconsistent results, and because this Court cannot exercise jurisdiction over claims pending before the CBCA.

The provisions contained in Article 38 of the D/M/Webcor subcontract are, for good reason, commonplace. As the Seventh Circuit has explained,

> When a subcontractor incurs an additional expense as a result of a change order issued by the owner, or some other change in circumstances for which the owner is responsible, the Prime Contractor, naturally, does not want to have to reimburse the subcontractor out of its own pocket, but instead wants the owner to bear the expense. To this end, the disputes clause in the contract between [the prime contractor] and [the subcontractor] provided that in the event of a dispute between the parties that are involved the owner, [the subcontractor] would be bound by the determination of responsibility made in accordance with the procedures set forth in the contract between [the contractor] and [the government]. That contract provided for initial determination by a federal contracting officer with a right of appeal to the Board of Contract Appeals or the United States Claims Court [now the United States Court of Federal Claims].

*Moretrench & Corp. v. S.J. Groves & Sons Co.*, 839 F.2d 1284, 1285 (7th Cir. 1988) (Posner, J.)

The purpose of requiring pass-through claims to be handled in accordance with the disputes clause of the prime contract—and not by multiple tribunals—is to avoid inconsistent results. *See Beacon Constr. Co. of Mass v. Prepakt Concrete Co.*, 375 F.2d 977, 982 (1st Cir. 1967) (purpose of such disputes resolution clauses is to eliminate possibility of "contrary findings on the same issue."). For this reason, courts routinely enforce clauses that require claims to be decided pursuant to the disputes procedure set forth in the prime contract. *See Seal & Co. v. A.S. McGaughan Co.*, 907 F.2d 450, 454 (4th Cir. 1990) ("The general rule is that parties are free to contract for dispute resolution procedures which, in effect, turn breach of contract claims into claims for relief under the contract.") (internal citations omitted); *Bethlehem Steel Corp. v. Grace Line, Inc.,* 416 F.2d 1096, 1106-07 (D.C. Cir. 1969) ("[C]laims referable under the disputes clause for administrative adjustment cannot be entertained judicially until the required administrative procedures have been exhausted."); *Beacon Constr.*, 375 F.2d at 981-82 (1st Cir. 1967) (recognizing that a contractor can protect itself from "being found liable both to the government

1  under the disputes clause and to the subcontractor in a legal action" by expressly incorporating the
2  disputes clause into subcontracts).
3       Here, where Webcor's CORs 60, 61 and 62 are now pending before the CBCA, the
4  continued stay is both necessary and appropriate to avoid inconsistent results, and to enforce the
5  parties' bargain with respect to how claims should be handled.
6       Jurisdictional concerns further support the continued stay.  The prime contract "Disputes"
7  clause, Federal Acquisition Regulation 52.233-1, codified at 48 C.F.R. 52.233-1, requires every
8  claim against the government be submitted to the contacting officer for written decision.  Pursuant
9  to the Contract Disputes Act ("CDA"), codified at 41 U.S.C. §§ 601-613, the contracting officer's
10 decision is final unless appealed,
11      The CDA states that a contracting officer's final decision may be challenged in either the
12 United States Court of Federal Claims or a federal board of contract appeals.  41 U.S.C. §§ 606,
13 609(a).  A United States District Court (as an Article III court) does not have jurisdiction to
14 adjudicate claims for money damages against the United States arising out of a construction
15 contract.  Under the CDA, only the boards of contract appeals and the United States Court of
16 Federal Claims (Article I courts) have such jurisdiction.
17      In view of the pending appeal and continued prosecution of Webcor's claims before the
18 CBCA, Webcor's motion to lift stay must be denied.

### Conclusion

20      No one lost more money on this project than Dick/Morganti, and no one is more motivated
21 to get this case moving forward to resolution.  Accordingly, D/M has taken, and is taking, all
22 appropriate steps, and has incurred, and continues to incur, very substantial attorney and
23 consultant fees, to move the case forward.  Under the D/M/Webcor subcontract, claims that are
24 ////
25 ////
26 ////
27 ////
28 ////

1  being passed through to the Government must be stayed pending resolution with the government.

2  For these reasons, D/M respectfully requests that the Court deny Webcor's Motion to Lift Stay.

4  Dated:  August 8, 2008                THELEN REID BROWN RAYSMAN & STEINER LLP

                                          /s/
                                   By _____
                                       John W. Ralls
                                       Attorneys for Defendants, Counter-Claimants and
                                       Third Party Complainants DICK/MORGANTI,
                                       DICK CORPORATION, THE MORGANTI
                                       GROUP, AMERICAN CASUALTY COMPANY OF
                                       READING, PA, and NATIONAL UNION FIRE
                                       INSURANCE COMPANY OF PITTSBURGH, PA