JOHN W. RALLS (CA Bar No. 148233)
jralls@thelen.com
JOHN A. FOUST (CA Bar No. 218824)
jfoust@thelen.com
JOANNA ROSEN (CA Bar No. 244943)
jrosen@thelen.com
THELEN REID BROWN RAYSMAN & STEINER LLP
101 Second Street, Suite 1800
San Francisco, CA  94105
Tel. 415.371.1200 // Fax 415.371.1211

PATRICK S. HALLINAN (CA Bar No. 33838)
butchhallinan@hotmail.com
KENNETH H. WINE (CA Bar No. 142385)
kenwine@hotmail.com
HALLINAN & WINE
Law Chambers Building, 345 Franklin Street
San Francisco, CA 94102
Tel. 415.621.2400 // Fax 415.575.9930

Attorneys for Defendants, Counter-Claimants and Third Party Complainants
DICK/MORGANTI, DICK CORPORATION, THE MORGANTI GROUP,
AMERICAN CASUALTY COMPANY OF READING, PA and
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA for the Use and Benefit of WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS, and WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS,<br><br>Plaintiffs,<br>vs.<br><br>DICK/MORGANTI, a joint venture, DICK CORPORATION, THE MORGANTI GROUP, AMERICAN CASUALTY COMPANY OF READING, PA, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:07-CV-02564-CRB<br><br>**DECLARATION OF MICHAEL T. AMBROSO IN OPPOSITION TO WEBCOR'S MOTION TO LIFT STAY**<br><br>Date:     August 29, 2008<br>Time:    10:00 a.m.<br>Place:    Courtroom 8<br><br>Before:  Hon. Charles R. Breyer |
| AND RELATED COUNTER-CLAIMS AND THIRD PARTY CLAIMS. | |

I, Michael T. Ambroso, declare:

1. I am the Assistant General Counsel and Assistant Secretary for defendant Dick Corporation. Dick Corporation is the managing partner of defendant Dick/Morganti, a Joint Venture formed between Dick Corporation and Morganti Texas, Inc. ("D/M").

2. On behalf of D/M, I have been involved in the San Francisco Federal Building ("Project") since 2003. I have detailed knowledge of the Project and the events that give rise to this action, as well as detailed knowledge of Dick/Morganti's submission of claims to the Project owner, the General Services Administration of the United States government.

3. D/M suffered massive financial losses arising out of the Project, and itself has a claim for over $26,000,000 million against the GSA. D/M's claim is considerably larger than the claims of any of D/M's subcontractors, including Webcor.

4. A true and correct copy of excerpts from the D/M/Webcor subcontract are attached hereto as Exhibit A, including Article 38, by which Webcor agreed "to stay any action filed by [Webcor] as long as the Subcontractor's position is being diligently pursued by Contractor in the Owner dispute and the Subcontractor's positions are being carried forward through the Contractor's prosecution of the claims with the Owner."

5. With respect to the Project, my task is to ensure that the claims arising out of the Project—both D/M's own claims as well as the claims of D/M's subcontractors—are prosecuted not only with diligence, but as quickly and expeditiously as possible, consistent of course with preserving the value of those claims.

6. Even before the Project was completed, I took steps to help achieve this objective, such as retaining (in May 2005) and working with an outside scheduling expert (Project Controls and Forensics), and retaining (in October 2005) and working with an outside forensic accountant (FTI Consulting). In developing and prosecuting these claims to date, D/M has incurred considerable expense in the work of these experts, as well as in outside attorney costs. Recently, I have also taken a number of steps to help achieve this objective, including the following:

////

1    a. D/M has certified and requested a Contracting Officer's Final Decision with respect to Webcor's CORs 60, 61 and 62.

    b. In April 2008, D/M submitted to the GSA Contracting Officer the quantum portion of its global/omnibus claim, which included all of the properly certified damages information D/M had to date and which D/M was itself able to certify to the GSA (including Webcor's damages).  A true and correct copy of portions of this submission (including the cover letter to the Contracting Officer, the claims certification and the damages summary which includes Webcor's damages) are attached as Exhibit B.  The Contracting Officer has not yet issued her final decision on this claim, and D/M has filed no appeal.  Although D/M would have preferred to submit its global/omnibus damages statement with the claims of all subcontractors quantified and certified, it did not have the necessary information to do so by April 2008, and so in the interest of expediting resolution, it submitted all of the damages information it had at the time.

    c. The April 2008 damages statement had several 'blanks' for damages information that has yet to be provided by D/M's subcontractors.  Since that time, D/M has repeatedly had telephone conferences and met with and implored its subcontractors who have yet to submit and certify quantified claims to complete the quantification and certification process so that those elements of the claims can be submitted.  I have specifically tasked Joel Heusinger, of Woods & Aitken, to assist me in these efforts.

    d. In early June 2008, D/M retained additional legal counsel, in particular, attorneys from the Washington, D.C. office of Thelen Reid Brown Raysman & Steiner LLP.  These attorneys will bring additional resources to the effort.  In addition, these attorneys specialize in the prosecution of claims against the GSA and have relationships with the GSA lawyers who defend such claims that I believe will assist in getting around procedural issues and getting to the merits of the disputes.  My instructions to them have been to take all reasonable steps to expedite resolution of the claims of D/M and its subcontractors.

    e. In addition to pressing forward to meet with subcontractors to assist in the quantum submissions, D/M has also requested that GSA audit the claims.  Typically, GSA will have its auditors perform audits on the larger claims, including subcontractor claims, to determine

that the costs have been incurred and that they are allowable and allocable under Section 31 of the Federal Acquisition Regulations ("FAR"). GSA has already audited Webcor's claims which is a necessary step towards resolution. GSA's auditors are planning to commence their audit of D/M's costs on August 18, and D/M has requested that the Contracting Officer commence audits on the other subcontractor claims as well.

       f.       I, along with other D/M personnel, have also had a number of meetings with the Contracting Officer and other GSA personnel to, among other things, encourage the GSA to expeditiously review the claims on this Project. I believe that the GSA's prompt scheduling of audits has been a positive result of these meetings. I have also encouraged the GSA to promptly retain their own scheduling consultant for the claims, if that is their preference on how to review D/M's schedule analysis contained in the claim.

       7.       On August 5, 2008, I attended a meeting in San Francisco with Webcor's attorneys. Both at that meeting, and since, I have authorized our outside counsel to file a separate appeal before the Board on Webcor's behalf and to request a separate status conference before the Board with regard to Webcor's claim (an idea raised by Thelen attorney Ronan McHugh at the meeting).

       8.       Webcor, in its motion, focuses on D/M not acting immediately to file a separate appeal on Webcor's behalf after GSA's proposed date of April 11, 2008 for the Contracting Officer to issue a Final Decision on Webcor's claim. Despite having at least one phone conversation about the Webcor claims with Webcor's in house counsel (John Bowles) significantly after that April date, I never received any communication from Webcor requesting that D/M immediately appeal the Webcor claim to the Board on a deemed denied basis until receipt of Webcor's motion and the August 5, 2008 meeting. In view of the likelihood that the Board would consolidate all of the appeals arising out of the Project, I did not believe that filing a separate appeal of Webcor's claims would expedite resolution.

////

////

////

9. As this matter goes forward, I am open to suggestions from my outside counsel as well as from any of D/M's subcontractors about additional ways to expedite resolution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of August, 2008 at Pittsburgh, Pennsylvania.

_____
Michael T. Ambroso