# Exhibit A

# to

# Declaration of Michael T. Ambroso

# May 5, 2003 Dick/Morganti Webcor Subcontract (Excerpts)

FILE

# SUBCONTRACT AGREEMENT

**THIS AGREEMENT**, made this 5ᵗʰ day of **May, 2003**, by and between **Webcor Construction, Inc. dba Webcor Builders Attention: Ross Edwards Jr., 31145 San Antonio Street Hayward, CA 94544 Phone 510-476-2500 Fax 510-476-3000**, hereinafter called the Subcontractor and **Dick / Morganti, Joint Venture 1068 Mission Street, San Francisco, CA 94103, Attention: Thomas J. DeMarco, Phone: 415-522-1320, Fax: 415-522-1366** hereinafter called the Contractor.

For the consideration hereinafter named, the said Subcontractor covenants and agrees with the said Contractor as follows, to wit:

**FIRST:** This Subcontractor agrees to furnish all the necessary supervision, labor, tools, materials, services, equipment, machinery, consumables, expendables, and other items proper and/or necessary in doing the **Concrete and Formwork**, as further detailed in Sections **03100 and 03300** as qualified in this Agreement and as required for the GSA Federal Building Project, located in San Francisco, CA, being constructed by Dick / Morganti, Joint Venture (Contractor) for GSA - General Services Administration (Owner) pursuant to the terms and conditions of the General Contract between Owner and Contractor and the terms stated herein.

### A. SCOPE OF WORK

It is understood and agreed that this Subcontractor's Scope of Work (hereinafter referred to as Work) includes, but is not limited to the following:

Subcontractor agrees to supply and install all materials as required to provide a complete product as described in the Contract Documents and in accordance with, but not limited by, the following sections of the specifications: **03100 and 03300**.

This Subcontractor agrees to furnish all **Concrete and Formwork** in strict accordance with Specification Sections above and 01110 through 01820, subject to exclusions noted herein *as they apply to Subcontractor's work*

The lump sum amount of this subcontract agreement specifically includes, but is not limited to, the following:

1. It is specifically understood that any and all costs associated with the scope additions/revisions included with the issuance of the Construction Documents, dated 02/14/2003, are included in the lump sum amount of this Subcontract.

2. It is specifically understood that this Subcontractor will be allowed the free straight time use of Contractors' Cranes for hoisting and movement of this Subcontractor's material. The cranes and operators used on this project will be mutually agreeable to Contractor and Subcontractor. The crane will remain for the entire duration of the structural concrete and Subcontractor will have uninterrupted use of the crane for the structural concrete. These cranes will not remain for the entire duration of the project and if this Subcontractor requires the use of Contractor's cranes past its scheduled removal, this Subcontractor will be required to pay all costs of the rental, operation and maintenance. This Subcontractor understands these cranes will be under joint control of Subcontractor and Contractor during the concrete portion of this project as outlined in the Project Schedule, and the use of these cranes must be coordinated with Contractor for its use for other trades. Other trades using these cranes will be required to supply their own rigging. Contractor will provide a personnel hoist, (size not guaranteed), for use of all trades when the structure of the building is past three floors. This Subcontractor may use this equipment, upon 48-hour prior request and approval by Dick/Morganti's superintendent, provided that all loads are within the hoist's capacity for size and weight. The Subcontractor recognizes that the Contractor's hoist is a piece of machinery that is subject to occasional failure and, therefore, the Subcontractor assumes any impacts due to the unscheduled shutdown of the equipment. The Contractor will not acknowledge or accept any claims for stand-by time, productivity loss, etc., due to the equipment failure. The Subcontractor shall pay all costs incurred by the Contractor for operation of the man/material hoist during premium time hours for the Subcontractors sole benefit. The personnel hoist will be installed in two phases. Phase one installation will occur up to the fourth floor, at such time as the structure is ready to accept the hoist. Phase two installation will include the remainder above, at such time, as the structure is ready to accept the hoist. The Subcontractor shall provide all out-of-sequence labor, material and special connections, if any, required remobilizing and completing his work at the one personnel hoist bay when the personnel hoist bay is removed.

3. This Subcontractor is responsible to Furnish and install all **Concrete and Formwork**, except as qualified herein including all necessary labor, materials, tools, equipment, plant supervision, etc. and pay all applicable taxes required. This Subcontractor has included all necessary work based upon the contract documents and scope outlined herein

FOR THE PROJECT KNOWN AS:
GSA Federal Building, San Francisco
Subcontract Number 21058-109
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00049
COST CODE: 033000

this Subcontract Execution of this Subcontract shall constitute Contractor's approval of Subcontractor to sublet the portions of the work for which Subcontractor customarily sublets the work. The timing, terms, and conditions of these sub-subcontracts shall be the sole responsibility of Subcontractor, and shall not be auditable by the Contractor except to the extent required for the Owner's approval of Change Orders or other Owner rights as specified in the Contract Documents.

THIRTY-SEVENTH.    Severability.

If any one or more of the provisions contained in this Subcontract, for any reason, are held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Subcontract shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

THIRTY-EIGHTH.    Choice of Law and Disputes.

(a) The performance of this Subcontract and all of its terms and conditions, as well as any arbitration or judicial proceeding, shall be interpreted and governed by the laws of the State of California.

(b) Subcontractor agrees that any dispute of any kind, nature or description or any controversy or claim arising out of or relating to this Subcontract or the breach thereof may, at the mutual agreed upon election of the parties, be settled by non-binding mediation or by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. In any such arbitration, full discovery will be allowed as described in the Federal Rules of Civil Procedure, and any remedy or relief granted by the arbitrator(s) shall be in accordance with the terms of this Subcontract as interpreted under and governed by the laws of the jurisdiction identified in paragraph (a), above. In any such arbitration, the arbitrator(s) shall not be empowered or authorized to add to, subtract from, delete or in any other way modify the terms of this subcontract. If arbitration is so elected by the Contractor, then judgment upon the award rendered by the arbitrator(s) may be entered in the courts having jurisdiction over this subcontract. If the parties elect to proceed by arbitration, the venue of such proceeding shall be the project area.

(c) The parties shall have the right to elect to proceed to non-binding mediation or binding arbitration, as described in paragraph (b) above, at any time prior to the commencement of a judicial proceeding by the Contractor, or in the event a judicial proceeding is instituted by the Subcontractor, at any time prior to the last day to answer and/or appear to a Summons and/or Complaint of the Subcontractor.

(d) If the Owner and the Contractor, pursuant to the General Contract or by agreement, submit any dispute, controversy, or claim between them to arbitration or some other disputes resolution procedure specified in the General Contract and such a matter involves or relates to a dispute, controversy, or claim between the Contractor and the Subcontractor, Subcontractor agrees (i) to join in and be bound by the same arbitration or other disputes resolution procedure upon written request by the Contractor and (ii) to stay any action filed by the Subcontractor until the dispute resolution and appeals process between the Contractor and the Owner is exhausted. If the Owner refuses to allow this joinder of the Subcontractor, Subcontractor agrees (i) to cooperate with the Contractor, (ii) to assist in the discovery and other preparations for the hearing, (iii) to make available its employees for testimony before or at the hearing, (iv) to share proportionately the costs and legal fees associated with the preparation for and execution of the hearing _to the extent mutually agreed upon related to the amount of damage being pursued by the Contractor on Subcontractor's behalf_, (v) to stay any action filed by the Subcontractor _as long as the Subcontractor's position is being diligently pursued by Contractor in the Owner dispute and the Subcontractor's positions are being carried forward through the Contractor's prosecution of the claims with the Owner_ until the dispute resolution and appeals process between the Contractor and the Owner is exhausted, and (vi) to be bound by the results of the arbitration or other disputes resolution procedure as it relates to the dispute, controversy, or claim of the subcontractor _to the extent that Subcontractor cooperated and was actively involved in this dispute resolution process_.

(e) To the extent that any dispute, controversy, or claim arises hereunder and a suit is instituted, it shall be brought in and before the State or Federal Court of the project location wherein exclusive jurisdiction shall lie. Notwithstanding the above, if the Owner is joined by the Contractor in any such suit, Subcontractor hereby stipulates that it shall agree to move the suit to the venue of the project site and/or to the disputes resolution forum specified in the General Contract upon the request or motion of the Contractor.

(f) Subcontractor shall insert a provision identical to this Article Thirty-Eighth into all of its sub-subcontracts for the project. Nothing in this section shall be deemed to waive, alter or modify any condition precedent to suit contained in any other provision of the Subcontract or to give the sub-subcontractors any contractual privity with or rights against the Contractor.

(g) No action or proceeding shall lie or shall be maintained by Subcontractor against the Contractor unless such action shall be commenced within one (1) year after the date payment is mailed or otherwise made in respect of the Final Application for Payment or, if this Subcontractor or performance under this Subcontract is terminated by the Contractor, unless such action or proceeding is commenced within one (1) year after the date of such termination.

THIRTY-NINTH.    Headings.

FOR THE PROJECT KNOWN AS:    GSA Federal Building, San Francisco
Subcontract Number 21058-109
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00049
COST CODE: 033000

The headings inserted in this Subcontract Agreement are for convenience only and shall in no way affect the interpretation of this Agreement.

FORTIETH.   Owner Approval, Succession of Interests and Modification.

This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors, and permitted assigns of the parties hereto, but no third party benefits are created by this Subcontract and no modification of this Agreement shall be binding upon the Contractor unless such modification is in writing and signed by the Contractor.

FORTY-FIRST. California License

California law requires that contractors and Subcontractors be licensed and regulated by the Contractors' State License Board which has jurisdiction to investigate complaints against contractors and subcontractors if a complaint regarding a latent act or omission is filed within four (4) years of the date of the alleged violation.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first hereinabove written.

Witness: _____ 6/5/03
Scott G. Braunwalter, P.M.

Subcontractor
Webcor Construction, Inc. dba Webcor Builders
By _____
Representative of Subcontractor Authorized to Execute Subcontract
Title: Sr. V.P.
Date: 6/5/03

Witness: _____

Contractor
Dick / Morganti Joint Venture
By _____
Title: Project Executive
Date: JUNE 11, 2003

FOR THE PROJECT KNOWN AS:   GSA Federal Building, San Francisco
Subcontract Number 21058-109
GSA Contract No. GS-09P-02-KTC-0002
GSA Project No. NCA00049
COST CODE: 033000
24 of 24

# Exhibit B

# to

# Declaration of Michael T. Ambroso

# April 25, 2008 Global Claim (Excerpts)



April 25, 2008

<u>via Federal Express</u>
Shelita Harper
Contracting Officer
General Services Administration
Property Development Div., 9PCN
450 Golden Gate Ave., 3rd Floor West
San Francisco, CA 94102

RE: New San Francisco Federal Office Building
Project No. NCA00049
Contract No. GS-09P-02-KTC-0002

Subject: Dick/Morganti Claim for Equitable Adjustment

Dear Ms. Harper:

Enclosed please find two (2) copies of Dick/Morganti's Damages Statement which is a supplement to D/M's Claim for Equitable Adjustment sent to you on November 30, 2007. D/M's Certification is included in the enclosed document. As stated in Section VIII of the attached document, please note that certain of D/M's subcontractors have not yet submitted their claims against the GSA. D/M reserves the right to supplement this Claim with those subcontractor claims, once they are received.

Pursuant to FAR 52.233-1 Disputes, D/M hereby requests that you, as the Contracting Officer, issue a Final Decision on this Claim as soon as possible.

Please let me know if you have any questions.

Sincerely,

DICK/MORGANTI, A Joint Venture

Michael T. Ambroso
Assistant General Counsel &
Assistant Secretary

MTA/lsn
enclosure
cc:     Meg Haggerty, Esq.
        GSA Office of Regional Counsel
        450 Golden Gate Avenue – 5th Floor
        San Francisco, CA 94102
    Ron Brookfield (w/enclosure)
    Dan Martin (w/enclosure)
    Vince Petito (w/enclosure)
    Joel Heusinger, Esq. (w/enclosure)

# Dick/Morganti Claim For Equitable Adjustment Damages Statement

April 25, 2008

<u>Dick/Morganti Claim For Equitable Adjustment</u>
<u>Damages Statement</u>

In its November 30, 2007 Claim For Equitable Adjustment (the "Claim"), Dick/Morganti, A Joint Venture ("D/M") set forth the contractual and factual bases for its request for additional compensation from the United States General Services Administration ("GSA") on the new San Francisco Federal Building (the "Project"). In Section G of that Claim, D/M stated that it would be supplementing its November 30, 2007 claim submission with its claimed damages, once those damages were finalized.

In this document, D/M explains and sets forth the damages it is seeking from the GSA as a result of the entitlement issues D/M identified in its November 30, 2007 Claim. This damages statement is to be treated as a supplement to the November 30, 2007 Claim.

Schedule A (Tab A) included herein is a summary of the current damages being sought by D/M. That document indicates that D/M's total damage claim, including allowable markup, is $46,088,562. D/M's damages consist of the following categories:

I. Separately Tracked D/M Costs Related to Concrete Finish Entitlement Issue (Schedule B);
II. D/M Costs Incurred in Processing and Resolving RFIs (Schedule C);
III. Open and Disputed CORs (Schedules D, D-1, D-2 and D-3);
IV. D/M Direct Field Support Costs Associated With Rebar Congestion and Concrete Finish Entitlement Issues (Schedule E);
V. Acceleration and Overtime Costs Incurred by D/M (Schedule F);
VI. D/M Non-Direct Field Overhead Costs (Schedule G);
VII. Unpaid Contract Balance (Schedule H);
VIII. Subcontractor Pass Through Claims (Schedule I); and
IX. Interest on Damages (Schedule J).

VII.  Unpaid Contract Balance

Attached Schedule H (Tab H) shows the amount D/M is still owed by the GSA on the Contract. This unpaid contract balance includes the $2,552,250 which the GSA unilaterally and wrongfully deducted (Mod PCP8) from D/M's contract for assessed liquidated damages. D/M's claim and schedule analysis demonstrates that the GSA wrongfully assessed those liquidated damages and, therefore, those amounts are included in the total unpaid contract balance of $2,730,890.

VIII.  Subcontractor Pass Through Claims

Attached Schedule I (Tab I) contains the pass through claims from D/M's subcontractors which have been submitted to date. With allowable markup, those subcontractor pass through claims currently equal $8,676,823. D/M has been informed that a number of other subcontractors will be submitting claims for damages arising out of the actions and decisions of the GSA and its agents on the Project. D/M reserves the right to supplement its claim and damages statement with any additional subcontractor pass through claims it receives on the Project.

IX.  Interest on Damages

The amounts reflected in this Damages Statement represent costs incurred by D/M and its subcontractors during the course of construction (2003 – February 2007). For all of this time, D/M and its subcontractors have been forced to bear the financial burden of funding this additional work and carrying these substantial added costs. As part of this claim, D/M is entitled to interest on these substantial added costs. In calculating this interest claim, D/M uses the interest rates set by the Treasury Department for prompt payment disputes. As a conservative measure, D/M's interest calculations are only applied from the date of Substantial Completion (February 28, 2007) through April 30, 2008. Given when these costs were incurred, this interest

calculation certainly could go back much earlier than the Substantial Completion Date. Schedule J (Tab J) contains the interest calculation (totaling $2,702,142) being claimed by D/M.

CERTIFICATION FOR CLAIM

DICK/MORGANTI, A JOINT VENTURE

UNITED STATES FEDERAL OFFICE BUILDING

SAN FRANCISCO, CALIFORNIA

This Damages Statement is a supplement to Dick/Morganti's Claim for Equitable Adjustment submitted on November 30, 2007. I certify that this claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount herein requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the Claim on behalf of the Contractor.

DICK CORPORATION

Signature: _____

Name: Daniel R. Martin

Title: Executive Vice President

Date: April 25, 2008

Schedule I

## Dick/Morganti Damage Quantification to GSA
## Subcontractor Pass Through Claims

| Subcontractor | Claim Amount [1] | D/M Markup [2] | Total Claim Amount |
|---|---:|---:|---:|
| Bay Area Reinforcing | $ 2,242,986 | 7.27% | $ 2,406,112 |
| Boyett Door & Hardware | 670,459 | 7.27% | 719,219 |
| ISEC | - | 7.27% | - |
| Marelich Mechanical | - | 7.27% | - |
| Performance Contracting Inc. | - | 7.27% | - |
| Permasteelisa | - | 7.27% | - |
| Rosendin Electric | - | 7.27% | - |
| T&M Manufacturing | - | 7.27% | - |
| **Webcor** | | | |
|   Rebar Congestion | 3,308,979 | 7.27% | 3,549,631 |
|   Concrete Finishes | 1,362,761 | 7.27% | 1,461,871 |
|   Protective Slabs | 271,275 | 7.27% | 291,004 |
|   Weather Delays | 232,106 | 7.27% | 248,986 |
| Total Webcor | 5,175,121 | | 5,551,492 |
| **Total Subcontractor Claims** | **$ 8,088,566** | | **$ 8,676,823** |

**Notes:**
(1) Claim amount includes subcontractor markup
(2) D/M markup rate calculated as 7.2727%