JOHN W. RALLS (CA Bar No. 148233)
jralls@thelen.com
JOHN A. FOUST (CA Bar No. 218824)
jfoust@thelen.com
JOANNA ROSEN (CA Bar No. 244943)
jrosen@thelen.com
THELEN REID BROWN RAYSMAN & STEINER LLP
101 Second Street, Suite 1800
San Francisco, CA  94105
Tel. 415.371.1200 // Fax 415.371.1211

PATRICK S. HALLINAN (CA Bar No. 33838)
butchhallinan@hotmail.com
KENNETH H. WINE (CA Bar No. 142385)
kenwine@hotmail.com
HALLINAN & WINE
Law Chambers Building, 345 Franklin Street
San Francisco, CA 94102
Tel. 415.621.2400 // Fax 415.575.9930

Attorneys for Defendants, Counter-Claimants and Third Party Complainants
DICK/MORGANTI, DICK CORPORATION, THE MORGANTI GROUP,
AMERICAN CASUALTY COMPANY OF READING, PA and
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA—SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA for the Use and Benefit of WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS, and WEBCOR CONSTRUCTION, INC. dba WEBCOR BUILDERS,<br><br>　　　　　　　　Plaintiffs,<br>　　vs.<br><br>DICK/MORGANTI, a joint venture, DICK CORPORATION, THE MORGANTI GROUP, AMERICAN CASUALTY COMPANY OF READING, PA, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 10, inclusive,<br><br>　　　　　　　　Defendants.<br><br>AND RELATED COUNTER-CLAIMS AND THIRD PARTY CLAIMS. | Case No.: 3:07-CV-02564-CRB<br><br>**DECLARATION OF BARBARA G. WERTHER IN OPPOSITION TO WEBCOR'S MOTION TO LIFT STAY**<br><br>Date:　　August 29, 2008<br>Time:　　10:00 a.m.<br>Place:　　Courtroom 8<br><br>Before:　　Hon. Charles R. Breyer |

I, Barbara G. Werther, declare:

1.     I am a partner in the law firm of Thelen Reid Brown Raysman & Steiner LLP ("Thelen") in Washington, D.C.  I have practiced government contracts and construction law for over 30 years.  I obtained my B.A. degree from the University of Pennsylvania in 1975 and my J.D. from the National Law Center of the George Washington University in 1978.  Prior to joining Thelen on May 1, 2002, I was employed by the following government contracts law firms: Sellers, Conner & Cuneo from September 1978 to October 1981; Pettit & Martin from October 1981 to October 1985; Watt, Tieder, Killian & Hoffar (now Watt, Tieder, Hoffar and Fitzgerald) from October 1985 to February 1998; Arent, Fox, Kintner, Plotkin & Kahn from February 1998 to May 1, 2002, when I joined Thelen.  I have been a partner since 1987.  During this period of time, I have developed substantial expertise in litigating claims against the federal government and have represented many large contractors at the Boards of Contract Appeals and the United States Court of Federal Claims, the two courts having jurisdiction to hear claims for money damages against the federal government.  I have been named by Chambers and Partners for several years as one of the best construction lawyers in Washington, D.C.  For its part, Thelen has been named by Chambers and Partners as the best construction law firm in the United States.  Although I have represented contractors in disputes against many federal agencies (e.g., the Navy, Air Force, Army Corps of Engineers), in recent years, I have worked on and settled (or litigated) with the General Services Administration ("GSA) the following claims: (a) a seven figure claim involving the construction of the Tampa Courthouse; (b) an eight figure claim on the EPA Campus project (6 buildings and laboratories) in Raleigh-Durham, NC; (c) an eight figure claim on the 1 million square foot renovation and new construction for the ICC/USCS/CW building in Washington, DC; (d) an eight figure claim on the Roman Hruska Courthouse in Omaha, Nebraska; and (e) a claim on the NOAA headquarters at the University of Maryland.

2.     Large government contract claims, particularly those arising out of building projects, normally implicate not only the general contractor, but also numerous subcontractors.  Hence, when there are large government contract claims, because the subcontractors are not in privity of contract with the federal government, the prime contractor's subcontracts typically allow

1   the subcontractors to pass their claims through to the federal government, because the

2   subcontractors have often incurred extra costs due to the government's changes or delays.  It is

3   typical for the general contractor to submit "omnibus claims" to the contracting officer, on behalf

4   of itself and all of its subcontractors, for a final decision.

5        3.        Under the Contract Disputes Act, 41 U.S.C. §§ 601-613 ("CDA"), there are

6   administrative procedures that must be followed in order to prosecute claims against the federal

7   government for money damages.  First, a contractor must submit a change order request or request

8   for time extension or other relief to the Contracting Officer. The Contracting Officer is an

9   individual who has been assigned by the contracting agency to the project and who is given a

10  warrant to make changes to the contract.  If the request for relief is denied, the contractor then may

11  submit a certified claim to the Contracting Officer.  Such a claim must set forth the exact dollar

12  amount requested.  *See Metric Constr. Co., v. U.S.*, 14 Cl. Ct. 177, 179 (1988).  The CDA requires

13  that, for a claim against the government totaling more than $100,000, "the contractor shall certify

14  that the claim is made in good faith, that the supporting data are accurate and complete to the best

15  of his knowledge and belief, that the amount requested accurately reflects the contract adjustment

16  for which the contractor believes the government is liable and that the certifier is duly authorized

17  to certify the claim on behalf of the contractor."  41 U.S.C. § 605(c)(1).  Thus, when a

18  subcontractor submits a pass-through claim to the prime contractor, which the prime contractor

19  then submits to the government, both the prime and subcontractors have a duty to ensure that there

20  is a good faith basis for submitting the claim and that the costs are reasonable, allocable and

21  allowable.  The Contracting Officer then is given a period of time under the statute to render a

22  decision on the claim.  This requirement is an administrative remedy that must be exhausted

23  before the contractor (or its subcontractor) is entitled to pursue relief in a judicial forum.  In the

24  event the Contracting Officer accepts the claim, then the Contracting Officer will issue a

25  modification or change order amending the contract.  If the Contracting Officer does not render a

26  decision on the claim within 60 days, or such longer period of time as is "reasonable," then the

27  contractor (and its subcontractors) may proceed to either the boards or the Court of Federal Claims

28  on the theory of a "deemed denial" of the claim by the Contracting Officer.  See 41 U.S.C. §

605(c)(7). In the event the Contracting Officer denies the claim, the contractor (and its subcontractors) have 90 days in which to take an appeal to an administrative board such as the Civilian Board of Contract Appeals (previously the General Services Board of Contract Appeals), or one year in which to take an appeal to the United States Court of Federal Claims.  The CDA further provides that interest (at the Treasury rate) runs from the date of submission of the claim until the date paid.  The purpose of interest is to protect the contracting community from a Contracting Officer who may not issue a final decision promptly, from an extended discovery period or protracted trial, and even from a delay in obtaining a ruling from the trier of fact. Appeals of such decisions may then be taken to the United States Court of Appeals for the Federal Circuit.  By statute, interest runs beyond the date of a final adjudication until the date the contractor is actually paid.

4.      Omnibus claims arising out of major building projects generally involve extra or changed work due to omissions or conflicts in the plans, differing site conditions, delays, disruptions, acceleration, loss of productivity or suspensions of work.  In my recent experience, the omnibus claims have included components of most, if not all, of these theories of recovery. Importantly, the claims are inclusive of not only the general contractor's claims, but also the separate claims of the subcontractors.  On large projects, it is not atypical for 20 or 30 subcontractors to present multi-million dollar claims as pass-through claims to the Contracting Officer.  The prosecution of such claims is a time-consuming and expensive effort, that cannot be accomplished without extensive coordination among the prime contractor, its experts and the subcontractors and their experts.

5.      My partners, Andrew Ness, Ronan McHugh, John Ralls, and I were retained by Dick/Morganti ("D/M") in June 2008 to assist in prosecuting a mid-eight figure claim against the GSA on the San Francisco Federal Building in part because of our significant expertise in government contracts and because of my pre-existing working relationships with individuals from GSA's counsel's office.  Our charge from D/M is to move the claims of D/M and its subcontractors forward as expeditiously as possible.  In the past, I have successfully negotiated

1   and resolved many (if not all) claim issues with the GSA through different kinds of ADR

2   procedures.

3        6.        Prior to Thelen's involvement, D/M submitted the entitlement portion of the

4   omnibus claim to the GSA Contracting Officer on November 30, 2007, and submitted the

5   quantum portion on April 25, 2008.  In addition to D/M's omnibus claim, a few of D/M's

6   subcontractors have submitted independent claims as pass-through claims, though D/M is still the

7   appellant, having privity with the government.  The Contracting Officer has not issued final

8   decisions on D/M's claims.

9        7.        Webcor, one of D/M's subcontractors, submitted through D/M a claim in June

10  2007 for rebar congestion (COR 60), on the grounds that the GSA's designer added significant

11  quantities of rebar to the project which caused Webcor's work to be delayed as it attempted to

12  work around orders of magnitude more rebar than it planned when it bid the project.  To date, the

13  Contracting Officer has not issued a final decision on this claim.  Similarly, in February 2008,

14  Webcor, through D/M, submitted two additional claims to the Contracting Officer, one for a

15  compensable time extension due to weather delays (COR 62), and one for escalation due to a late

16  work start caused by Government caused delays in the preceding excavation work activities

17  (COR 61). The Contracting Officer has not issued final decisions on either of these claims.

18       8.        Since becoming involved on this matter, we have endeavored to push resolution

19  forward for the benefit of D/M and its subcontractors.  I have opened a line of communication

20  with my counterparts in the office of GSA's counsel in the hopes of establishing a roadmap to an

21  expedited resolution of these claims.

22       9.        In addition, we have taken steps to assist in the effort to get the remaining

23  subcontractors who have yet to quantify and certify their claims to do so.  As mentioned above,

24  the quantification and certification of the exact dollar amount of the claims is essential to submit a

25  formal claim to the Contracting Officer, which in turn is a prerequisite to filing an appeal.  In this

26  respect, the development and prosecution of claims arising out of federal government work

27  requires more "front end" diligence and attention than the bringing of claims arising out of private,

28

DECLARATION OF BARBARA G. WERTHER IN OPPOSITION TO WEBCOR'S MOTION TO LIFT STAY    No.: 3:07-CV-02564-CRB

1   commercial work.  Unlike government contract claims, private sector work claims are frequently

2   quantified during the course of the litigation.

3       10.     In late July 2008, after a July 22, 2008 status conference before the Board, Thelen

4   prepared a status report to the subcontractors who have yet to submit and certify pricing

5   information, advising of the suspense dates set by the Board, but also reached out to many of them

6   in order to set up face to face meetings to ensure that they would have their claim submissions to

7   D/M for review and submission to the Contracting Officer by the end of September.  D/M and its

8   counsel then met the week of August 4, 2008 with Rosendin Electric and Permastileesa Cladding

9   Technologies LP (the curtain-wall subcontractor).  Thelen also conducted a telephonic meeting

10  with Marelich Mechanical on August 1.  D/M also reached out to T&M (the miscellaneous metals

11  subcontractor)  to ensure that they were informed of the schedule, and would have their claim

12  documentation prepared and ready for submission.  These meetings were productive, and each of

13  the subcontractors is reviewing their claim submissions in line with D/M's comments, with the

14  aim of completing them by the end of September.

15      11.     In addition, on August 5, 2008, D/M representatives met with Webcor.  At the

16  conclusion of this meeting, D/M requested that I draft a notice of appeal on Webcor's claims.  I

17  prepared a notice of appeal on August 6, 2008, and immediately transmitted it to counsel for

18  Webcor.  A true and correct copy of my transmittal to Webcor's counsel is attached as Exhibit A.

19  In my cover email, I requested that Webcor review the notice of appeal which sought the CBCA's

20  jurisdiction based on a "deemed denial" of Webcor's claims because there is no Contracting

21  Officer's final decision.  I received approval from Webcor's counsel the evening of August 7 (by

22  email, a true and correct copy of which is attached as Exhibit C), and the appeal notice was filed

23  the next day, August 8, 2008.  A true and correct copy of the notice of appeal is attached hereto as

24  Exhibit B.

25      12.     It is not known whether the Board will allow the Webcor appeals to go forward

26  independent of the omnibus claim, or whether the Webcor appeals will be consolidated with the

27  omnibus claim such that they will be addressed in the status conference scheduled for January 12,

28  2009.  Webcor has taken up the suggestion by my partner, Mr. McHugh, that a separate status

1  conference be requested for the newly filed separate Webcor appeal (*see* Exhibit B), and I have

2  already written the Board, requesting such a conference (*see* Exhibit C). In particular, Webcor and

3  D/M can make a strong argument at this status conference based on the fact that Webcor's work

4  was some of the earliest to finish on the job and based on the fact the Webcor's claims have been

5  before the Contracting Officer for such a long time.

6      13.    Based on my experience with eight figure claims against GSA and my experience

7  at the CBCA, this omnibus claim is progressing forward expeditiously. It is common practice for

8  the Board judges to consolidate large, complex cases, but this does not mean that there will

9  inevitably be a single trial of all of the issues before the Board arising out of a single project. To

10 the contrary, in my experience, Board judges and the GSA's counsel are interested in "breaking

11 up" these large and complex disputes into components to facilitate resolution. What's more, the

12 establishment of a formal trial schedule does not foreclose the parties from pursuing other ADR

13 procedures on a parallel path but in fact can motivate the parties to pursue such procedures sooner.

14 In the case of the CBCA, the parties are free to request that the other board judges assist the parties

15 with attempting to resolve their dispute short of a full-blown trial, and those discussions with GSA

16 counsel are in their incipient stages at this time. We will be pursuing all of these techniques in an

17 effort to resolve the claims of D/M and its subcontractors as expeditiously as possible.

18     I declare under penalty of perjury under the laws of the United States of America that the

19 foregoing is true and correct.

20     Executed this 8th day of August 2008 at Washington, D.C.

21

22                          Barbara G. Werther

23

24

25

26

27

28